# EXHIBIT A

STATE OF MICHIGAN

IN THE OAKLAND COUNTY PROBATE COURT

HENRY NIRENBERG, as Court-Appointed
Special Fiduciary of the Harold B. Doremus
Living Trust, u/a/d January 15, 1982, as
Amended,

        Plaintiff,

v

COUZENS, LANSKY, FEALK, ROEDER
& LAZAR, P.C., a Michigan professional
service corporation, JACK S. COUZENS, II,
an individual, SADECKI & ASSOCIATES,
P.L.L.C., a Michigan professional limited liability
company, MARK W. SADECKI, an individual,
KATHLEEN JENKINS, an individual, JENKINS,
MAGNUS, VOLK AND CARROLL, P.C., a
Michigan professional service corporation, and
SUSAN HABEL, an individual,

        Defendants.

Case No. 24-418,581-CZ
Honorable

**LINDA S. HALLMARK**

_____/

LENNON LAW PLLC
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276

_____/

## CIVIL ACTION COMPLAINT AND JURY DEMAND

> There is another pending civil action arising out of
> the transaction or occurrence alleged in this Complaint,
> it is case no. 2021-401996-CZ, and it is assigned to
> Judge Jennifer Callaghan.

Plaintiff, HENRY NIRENBERG, Court-Appointed Special Fiduciary, by and through his attorneys, Lennon Law PLLC, for his Complaint against Defendants, states as follows:

2024 FEB -9 PM 1:52
OCPC-EST-BY

{01857415.DOC }

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Henry Nirenberg, is the Court-Appointed Special Fiduciary in *In re The Harold B. Doremus Trust u/a/d January 15, 1982 as Amended*, Oakland County Probate Court No. 2022-410,889-TV.

2. Plaintiff Henry is a resident of Oakland County, Michigan and conducts business in Oakland County, Michigan.

3. Defendant Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C. ("Couzens Lansky"), a law firm, is a Michigan professional service corporation that conducts business in Oakland County, Michigan.

4. Defendant Jack S. Couzens ("Couzens"), is an attorney licensed to practice law in the State of Michigan and conducts business in Oakland County, Michigan.

5. At all relevant times, Couzens practiced law under the auspices of Couzens Lansky, and Couzens Lansky is responsible for the acts and omissions of Couzens alleged herein under the principals of agency, vicarious liability and *respondeat superior*.

6. Defendant Sadecki & Associates, P.L.L.C. ("Sadecki Firm"), a law firm, is a Michigan professional limited liability company that conducts business in Oakland County, Michigan.

7. Defendant Mark W. Sadecki ("Sadecki") is an attorney licensed to practice law in the State of Michigan and conducts business in Oakland County, Michigan.

8.     At all relevant times, Sadecki practiced law under the auspices of Sadecki Firm, and Sadecki Firm is responsible for the acts and omissions of Sadecki alleged herein under the principals of agency, vicarious liability and *respondeat superior*.

9.     Defendant Kathleen Jenkins ("Jenkins") is an accountant licensed to practice public accounting in the State of Michigan and conducts business in Oakland County, Michigan.

10.    Defendant Jenkins, Magnus, Volk and Carroll, P.C. ("Jenkins Firm") is a Michigan professional service corporation and conducts business in Oakland County, Michigan. At all relevant times, Jenkins was an officer and director of Jenkins Firm and rendered accounting and fiduciary services under the auspices of Jenkins Firm. Jenkins Firm is responsible for the acts and omissions of Jenkins alleged herein under the principals of agency, vicarious liability and *respondeat superior*.

11.    Defendant Susan Habel ("Habel") is an individual who resides in, and conducts business in, Oakland County, Michigan.

12.    The injuries giving rise to this cause of action occurred in Oakland County, Michigan.

13.    The amount in controversy, exclusive of interest and costs, exceeds $25,000.

14.    The Probate Court has exclusive jurisdiction over this matter pursuant to MCL 700.1302(b).

15.    Alternatively, this Court has concurrent jurisdiction over this matter pursuant to MCL 700.1303.

## OVERVIEW

16.    This lawsuit arises out of the mismanagement of two Trusts and the related theft of over $20 million in monies and assets from those Trusts. Compounding their misdeeds, some of the Defendants have attempted to enter into an agreement among the wrongdoers that mutually insulates them from liability for their misdeeds. This lawsuit is intended to rectify the consequences of Defendants' egregious wrongdoing.

## HAROLD DOREMUS AND THE TRUSTS

17.    Harold Doremus ("Harold") was born in 1922 and was the successful founder of Burke Building Centers, Inc. Harold's career allowed him to amass wealth, about which he had very specific intentions upon his death.

18.    Harold established The Harold B. Doremus Trust u/a/d January 15, 1982, as Amended (the "HBD Trust").

19.    Upon information and belief, one or more attorneys from Couzens Lansky drafted the HBD Trust.

20.    Harold died on February 13, 2019, making the HBD Trust irrevocable.

21.    Upon information and belief, at the time of Harold's death, the HBD Trust had assets valued at $17,484,449.37.

22.    At the time of Harold's death, Harold had an 89.7596% interest in the Burke Building Centers Inc. Profit Sharing Trust, Charles Schwab Account No. XXX-2179 (the "PSP Trust").

23.    At the time of Harold's death, Harold's interest in the PSP Trust was valued at $20,274,023.

24.    Harold was survived by his son, Steven Doremus ("Steven").

25. Steven died on November 13, 2020.

26. At the time of his death, Steven was not married and did not have any descendants.

27. At the time of his death, Steven did have a long-term partner, Habel, with whom he lived.

28. Habel is also personal representative of the Steven Doremus Estate and the Trustee of the Steven Doremus Trust.

## HAROLD'S INTENDED DISTRIBUTION SCHEME

29. At the time of Harold's death, he owned a home located at 1054 Lake Angelus Shores, Lake Angelus, Michigan (the "Lake Angelus Property").

30. Upon information and belief, the present fair market value of the Lake Angelus Property is in excess of $1.1 million.

31. Following Harold's death, Jenkins became the successor Trustee of the HBD Trust.

32. Following Harold's death, Jenkin served as a Trustee of the PSP Trust until at least February 16, 2021.

33. Following Harold's death, Jenkins became the Personal Representative of the Estate of Harold B. Doremus (the "HBD Estate").

34. Pursuant to a December 10, 2018 Designation of Beneficiary (the "Designation of Beneficiary"), the HBD Trust is the residuary beneficiary of Harold's interest in the PSP Trust.

35. Pursuant to the Designation of Beneficiary, upon Harold's death, the Trustee of the PSP Trust was obligated to make the following distributions from the PSP

Trust: (a) $2 million to All Saints Episcopal Church, (b) $2 million to Oakland University, (c) $2 million to Kenyon College, (d) $1 million to the University of Michigan Libraries, (e) $500,000 to Saint Andres Episcopal Church, (f) $500,000 to Sainte Rita in Nice France, (g) $500,000 to Kathy Horton, and (g) the remainder to the HBD Trust.

36. Article 6 of the HBD Trust provides that, following Harold's death, specific distributions totaling $85,000 were to be made to specific beneficiaries, and that $4 million was to be distributed to various beneficiaries and funded from the HBD Trust's interest in the PSP Trust.

37. After Harold's death, the HBD Trust provided for Steven's "health, education, support and maintenance consistent with his accustomed standard of living" during Steven's lifetime.

38. Following Steven's death, the HBD Trust was to be distributed as follows: (a) 20% to Jane Anne Doremus, (b) 15% to Judson Burke St. John, Jr., (c) 15% to Dylan St. John, (d) 10% to All Saints Episcopal Church, (e) 20% to Oakland University, and (f) 20% to Kenyon College.

### RELYING UPON THE ADVICE OF COUNSEL, JENKINS MAKES DISTRIBUTIONS WHICH ARE INCONSISTENT WITH THE HBD TRUST AND PSP TRUST

39. After Harold's death, Jenkins retained Couzens and Couzens Lansky to represent her and provide advice to Jenkins in Jenkins' capacity as Trustee of the HBD Trust, Trustee of the HBD Trust and Personal Representative of the HBD Estate.

40.  Upon information and belief, Jenkins, was in possession of the Designation of Beneficiary during the entire time Jenkins served as Trustee of the HBD Trust.

41.  Upon information and belief, Couzens and Couzens and Lansky were in possession of the Designation of Beneficiary during the entire time they represented Jenkins in her capacity as Trustee of the HBD Trust.

42.  Upon information and belief, Couzens and Couzens Lansky have continued to represent Jenkins through the present.

43.  While Jenkins served as Trustee of the HBD Trust and PSP Trust, Jenkins made the following distributions that were inconsistent with the HBD Trust and PSP Trust:

- On July 17, 2019, by Trustee's Deed and relying on the advice of Couzens, Jenkins conveyed to Steven the "Lake Angelus Property", and there is no evidence Steven paid any consideration for his receipt of the Lake Angelus Property.

- On or about September 24, 2019, a withdrawal of $5 million was made from the PSP Trust and paid to the Burke Lumber Company Salaried Employee Profit Sharing Plan.

- On or about October 1, 2019, a withdrawal of $3.5 million was made from the PSP Trust and paid to the Burke Lumber Company Salaried Employee Profit Sharing Plan.

- On or about November 6, 2020, in her capacity as Trustee of the PSP Trust, Jenkins transferred $250,000 from the PSP Trust to the "Steven B. Doremus Beneficiary IRA".

- On or about December 30, 2020, in her capacity as Trustee of the PSP Trust, Jenkins transferred $3 million from the PSP Trust to the "Steven B. Doremus Beneficiary IRA".

- On or about February 11, 2021, Jenkins directed and authorized the disbursement of $9,210,936.25 from the PSP Trust to the "Susan Habel INH IRA Beneficiary of Steven Doremus" instead of to the HBD Trust.

44. Jenkins has claimed that she relied on Couzens and Couzens Lansky in making any distributions of funds or property from the HBD Trust, PSP Trust and HBD Estate.

45. Upon information and belief, purportedly as attorneys for Jenkins, Couzens or another attorney from Couzens Lansky drafted the Trustee Deed by which the Lake Angelus Property was transferred to Steven.

46. Upon information and belief, Couzens and Couzens Lansky were also representing Steven at the time they drafted the Trustee Deed by which the Lake Angelus Property was transferred to Steven.

47. Apparently to avoid any dispute as to whether the Lake Angelus Property had been conveyed to Steven, on September 16, 2020, Couzens had Jenkins execute a Personal Representative's deed by which the Lake Angelus Property was conveyed to Jenkins, as Trustee of the HBD Trust.

48. On February 16, 2021, Habel, in her capacity as officer of Burke Building Centers, Inc., removed Jenkins as Trustee of the PSP Trust and appointed herself Trustee of the PSP Trust.

49. At the time of Jenkins' removal as Trustee of the PSP Trust, there remained approximately $2,469,466.77 in the PSP Trust which should have been distributed to the HBD Trust.

## THE HABEL LITIGATION

50. On or about August 26, 2021, in her capacity as Trustee of the HBD Trust, Jenkins brought a petition against Habel, as Personal Representative of The Estate of

Steven Doremus, Oakland County Probate Court Case No. 2021-401996-CZ (the "Habel Litigation").

51. The only parties in the Habel Litigation are Jenkins, in her capacity as Trustee of the HBD Trust, and Habel, in her capacity as Personal Representative of the Steven Doremus Estate.

52. Initially, Sadecki represented Jenkins in the Habel Litigation.

53. In summary, the petition drafted by Sadecki on behalf of Jenkins acknowledges: (a) the Lake Angelus Property was an asset of the HBD Trust when it was conveyed to Steven on July 17, 2019; and (b) the transfer of the Lake Angelus Property to Steven, as well as the transfer of other monies to Steven, was improper. Through her petition, Jenkins seeks to have the monies and Lake Angelus Property conveyed back to the HBD Trust.

54. Upon information and belief, purportedly to settle the Habel Litigation, Jenkins and Habel have conspired to attempt to enter into a settlement agreement which would include individuals and entities not parties to the Habel Litigation and would purportedly release from liability claims against Jenkins, Habel and Couzens Lansky. This proposed settlement agreement and release has not been approved by the judge presiding over the Habel Litigation.

55. Sadecki ceased representing Jenkins in the Habel Litigation on or about December 13, 2023.

## THE JENKINS LITIGATION

56. On or about December 12, 2022, Jane Anne Doremus, Judson Burke St. John, Jr., and Dylan St. John (collectively, the "Qualified Beneficiaries") brought a

Petition for entry of order removing Jenkins as Trustee, appointing successor Trustee, surcharging Trustee, imposing a constructive Trust and for fees and costs, Oakland County Probate Court Case No. 2022-410,889-TV (the "Jenkins Litigation").

57. On January 25, 2023, the Court presiding over the Jenkins Litigation suspended the majority of Jenkins powers as Trustee of the HBD Trust.

58. In an Order dated June 29, 2023, the Court presiding over the Jenkins Litigation appointed Plaintiff special fiduciary "to investigate the circumstances surrounding the conveyance by Kathleen Jenkins of the property located in Lake Angelus, Michigan; investigate the merits of Ms. Jenkins' claims of legal malpractice surrounding the conveyance; and investigate the appropriateness of trust funds being used to pay for Ms. Jenkins' legal defense."

59. In an Order entered December 18, 2023, the Court presiding over the Jenkins Litigation expanded the Special Fiduciary's powers, rendering him:

> empowered …to pursue any and all malpractice claims available to the HBD Trust and the Suspended Trustee, Kathleen Jenkins, …and, further, to take such necessary action and file such claims as may be necessary to preserve and prosecute claims on behalf of the HBD Trust relative to its interest in the Burke Building Centers Inc. Profit Sharing Trust…

60. Under MCL 700.1309, a Probate Court may appoint a special fiduciary "to perform specified duties".

61. Pursuant to MCR 5.204, the Special Fiduciary "has all the duties and powers specified in the order of the court appointing the special fiduciary."

62. Pursuant to the authority given to him by the Probate Court, the Special Fiduciary has retained counsel to prosecute this case.

## COUNT I - LEGAL MALPRACTICE – COUZENS AND COUZENS LANSKY

63. Plaintiff hereby incorporates the allegations contained in the above paragraphs as if stated herein in their entirety.

64. Pursuant to the Court's Orders in the Jenkins Litigation, the Special Fiduciary has the power to bring legal malpractice claims arising out of Defendants' representation of Jenkins in her capacity as Trustee of the HBD Trust and Trustee of the PSP Trust.

65. As attorneys for Jenkins in her capacity as Trustee of the HBD Trust and Trustee of the PSP Trust, Couzens and Couzens Lansky owed Jenkins the duties to recognized established rules of law and to do that which attorneys or ordinary learning, judgment or skill would or would not do under the same or similar circumstances.

66. Couzens Lansky and Couzens committed legal malpractice in their representation of Jenkins by, among other things:

   a. failing to fully advise Jenkins of her duties as Trustee of the HBD Trust and PSP Trust;

   b. failing to advise Jenkins of the proper distributions to be made under the HBD Trust and PSP Trust;

   c. recommending Jenkins make distributions which were inconsistent with the HBD Trust and PSP Trust;

   d. engaging in a conflict of interest by representing both Jenkins and Steven in connection with the conveyance of the Lake Angelus Property to Steven;

   e. recommending, drafting and presenting to Jenkins for execution the Trustee Deed by which the Lake Angelus Property was conveyed to Steven;

   f. failing to advise Jenkins to provide annual

        accountings to the beneficiaries of the HBD Trust;

g.    failing to advise Jenkins to keep the beneficiaries informed;

h.    failing to advise Jenkins of the distributions the PSP Trust should make to the HBD Trust, depriving the HBD Trust of a significant charitable deduction for federal estate tax purposes; and

i.    engaging in other acts of malpractice that may be ascertained during discovery in this matter.

67.    As a direct and proximate result of the legal malpractice of Couzens and Couzens Lansky, the HBD Trust incurred the following damages: (a) loss of the Lake Angelus Property; (b) loss of approximately $21 million that was not put into the HBD Trust; (c) loss of approximately $2.8 million in tax benefits as a result of charitable contributions not made by the HBD Trust; and (d) excessive attorney fees and costs paid by the HBD Trust.

## COUNT II - LEGAL MALPRACTICE – SADECKI AND SADECKI FIRM

68.    Plaintiff hereby incorporates the allegations contained in the above paragraphs as if stated herein in their entirety.

69.    Pursuant to the Court's Orders in the Jenkins Litigation, the Special Fiduciary has the power to bring legal malpractice claims arising out of Defendants' representation of Jenkins in her capacity as Trustee of the HBD Trust and Trustee of the PSP Trust.

70.    As attorneys for Jenkins in her capacity as Trustee of the HBD Trust and Trustee of the PSP Trust, Sadecki and Sadecki Firm owed Jenkins the duties to recognized established rules of law and to do that which attorneys or ordinary learning, judgment or skill would or would not do under the same or similar circumstances.

71. Sadecki and Sadecki Firm committed legal malpractice in their representation of Jenkins by, among other things:

   a. failing to recommend that Jenkins bring all available claims against Habel;

   b. failing to bring on behalf of Jenkins all available claims against Habel;

   c. recommending that Jenkins settle the Habel Litigation under terms that were not favorable to the HBS Trust;

   d. failing to recommend that Jenkins bring claims against Couzens and Couzens Lansky arising out of their representation of Jenkins;

   e. recommending that Jenkins release claims against Couzens and Couzens Lansky; and

   f. engaging in other acts of malpractice that may be ascertained during discovery in this matter.

72. As a direct and proximate result of the legal malpractice of Sadecki and Sadecki Firm, the HBD Trust incurred the following damages: (a) loss of the Lake Angelus Property; (b) loss of approximately $21 million that was not put into the HBD Trust; (c) loss of approximately $2.8 million in tax benefits as a result of charitable contributions not made by the HBD Trust; and (d) excessive attorney fees and costs paid by the HBD Trust.

## COUNT III – BREACH OF TRUST - JENKINS

73. Plaintiff hereby incorporates the allegations contained in the above paragraphs as if stated herein in their entirety.

74. Under the Michigan Trust Code, in connection with the HBD Trust, Jenkins was obligated to, among other things: (a) locate, marshal and secure HBD Trust property; (b) distribute HBD Trust property to the proper beneficiaries; (c) take necessary

action to recover HBD Trust property and funds improperly distributed; (d) keep the qualified trust beneficiaries reasonably informed about the administration of the trust; (e) provide accurate annual accountings.

75. Jenkins breached her duties as Trustee of the HBD Trust, by among other things:

    a. Failing to locate, marshal and secure all Trust property and funds;

    b. making distributions which were inconsistent with the HBD Trust and PSP Trust;

    c. executing the Trustee Deed by which the Lake Angelus Property was conveyed to Steven;

    d. failing to provide annual accountings to the beneficiaries of the HBD Trust;

    e. failing to keep the beneficiaries reasonably informed;

    f. failing to make distributions from the PSP Trust to the HBD Trust, depriving the HBD Trust of a significant charitable deduction for federal estate tax purposes; and

    g. engaging in other acts and omissions that may be ascertained during discovery in this matter.

76. As a direct and proximate result of Jenkins' breaches of Trust, the HBD Trust incurred the following damages: (a) loss of the Lake Angelus Property; (b) loss of approximately $21 million that was not put into the HBD Trust; (c) loss of approximately $2.8 million in tax benefits as a result of charitable deductions not made by the HBD Trust; and (d) excessive attorney fees and costs paid by the HBD Trust.

## COUNT IV – STATUTORY AND COMMON LAW CONVERSION – JENKINS, COUZENS AND HABEL

77. Plaintiff hereby incorporates the allegations contained in the above paragraphs as if stated herein in their entirety.

78. Habel's actions described herein were distinct acts of dominion and/or control wrongfully exerted over HBD Trust Funds and property that were inconsistent with and in complete denial of HBD Trust's interest in the funds and property.

79. MCL 600.2919a provides in part:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

   (a) Another person's stealing or embezzling property or converting property to the other person's own use.

   (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

80. MCL 700.7813(4) provides:

If a person embezzles or wrongfully converts trust property, or refuses, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand, the person is liable in an action brough the current trustee, or the beneficiary of the trust for the benefit of the trust, for double the value of any property embezzled, converted, or wrongfully withheld from the current trustee.

81. Through their actions described above, Habel stole, embezzled or converted HBD Trust funds and property for her own use and benefit.

82. Through the actions described above, Habel has refused to transfer possession of trust property to the current trustee.

83. Through their actions described above, Jenkins and Couzens aided in the

concealment of stolen, embezzled or converted HBD funds and property while knowing the property was stolen, embezzled or converted.

84. Pursuant to MCL 600.2919a(1), on behalf of the HBD Trust, Plaintiff may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees.

## COUNT V – CONSTRUCTIVE TRUST

85. Plaintiff hereby incorporates the allegations contained in the above paragraphs as if stated herein in their entirety.

86. Pursuant to MCL 700.1303(1)(g), this Court may impose a constructive trust on monies and property in possession of others that belong to the HBD Trust, including, but not limited to: (a) the Lake Angelus Property; and (b) all funds that were to be transferred from the PSP Trust to the HBD Trust but were actually transferred to individuals or entities other than the HBD Trust.

87. In order to avoid unjust enrichment and injustice, this Court should impose a constructive trust over the monies and property in possession of others that belong to the HBD Trust, including, but not limited to: (a) the Lake Angelus Property; and (b) all funds that were to be transferred from the PSP Trust to the HBD Trust but were actually transferred to individuals or entities other than the HBD Trust.

## COUNT VI – ERISA CLAIM – JENKINS

88. Plaintiff hereby incorporates the allegations contained in the above paragraphs as if stated herein in their entirety.

89. The PSP Trust is an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

90. As the Trustee of the PSP Trust, Jenkins owed fiduciary duties to the PSP Trust and the beneficiaries of the PSP Trust. 29 USC 1104(a).

91. Under ERISA, the HBD Trust was a beneficiary of the PSP Trust.

92. Jenkins' aforementioned improper distributions from the PSP Trust constitute a breach of fiduciary duties she owed to the HBD Trust and its beneficiaries. Under ERISA, Jenkins is liable for all losses incurred by the HBD Trust as a result of her breach of fiduciary duties.

Wherefore, Plaintiff prays for a Judgment against Defendants, jointly, awarding:

a. imposition of a constructive trust over the monies and property belonging to the HBD Trust;
b. actual damages in excess of $25,000;
c. three times actual damages;
d. costs, interest and attorney fees; and
e. exemplary damages as permitted by law.

Respectfully submitted,

LENNON LAW PLLC

*/s/Edward G. Lennon*
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: February 9, 2024

## JURY DEMAND

Plaintiff, HENRY NIRENBERG, Court-Appointed Special Fiduciary, by and through his attorneys, Lennon Law PLLC, hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

LENNON LAW PLLC

*/s/Edward G. Lennon*
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: February 9, 2024