## UNITED STATE DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HENRY NIRENBERG, as Court Appointed
Special Fiduciary of the Harold B. Doremus
Living Trust, u/a/d January 15, 1982, as
Amended,

      Plaintiff,

vs.

COUZENS, LANSKY, FEALK, ROEDER
& LAZAR, P.C., a Michigan professional
service corporation, JACK S. COUZENS, II,
an individual, SADECKI & ASSOCIATES,
P.L.L.C., a Michigan professional limited
liability company, MARK W. SADECKI, an
individual, KATHLEEN JENKINS, an
individual, JENKINS, MAGNUS VOLK AND
CARROLL, P.C., a Michigan professional
service corporation, and SUSAN HABEL,
an Individual,

      Defendants.

Honorable Terrence G. Berg

Case No:  2:24-cv-10619


## DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

## BRIEF IN SUPPORT

## ORAL ARGUMENT REQUESTED

## <u>DEFENDANTS' COUZENS LANSKY AND JACK COUZENS<br>MOTION TO DISMISS</u>

Defendants, COUZENS, LANSKY, FEALK, ROEDER & LAZAR, P.C., and JACK S. COUZENS, II, by and through their attorneys, Secrest Wardle, move to dismiss Plaintiff's claims against the CL Defendants in their entirety, pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff's multi-count Complaint alleges legal malpractice against the CL Defendants and common law and statutory conversion clams against Jack Couzens.

Plaintiff's legal malpractice claims fail because as the Special Fiduciary, Plaintiff does not have an attorney-client relationship with the CL Defendants and is not the real party in interest to bring such claims. Plaintiff's legal malpractice claims are also barred by the applicable limitations period as is evident from the facts alleged in the Complaint.

Plaintiff's Complaint also establishes Plaintiff's inability to establish causation for its legal malpractice claim against the CL Defendants where the trustee has a statutory right to claw back any proceeds and the suspended trustee exercised that right and the special fiduciary is exercising that right.

Plaintiff's conversion claims against Couzens fail to plead any specific facts supporting common law or statutory conversion and the document referenced by

Plaintiff refutes any claim of "concealment."  Accordingly, Plaintiff's claims against the CL Defendants should be dismissed with prejudice

Pursuant to L.R. 7.1, Defense Counsel certifies that she contacted Plaintiff's counsel on February 12, 2024, by email requesting dismissal of the claims against the CL Defendants and again on March 18, 2024, by email, and had a telephone conference on March 18, 2024. Concurrence was denied.

WHEREFORE, the CL Defendants respectfully request that this Honorable Court grant Defendants' motion and dismiss all claims against the CL Defendants in their entirety, with prejudice, along with all other relief that is just.

Respectfully submitted,
**SECREST WARDLE**

BY:   /s/ DARICE E. WEBER
DARICE E. WEBER (P52084)
Attorney for CL Defendants
2600 Troy Center Drive
P.O. Box 5025
Troy, MI 48007-5025
Dated: March 18, 2024       (248) 539-2869

## UNITED STATE DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HENRY NIRENBERG, as Court Appointed
Special Fiduciary of the Harold B. Doremus
Living Trust, u/a/d January 15, 1982, as
Amended,

      Plaintiff,

vs.

COUZENS, LANSKY, FEALK, ROEDER
& LAZAR, P.C., a Michigan professional
service corporation, JACK S. COUZENS, II,
an individual, SADECKI & ASSOCIATES,
P.L.L.C., a Michigan professional limited
liability company, MARK W. SADECKI, an
individual, KATHLEEN JENKINS, an
individual, JENKINS, MAGNUS VOLK AND
CARROLL, P.C., a Michigan professional
service corporation, and SUSAN HABEL,
an Individual,

      Defendants.

Honorable Terrence G. Berg

Case No:  2:24-cv-10619

## **BRIEF IN SUPPORT**

## __TABLE OF CONTENTS__

Index of Authorities                                                    ii

Concise Statement of Issue Presented                                    iii

Statement of Controlling Authority                                      iv

Index of Exhibits                                                       iv

Introduction                                                            v

Statement of Material Facts                                             vii

Standard of Review                                                      xiv

Legal Argument                                                          xv

## __Argument__

A.  Plaintiff is not the real party in interest and has no
    attorney-client relationship upon which to base a legal
    malpractice claim

B.  Plaintiff is not the real party in interest and has
    no attorney-client relationship upon which to base a
    legal malpractice claim

C.  Plaintiff is not the real party in interest and has no
    attorney-client relationship upon which to base a legal
    malpractice claim

D.  Plaintiff's malpractice claim is barred by the applicable
    limitations period.

E.  Plaintiff's Conversion Claims Against Couzens' Fails
    As A Matter Of Law

CONCLUSION AND RELIEF REQUESTED                                         xxx

## INDEX OF AUTHORITIES

**Cases**

*Fed. R. Civ. P. 12(b)(6).*

*Cataldo v U.S. Steel Corp.,* 676 F.3d 542 (6th Cir. 2012)

*Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).

*Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

*Kloian v. Schwartz*, 272 Mich. App. 232 (2006)

*Estate of Maki v Coen,* 318 Mich App 532 (2017)

*LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

*Nieman v. NLO, Inc*., 108 F.3d 1546, 1554 (6th Cir. 1997)

*Weiner v. Klais & Co*., 108 F.3d 86, 89 (6th Cir. 1997)

*Yeary v. Goodwill Indus.–Knoxville, Inc*., 107 F.3d 443, 445 (6th Cir. 1997)

*Simko v. Blake*, 448 Mich. 648, 655 (1995)

*Mieras v. DeBona*, 452 Mich. 278, 289, 550 N.W.2d 202, 207 (1996)

*Bullis v. Downes*, 240 Mich. App. 462, 467–468, 612 N.W.2d 435 (2000)

*Beatrice Rottenberg Living Trust*, 300 Mich. App. at 356, 833 N.W.2d 384

*Estate of Mitchell v Dougherty*, 249 Mich App 668, 684; 644 NW2d 391 (2002)

*Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994)

*See Voutsaras v. Bossenbrook*, No. 345493, 2020 WL 908495, at *5 (Mich. Ct. App. Feb. 25, 2020)

*Balcom v Zambon*, 254 Mich App 470, 484; 658 NW2d 156 (2003)

*Iafrate v. Warner Norcross & Judd, LLP*, No. 18-CV-12028, 2023 WL 4157277, at *11 (E.D. Mich. June 23, 2023)

*Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586 (1994)

*Pontiac Sch. Dist. v. Miller, Canfield, Paddock & Stone*, 221 Mich. App. 602, 614 (1997)

**Statutes**

**Court Rule**
*MCR 5.117(A)*

*MCL 700.1 et seq.*

*MCL 700.543*

*MCL 700.7813*

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

A.   **WHETHER PLAINTIFF'S LEGAL MALPRACTICE CLAIM MUST BE DISMISSED WHERE PLAINTIFF IS NOT THE REAL PARTY IN INTEREST AND HAS NO ATTORNEY CLIENT RELATIONSHIP WITH DEFENDANTS?**

Plaintiff answers:      No

Defendants answer:   Yes

B.   **WHETHER PLAINTIFF'S LEGAL MALPRACTICE CLAIMS ARE BARRED BY THE APPLICABLE LIMITATIONS PERIOD WHERE ANY REPRESENTATION OF DEFENDANT JENKINS AS TRUSTEE OF THE PROFIT-SHARING PLAN TRUST NECESSARILY ENDED WHEN JENKINS WAS REMOVED AS TRUSTEE ALMOST THREE YEARS BEFORE THIS SUIT WAS FILED AND WHERE DEFENDANT JENKINS AS TRUSTEE OF THE HAROLD B. DOREMUS TRUST REPLACED DEFENDANTS AS COUNSEL OF RECORD IN LITIGATION BROUGHT BY JENKINS AS TRUSTEE OF THE HAROLD B. DOREMUS TRUST?**

Plaintiff answers:      No

Defendants answer:      Yes

C.   **WHETHER PLAINTIFF'S LEGAL MALPRACTICE CLAIM MUST BE DISMISSED WHERE PLAINTIFF CANNOT ESTABLISH CAUSATION IN LIGHT OF THE TRUSTEE'S POSSESSION OF BENEFICIARY DESIGNATION DOCUMENTS AND THE STATUTORY CLAWBACK PROVISION THAT ALLOWS A FIDUCIARY.  TO TAKE ACTION TO RECOVER PROPERTY THAT HAS BEEN IMPROPERLY DISTRIBUTED?**

Plaintiff answers:      No

Defendants answer:      Yes

**D.    WHETHER PLAINTIFF'S CONVERSION CLAIMS AGAINST DEFENDANT COUZENS MUST BE DISMISSED WHERE PLAINTIFF HAS FAILED TO ALLEGE FACTS SUPPORTING A STATUTORY OR COMMON LAW CONVERSION CLAIM AGAINST COUZENS?**

Plaintiff answers:       No

Defendants answer:    Yes

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

The controlling or most appropriate authorities for the relief sought are:

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 17

MCL 600.5805(1) and (6)

MCL 600.5838
*Kloian v. Schwartz*, 272 Mich. App. 232 (2006)

*Estate of Maki v Coen,* 318 Mich App 532 (2017)

## <u>INDEX OF EXHIBITS</u>

A. Complaint

B. Voutsaras v. Bossenbrook case.

C. Iafrate v. Warner Norcross case.

D. Sills v. Kaplan Merzlak case.

## **INTRODUCTION**

This case reads like a law school exam but in its simplest form, it stems from the theft of millions by Defendant Sue Habel from one of two trusts at issue. It involves actions by a special fiduciary to assert claims he does not own as the real party in interest that are time-barred against a law firm, Couzens Lansky, and claims against Jack Couzens that are unsupported by Plaintiff's allegations.

Plaintiff Nirenberg is the Court-Appointed Special Fiduciary in a matter pending in the Oakland County Probate Court, *In re The Harold B. Doremus Trust u/a/d January 15, 1982, as Amended.* (The HBD Trust). It is critical to understand there are **two different trusts involved**: the **HBD Trust** and the **Burke Building Centers, Inc. Profit Sharing Trust** ("**PSP Trust**"). All of the Special Fiduciary's allegations of wrongful withdrawals or distributions of money involve **withdrawals or distributions from the PSP Trust**. It is undisputed that Defendant Habel alone was the trustee of the PSP Trust from February 16, 2021, until its termination and the Couzens' Lansky Defendants ("CL Defendants") never represented Habel.

Plaintiff alleges that the CL Defendants represented Defendant Jenkins in her capacity as trustee of the HBD Trust and as trustee of the PSP Trust.  Plaintiff alleges a litany of actions by the CL Defendants that Plaintiff contends constitutes malpractice. Plaintiff is not the real party in interest to bring legal malpractice claims against the CL Defendants. Even if the CL Defendants represented the trustee,

Plaintiff is not and never was a client of the CL Defendants. Plaintiff may have recourse against the trustee, but he has no legal malpractice claim against the CL Defendants.

Plaintiff alleges approximately $20 million in wrongful distributions from the PSP Trust between 2019 and February 2021. Plaintiff admits that Defendant Jenkins was removed from her position as trustee of the PSP Trust by Defendant Habel on February 16, 2021, almost three years before filing this action. Thus, any representation of Jenkins in her capacity as the trustee of the PSP Trust by the CL Defendants necessarily ended as of February 16, 2021, and any claims against the CL Defendants arising out of that alleged representation are time-barred.

Plaintiff also alleges the CL Defendants committed malpractice in connection with the July 15, 2019, conveyance by Trustee's Deed of the Lake Angelus Property to Steven Doremus. Plaintiff acknowledges that on August 26, 2021, Defendant Jenkins, in her capacity as trustee of the HBD Trust, brought a Petition, through other counsel, against Defendant Habel as Personal Representative of the Estate of Steven Doremus, for return of the property. This action effectively replaced the CL Defendants as the trustee's attorneys in the litigation to recoup in the matter of Lake Angelus property, making Plaintiff's malpractice claim arising out of the 2019 property conveyance time barred.

Plaintiff's claims against the CL Defendants also fail because Plaintiff cannot establish causation regarding the PSP Trust. Plaintiff alleges that Defendant Trustee Jenkins possessed the Designations of Beneficiary and as Trustee, knew or could have and should have known the proper beneficiaries. Additionally, Defendant Trustee could have and should have clawed back any improper distributions and had a statutory vehicle for doing so.

Finally, Plaintiff's conversion claim against Jack Couzens is deficient for multiple reasons but primarily because one cannot "conceal" what is subject to court approval and the settlement agreement upon which Plaintiff bases his conversion claim has never been approved.

## <u>STATEMENT OF MATERIAL FACTS</u>

Plaintiff Nirenberg is the Court-Appointed Special Fiduciary in a matter pending in the Oakland County Probate Court, *In re The Harold B. Doremus Trust u/a/d January 15, 1982, as Amended.* Plaintiff alleges this lawsuit arises out of the mismanagement of two trusts and the related theft of over $20 million in monies and assets from those trusts. Those trusts include the Harold B. Doremus Trust, u/a/d January 15, 1982 ("**HBD Trust**") and the Burke Building Centers, Inc. Profit Sharing Trust (the "**PSP Trust**"). Plaintiff does not allege that he is a client of the CL Defendants because he is not.

## The HBD Trust

Plaintiff alleges that upon Harold B. Doremus' death on February 13, 2019, the HBD Trust had assets valued at $17,484,449.37. Following Harold's death, Defendant Jenkins became the successor trustee of the HBD trust. Plaintiff alleges that Defendant Jenkins retained the CL Defendants to "represent her and provide advice to Jenkins" in her capacity as Trustee of the HBD Trust (and the PSP Trust and Personal Representative of the HBD Estate). (Ex. A, Complaint, Para 39). Plaintiff further alleges that Defendant Jenkins possessed the Designation of Beneficiary during the entire time the CL Defendants represented Jenkins in her capacity as trustee of the HBD Trust. (Ex. A, para 40-41).

Plaintiff further alleges that the HBD Trust provided for "Steven's health, education, support and maintenance consistent with his accustomed standard of living" during his life, and following his death, the HBD Trust was to be distributed in certain percentages to three persons (Jane Anne Doremus, Judson Burke St. John, Jr., and Dylan St. John), a church, college, and university. (Ex. A,Para 36-38).

## The Lake Angelus Property

Plaintiff alleges that Harold owned Lake Angelus property at the time of his death. Plaintiff alleges that the fair market value of the home is in excess of $1.1 million.   (Ex. A, Para 29-30). Plaintiff fails to note that the Lake Angelus Property included two parcels, and only one had been conveyed to Steven.

### Steven Doremus

Plaintiff alleges that Harold was survived by his son, Steven Doremus, who then died on November 13, 2020.  (Ex. A, Para 24-25).  In the 21 months he lived after his father's death, he was co-trustee of the PSP Trust.  He and Jenkins had $8.5 million transferred from the PSP Trust to Burke Lumber employee profit sharing plan.  Steven was not married and had no descendants, but he had Defendant Susan Habel as his long-term partner. (Ex. A, Para 24-28).  Defendant Habel became the Personal Representative of the Estate of Steven Doremus and President of the Burke Lumber Company.

### Transfers to The Steven Doremus Beneficiary IRA

On November 6, 2020, Jenkins as Trustee of the PSP Trust transferred $250,000 from the PSP trust to the Steven B. Doremus Beneficiary IRA. On December 30, 2020, Jenkins as Trustee of the PSP Trust transferred $3 million from the PSP trust to the Steven B. Doremus Beneficiary IRA.

### The PSP Trust

Plaintiff alleges that Harold's interest in the PSP Trust was valued at $20,274,023. (Ex. A, Para 20-23).  Jenkins served as the trustee of the PSP Trust until at least February 16, 2021, when Defendant Habel, in her capacity as officer of Burke Building Centers, Inc., removed Jenkins as trustee of the PSP Trust and

appointed herself as trustee. (Ex. A, Para 48), Plaintiff alleges that at the time of Jenkins' removal, there remained approximately $2,469,466.77 in the PSP Trust.

Plaintiff alleges that upon Harold's death, the Trustee of the PSP was obligated to make certain distributions, including eight million in charitable contributions to churches and institutions, $500,000 to Kathy Horton and the remainder to the HBD Trust. (Ex, A, Para 35).

### The Claim Against Steven Doremus' Estate

On May 4, 2021, Defendant Jenkins, as trustee of the HBD Trust, filed a Proof of Claim to Steven Doremus' Estate, seeking return of Lot 36 of the Lake Angelus Property, as well as reimbursement for certain improper distributions and expenses paid for the property in the event it is not returned. Inexplicably, the Claim did not include the more than $9 million distributed to Susan Habel INH IRA Beneficiary of Steven Doremus from the PSP Trust in February 2021, when those funds should have gone to the HBD Trust. Defendant Habel denied the claim.

### The Habel Litigation

On August 26, 2021, Defendant Jenkins, in her capacity as trustee of the HBD Trust, through Defendant Attorney Sadecki,  brought a Petition against Defendant Habel as Personal Representative of the Estate of Steven Doremus. (Ex. A, Para 50). The Petition acknowledged that the Lake Angelus property had been improperly

conveyed to Steven Doremus and sought to have it and certain money returned to the HBD Trust. (Ex. A, Para 53).

## Transactions at Issue

Plaintiff alleges that Jenkins, relying upon the advice of counsel, made certain distributions that are inconsistent with the HBD Trust and the PSP Trust, including:

- July 15, 2019, conveyance by Trustee's Deed of the Lake Angelus Property to Steven.

- September 24, 2019, withdrawal of $5 million from the PSP Trust to the Burke Lumber Company employee profit Sharing plan.

- October 1, 2019, withdrawal of $3.5 million from the PSP Trust to the Burke Lumber Company employee profit Sharing plan.

- November 6, 2020, Jenkins as Trustee of the PSP Trust transferred $250,000 from the PSP trust to the Steven B. Doremus Beneficiary IRA.

- December 30, 2020, Jenkins as Trustee of the PSP Trust transferred $3 million from the PSP trust to the Steven B. Doremus Beneficiary IRA.

- February 11, 2021, Jenkins directed and authorized the disbursement of $9,210,936.25 from the PSP Trust to the "Susan Habel INH IRA Beneficiary of Steven Doremus, instead of directing those funds to the HBD Trust.

## Petition to Remove Jenkins as Trustee of HBD Trust

On December 12, 2022, certain beneficiaries brought a Petition for an order requesting, *inter alia,* removal of Defendant Jenkins as trustee of the HBD Trust. On January 25, 2023, the Probate Court suspended Jenkins' powers as Trustee of the HBD Trust. (Ex. A, Para 56-57).  In a June 29, 2023, Order, the Probate Court appointed Plaintiff as special fiduciary "to investigate the circumstances

surrounding the conveyance by Kathleen Jenkins of the property located in Lake Angelus, Michigan; investigate the merits of Ms. Jenkins' claims of legal malpractice surrounding the conveyance; and investigate the appropriateness of trust funds being used to pay for Ms. Jenkins' legal defense." (Para 58).

### Probate Court Order Purporting To Expand Special Fiduciary's Powers

In a December 18, 2023 Order, the Probate Court purported to expand the Special Fiduciary's powers, purporting to render him: "empowered …to pursue any and all malpractice claims available to the HBD trustee and the Suspended Trustee, Kathleen Jenkins,...and further, to take such necessary action and file such claims as may be necessary to preserve and prosecute claims on behalf of the HBD Trust relative to its interest in" the PSP Trust. (Para 62).

### The Malpractice Allegations Against The CL Defendants

Plaintiff alleges that the CL Defendants committed legal malpractice in the following ways: (a) failing to fully advise Jenkins of her duties as Trustee of the HBD Trust and the PSP Trust; (2) failing to advise Jenkins of the proper distributions to be made under the HBD Trust and the PSP Trust; (3) recommending Jenkins make distributions inconsistent with the HBD Trust and the PSP Trust; (4) engaging in a conflict of interest by representing both Jenkins and Steven in connection with the conveyance of the Lake Angelus Property to Steven; (5) recommending, drafting and presenting to Jenkins for execution the Trustee Deed

used to convey the Lake Angelus Property to Steven; (6) failing to advise Jenkins to provide annual accountings to the beneficiaries of the HBD Trust; (7) failing to advise Jenkins to keep the beneficiaries informed; (8) failing to advise Jenkins of the distributions the PSP Trust should make to the HBD Trust, depriving the HBD Trust of a significant charitable deduction for federal estate tax purposes; and (9) engaging in other acts of malpractice that may be ascertained during discovery in this matter. (Para 66).

## The Alleged Damages

Plaintiff alleges that the alleged malpractice by the CL Defendants caused: (1) loss of the Lake Angelus property; (2) loss of approximately 21 million that was not put into the HBD trust; (3) loss of approximately $2.8 million in tax benefits as a result of charitable contributions not made by the HBD Trust; and (4) excessive attorney fees and costs paid by the HBD Trust.

## Alleged Conspiracy

While admitting that Defendant Sadecki was representing Defendant Jenkins in the Petition litigation, Plaintiff alleges that Defendant Jenkins and Defendant Habel have conspired to attempt to enter into a settlement agreement that would purportedly release from liability claims against Jenkins, Habel and Couzens' Lansky. (Ex. A, Para 52-54).  Plaintiff acknowledges the settlement agreement has not been executed or approved. (Ex. A, Para 54).

## <u>STANDARD OF REVIEW</u>

A Rule 12(b)(6) motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court must "construe the complaint in the light most favorable to the plaintiff [and] accept its allegations as true . . . ." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

"A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that defendant is liable for the alleged misconduct." *Id.*

The "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect", and another defendant was "instrumental" in adopting and executing a policy of

invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth).

When the allegations in a complaint affirmatively show that a claim is time-barred, it is appropriate for a Court to dismiss it under Rule 12(b)(6). *Cataldo v U.S. Steel Corp.,* 676 F.3d 542, 547 (6th Cir. 2012)

## LEGAL ARGUMENT

### A. Plaintiff is not the real party in interest and has no attorney-client relationship upon which to base a legal malpractice claim

To establish a legal malpractice claim in Michigan, a plaintiff must demonstrate: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged. *Simko v. Blake*, 448 Mich. 648, 655 (1995) (citations omitted).

Plaintiff alleges that "pursuant to the Court's orders in the *Jenkins* litigation, the Special Fiduciary has the power to bring legal malpractice claims. Plaintiff may have authority to bring claims that belong to the HBD Trust, but Plaintiff does not have authority to bring legal malpractice claims against the CL Defendants. Plaintiff cites no legal authority for the proposition that a Probate Court can give a special fiduciary power to sue attorneys with whom it has no attorney client relationship because there is none.

While the Probate Court has the power to appoint special fiduciaries and to empower them to take certain actions, a legal malpractice claim, with very limited exceptions, can be brought only by a client.  The limited exceptions, which include allowing beneficiaries of estate planning documents to maintain an action as a third-party beneficiary against a lawyer for breach of contractual obligations owed the testator by the lawyer, do not apply here. *See Mieras v. DeBona*, 452 Mich. 278, 289, 550 N.W.2d 202, 207 (1996) and *Bullis v. Downes*, 240 Mich. App. 462, 467–468, 612 N.W.2d 435 (2000).

Fed. R. Civ. P. 17 requires that an action be brought by the real party in interest.  Under Fed. R. Civ. P. 17, the Special Fiduciary is the real party in interest for <u>claims held by the *HBD Trust*</u>. But the HBD Trust does not have any legal malpractice claims against the CL Defendants because the CL Defendants did not represent the HBD Trust.

The Michigan Probate Court Rules provide that "an attorney filing an appearance on behalf of a fiduciary or trustee shall represent the fiduciary." MCR 5.117(A). Accordingly, the CL Defendants represented Jenkins <u>in her capacity as trustee of the HBD Trust</u>. Plaintiff does not and cannot allege that he has an attorney client relationship with the CL Defendants.

This conclusion is confirmed by *Estate of Maki v. Coen*, 318 Mich. App. 532 (2017) *lv app denied,* 501 Mich 879 (2017), where the Court of Appeals held that

the father, who was appointed guardian over his child's estate and person, could not bring a legal malpractice action against an attorney who represented the mother during her time as the child's conservator.  *Id.*, at 539-541. The Court held that the attorney hired to perform legal services for the conservator represents the conservator and does not have an attorney client relationship with the estate.  *Id.*

In *Maki*, Defendant attorneys asserted that plaintiff lacked standing as the real party in interest because the attorney's client—the only person entitled to file a malpractice claim—was the conservator Maki–Childs. The attorneys argued that they had no attorney-client relationship with plaintiff and that plaintiff was not the real party in interest. *Id.,* at 536-537.

The trial court concluded that only Maki–Childs had standing to sue the attorneys. The court explained that concluding that the attorney represented both the conservator and the estate would lead to a conflict of interest and that the caselaw cited by plaintiff was distinguishable.

The Court of Appeals affirmed, noting that the "'real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Beatrice Rottenberg Living Trust*, 300 Mich. App. at 356, 833 N.W.2d 384 (citation omitted).  The court noted that the "crux of defendants' argument in the trial court was that plaintiff was not the real party in interest because the Coen defendants represented [the conservator], rather than

plaintiff. "Absent unique circumstances, an attorney is only liable in negligence to his client." *Mieras v. DeBona*, 452 Mich. 278, 297, 550 N.W.2d 202 (1996)." *Id.,* at 539.

The Court relied on the contrast in language in the new EPIC and the former Revised Probate Code (RPC), MCL 700.1 et seq., which had provided, "Without obtaining a court order, a fiduciary of an estate may employ counsel to perform necessary legal services in behalf of the estate and the counsel shall receive reasonable compensation for the legal services." MCL 700.543 (emphasis added). Thus, the plain language of the RPC expressly established that the attorney rendered assistance on behalf of the estate. **The Court noted that the Legislature removed this language in the EPIC and replaced it with language indicating that the attorney provides legal services and assistance to the conservator**. Thus, the Court concluded that the plain language of the statute establishes that an attorney hired by a conservator represents the conservator, and the attorney does not have an attorney-client relationship with the estate. *Id.,* at 540.

The Court observed that the "Michigan Court Rules provide further clarification on this issue. MCR 5.117(A) provides, "An attorney filing an appearance on behalf of a fiduciary shall represent the fiduciary." The plain language of this court rule is clear that an attorney appearing in the probate court on behalf of a conservator represents the conservator rather than the estate.

Accordingly, we conclude that the plain language of the relevant statute and court rule establishes that an attorney employed by the conservator represents the conservator and not the estate." *Id.,* at 541-542.

Accordingly, the Court concluded that "because we conclude that Coen defendants represented only [the conservator], plaintiff cannot assert malpractice against the Coen defendants in the instant suit because it is not the real party in interest."  The estate was not the client of the attorneys. *Id.,* at 544-545.

Applying *Maki* to this case, it is clear Plaintiff Special Fiduciary is not the real party in interest and does not have standing to pursue this legal malpractice claim. Although *Maki* involved a conservator, and this case involves trustees, the court rule relied on in *Maki* applies to all fiduciaries, it is not limited to conservators.  MCR 5.117(a) provides, "An attorney filing an appearance on behalf of a fiduciary shall represent the fiduciary; Plaintiff does not and cannot allege that the Special Fiduciary had an attorney client relationship with the CL Defendants. Accordingly, Plaintiff's legal malpractice claims against the CL Defendants must be dismissed with prejudice.

## B. <u>Plaintiff's Malpractice Claim Is Barred by The Applicable Limitations Period.</u>

A legal malpractice claim must be filed within two years of the date the claim accrues, or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." *Kloian v. Schwartz*, 272 Mich. App.

232, 237 (2006) (citing Mich. Comp. Laws 600.5805(1) and (6), 600.5838(1)). The claim accrues when the lawyer stops serving the plaintiff in a professional capacity as to the matters out of which the claim arose. MCL 600.5838(1). Plaintiff's complaint allegations establish that the legal malpractice claims are time-barred.

1. Plaintiff's Malpractice Claims Based On The PSP Are Barred by The Applicable Limitations Period.

Michigan Courts have developed some "special rules" for determining precisely when the attorney discontinues serving the client for purposes of accrual. *Kloian, supra,* at 237. An attorney discontinues serving the client when the client or the court relieves the attorney of the obligation. *Kloian, supra,* at 237. A formal discharge is not required; the termination of the attorney client relationship may be inferred from the client's actions. *Estate of Mitchell v Dougherty*, 249 Mich App 668, 684; 644 NW2d 391 (2002). The client's retention of alternate counsel discontinues the attorney's service. *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994). When the attorney is not dismissed or replaced by new counsel, the attorney's service discontinues when the attorney completes the "specific legal task" for which the client retained the attorney. *Kloian, supra,* at 238.

Stated another way, the attorney's service discontinues on the "last day of professional service in the matter out of which the claim for malpractice arose." *Id.* (citation and internal quotations omitted). *See Maddox*, 205 Mich. App. at 450 ("A lawyer discontinues serving a client ... upon completion of a specific legal service

that the lawyer was retained to perform."). *See Voutsaras v. Bossenbrook*, No. 345493, 2020 WL 908495, at *5 (Mich. Ct. App. Feb. 25, 2020) (legal malpractice claim accrued when client executed documents setting up trust (even though client did not pick up her file until months later) and noting that there is no evidence demonstrating that attorney's representation continued past that date).(Ex. B)

Once the attorney discontinues serving the client, an additional ministerial or follow up task does not extend the accrual date. *Kloian,* 272 Mich App *at* 238, n 2; *Bauer,* 235 Mich App at 539. The attorney's representation of the client in a different matter also does not extend the accrual date. *Balcom v Zambon*, 254 Mich App 470, 484; 658 NW2d 156 (2003).

Plaintiffs allege that the CL Defendants represented Jenkins in her capacity as trustee of the PSP Trust, and that Jenkins served as trustee of the PSP trust until Feb 16, 2021 (Ex. A, para 32). She was removed as trustee by Defendant Habel on February 16, 2021. (Ex. A, Para 48.) Plaintiff alleges that multiple improper transfers of funds occurred between 2019 and February 2021. (Ex. A, Para 43).

Thus, even under Plaintiff's allegations, the CL defendants could not have represented Jenkins in her capacity as trustee of the PSP after she was removed as trustee. Consequently, the absolute last day on which the CL defendants could have represented Jenkins as trustee of the PSP Trust is February 16, 2021.

Plaintiff did not file this action until February 9, 2024, or just short of three (3) years after the CL defendants would have stopped representing Jenkins in her capacity as trustee of the PSP.  Jenkins' removal as trustee is analogous to the client or the court relieving the attorney of their obligation, which constitutes discontinuation of service. *Kloian, supra,* at 237.  Because this action is filed more than two years after the CL Defendants' discontinuation of service as attorneys for Jenkins in her role as trustee of the PSP Trust, Plaintiff's malpractice claim against the CL defendants based on alleged representation of Jenkins as the PSP trustee is barred by the applicable limitations period.

Plaintiff alleges that the CL defendants continue to represent Jenkins in an attempt to invoke the continuous representation doctrine, but that doctrine does not save Plaintiff's claims. Under the continuous representation doctrine, the court looks not to a specific event as the time at which the claim accrues, but to the point when an attorney ceases to perform "continuing services" for a client. Stated another way, when the doctrine applies, claims for malpractice do not accrue with each specific transaction, but when the attorney stops providing services to the client on that matter. Here, as set forth above, the CL Defendants stopped providing legal services to Defendant Jenkins <u>in her role as the trustee of the PSP Trust</u> no later than the date when Jenkins was removed as trustee.  The CL Defendants could not have provided

Jenkins with "generalized legal services" <u>in her capacity as trustee of the PSP Trust</u> since she was no longer the trustee of the PSP Trust.

The CL Defendants' representation of Jenkins <u>in her role as trustee of the HBD Trust</u> does not extend the time for filing suit under the continuous representation doctrine. The Court of Appeals has recognized that the attorney's representation of the client <u>in a different matter</u> does not extend the accrual date. *Balcom v Zambon*, 254 Mich App 470, 484; 658 NW2d 156 (2003). In *Balcom,* Defendants represented the plaintiff in two different actions arising out of a bar brawl. Initially, Defendants represented plaintiff in a criminal proceeding and later in a civil suit.  Plaintiff brought a legal malpractice action alleging that defendant attorneys committed malpractice by failing to obtain a valid release of civil liability in the criminal case. The court ruled that although the plaintiff's claim was filed within two years of the civil action, it was not filed within two years of the criminal action and thus plaintiff's claims arising out of representation in the criminal matter were time-barred.

A similar analysis applies here. Even if the CL Defendants have represented Jenkins <u>in other roles</u> within the last two years, any such representation of Jenkins in <u>other matters</u>, <u>such as her role as trustee of the HBD Trust</u>, does not operate to extend the time for filing suit against the CL Defendants for alleged representation of Jenkins <u>in her role as trustee of the PSP Trust.</u> Plaintiff's claim is time-barred.

C. **Plaintiff's Malpractice Claim Based On The Lake Angelus Property Transfer Are Time-Barred.**

Plaintiff also alleges the CL Defendants committed malpractice in connection with the July 15, 2019, conveyance by Trustee's Deed of the Lake Angelus Property to Steven Doremus. The analysis in *Iafrate v. Warner Norcross & Judd, LLP*, No. 18-CV-12028, 2023 WL 4157277, at *11 (E.D. Mich. June 23, 2023) is instructive here.

In *Warner Norcross*, the Plaintiffs' malpractice claim was premised on documents Defendant law firm had created in 2013, including Common Stock Warrants. The Warrants entitled each holder the option to purchase shares from the Company at a set price, or redeem shares for cash payment, but contained a termination provision indicating that the Warrants could no longer be exercised after a certain date. In 2018, Plaintiffs attempted to but were unable to cash in on the Warrants and filed a malpractice claim. Defendant argued the claim was time was time-barred. The court agreed. The court ruled that the specific "legal service" on which the malpractice claim was premised was the 2013 creation of the Warrants. Thus, Plaintiffs' legal malpractice claim against WNJ accrued no later than December 6, 2013, and should have been brought by December 6, 2015. *Iafrate v. Warner Norcross & Judd, LLP*, No. 18-CV-12028, 2023 WL 4157277, at *12 (E.D. Mich. June 23, 2023). (Ex. C)

Similarly, the deed at issue for the transfer of the Lake Angelus property was dated July 15, 2019, or more than four years before Plaintiff filed this malpractice claim. Consequently, the claim is time-barred.

Plaintiff may argue that on August 26, 2021, Defendant Jenkins, in her capacity as trustee of the HBD Trust, brought a Petition against Defendant Habel as Personal Representative of the Estate of Steven Doremus, for return of the property. Even using that date, Plaintiff's malpractice claim arising from the 2019 property conveyance is time-barred.

Plaintiff will also argue that the continuous representation doctrine makes this claim timely, but again, that doctrine does not save Plaintiff's claims, albeit for a different reason. As Plaintiff alleges, as of August 2021, Defendant Jenkins had replaced the CL Defendants with Defendant Sadecki to represent Jenkins in litigation in her role as trustee of the HBD Trust to recover trust assets from Steven Doremus' Estate and Defendant Habel in the *Habel* Litigation. (Ex. A, Para 50-54). This replacement of the CL Defendants in litigation specifically for the purpose of clawing back the Lake Angelus property (and other distributions), terminated the CL Defendants' representation of Jenkins in litigation in her role as trustee of the HBD Trust with respect to the matter at issue. It also established the Trustee's knowledge that the transfer of the Lake Angelus property was improper. While the CL Defendants continued to represent Jenkins in her role as trustee of the HBD Trust

for *administrative matters*, that does not operate to extend the limitations period, particularly where the trustee was aware of the improper distribution. Plaintiffs' claims should be dismissed.

### D. **Plaintiff's Legal malpractice claims fail because Plaintiff Cannot Establish Causation.**

Plaintiff's malpractice claim against the CL Defendants also fails as a matter of law because Plaintiff cannot establish causation. To prove proximate cause in a legal malpractice action in Michigan, a plaintiff must establish that the defendant's action was a cause in fact of the claimed injury. *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586 (1994). "[T]he plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.'" *Pontiac Sch. Dist. v. Miller, Canfield, Paddock & Stone*, 221 Mich. App. 602, 614 (1997) (quoting *Skinner v. Square D Co.*, 445 Mich. 153, 164-165 (1994)). The mere possibility of causation in fact is not enough and speculation or conjecture cannot support causation. *Id.* at 613-615 (citations omitted).

Plaintiff cannot establish that the CL Defendants' actions were the cause of any claimed injury where Plaintiff alleges that Defendant Trustee Jenkins possessed the Designations of Beneficiary. (Ex. A, para. 40-41). A Trustee with the beneficiary designation forms should be able to determine the proper beneficiaries.  Whether she relied on the CL Defendants or made her own mistakes does not need to be

determined. Once she possessed the beneficiary designation forms, she had the information she needed to ensure proper distributions.

Additionally, as trustee, Defendant Jenkins had recourse to MCL 700.7813, which provides for and allows a trustee to take steps to claw back property that has been improperly distributed. *See also, 29 U.S.C. 1132(a).* Defendant Trustee Jenkins took such action with respect to the Lake Angelus property, breaking any causal link between the CL Defendants' alleged action and the alleged loss of property. Jenkins could have and should have taken such action with respect to the improper distributions from the PSP Trust, and Plaintiff is currently taking such action against Defendant Habel. Plaintiff and Defendant Jenkins' actions and inactions break any causal link and make any alleged damages speculative.

An analogous situation was presented in *Sills v Kaplan Merzlak, P.C, et al*, No. 363557 (Mich. Ct. App. Jan. 18, 2024) (Ex. D.). In this accounting malpractice case, Plaintiff claimed that her ability to file an Amended return for her 2018 taxes did not defeat causation on her accounting malpractice claim arising from the 2018 tax return. *Sills*, *supra, at* *9. The trial court concluded that no amount of discovery would establish a causal connection between defendants' conduct and plaintiffs' alleged injuries or change the fact that the time for filing an amended 2018 tax return had not yet expired. *Sills, supra, at* *11. Thus, plaintiff could not establish causation or damages. *Id.,* at * 9-11. The Court of Appeals affirmed the causation ruling.

This case is analogous to *Sills*.  No discovery will change the fact that the trustee had the beneficiary Designations and the statutory means to claw back property. It is undisputed the trustee had that power after the dates of the alleged malpractice.   It appears based on Plaintiff's Complaint the Special fiduciary still possesses that ability.   Thus, as in *Sills,* Plaintiffs cannot establish the requisite causation and his legal malpractice claims should be dismissed.

## E. Plaintiff's Conversion Claims Against Couzens' Fails As A Matter Of Law

Plaintiff alleges both common law and statutory conversion claims against Defendant Couzens but both claims fail as a matter of law.

### 1. Common Law Conversion

Common law conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip., Inc. v Columbian Distrib. Servs, Inc.,* 497 Mich 337, 351-52; 871 NW2d 136 (2015).   Plaintiff does not allege and cannot allege that Defendant Couzens ever exerted any "distinct act of dominion" over any Trust property.  Because that is an essential element of a common law conversion claim, this claim must be dismissed.

In addition, the statute of limitation for a conversion claim is three years MCL 600.5805(2).   Accordingly, any alleged statutory conversion claims arising more than three years before the February 9, 2024, filing of the complaint is barred.

2. <u>Statutory Conversion</u>

MCL 600.2919a provides a remedy for a person damaged by "another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person…aiding in the concealment of stolen, embezzled or converted property knew that the property was stolen, embezzled or converted.

Plaintiff has no specific factual allegations against Jack Couzens related to "aiding" in concealment. Plaintiff alleges only that Defendant Jenkins and Habel "conspired to attempt to enter into a settlement agreement" and that "through their actions described above, "Couzens aided in the concealment." (Ex. A, Para. 83.)  A review of the proceeding 82 paragraphs discloses no specific allegations attributable to Defendant Couzens.

Plaintiff's reference to a settlement agreement and the allegations in paragraph 16, which do not specifically mention Couzens, suggest the "attempted" settlement agreement is indeed the factual allegation relied on by Plaintiff.  But this does not support a statutory conversion claim against Couzens for multiple reasons. First, Couzens was not the attorney of record representing Jenkins in her capacity as the trustee of the HBD Trust in the litigation (the claim) against Steven Doremus' Estate (the "Habel" litigation), giving rise to the "attempted" "agreement." Second, the "attempted" agreement referenced specifically provides that it is subject to

judicial approval and notice to the heirs would be given.  A requirement of judicial pre-approval is indisputably inconsistent with a claim of "aiding in the concealment." Finally, the "attempted" Agreement has not yet been approved. Thus, the "attempted" agreement has not "concealed" anything. Those key facts defeat any statutory conversion claim against Couzens.

Finally, the statue of limitation for a statutory conversion claim is three years MCL 600.5805(2).  Accordingly, any alleged statutory conversion claims arising more than three years before the February 9, 2024, filing of the complaint is barred. *See Tillman v Great*, 277 Mich App 47; 742 NW2d 622 (2007).

## **CONCLUSION AND RELIEF REQUESTED**

Plaintiff's claims against the CL Defendants must be dismissed with prejudice for failure to state a claim for several reasons.  Plaintiff is not the real party in interest and had no attorney client relationship with the CL Defendants, his claims are time-barred, and he cannot establish causation.  Plaintiff's conversion claims against Jack Couzens fare no better.  No amendments to the complaint or factual developments will save Plaintiff's claims.   Accordingly, Plaintiff's claims against the CL Defendants should be dismissed with prejudice.

Respectfully submitted,
**SECREST WARDLE**
BY:   /s/ DARICE E. WEBER
DARICE E. WEBER (P52084)
Attorney for CL Defendants
2600 Troy Center Drive
P.O. Box 5025
Troy, MI 48007-5025
Dated: March 18, 2024                    (248) 539-2869

## CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES THAT THE WITHIN INSTRUMENT WAS SERVED UPON ALL PARTIES TO THE ABOVE CAUSE TO THE ATTORNEY OF RECORD HEREIN ON **March 18, 2024,** BY:

__ U.S. MAIL __ HAND DELIVERED   X ECF E-FILE AND SERVE SYSTEM

SIGNATURE:  */s/Tiffany Jones*