UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY NIRENBERG, as Court-Appointed
Special Fiduciary of the Harold B. Doremus
Living Trust, u/a/d January 15, 1982, as
Amended,

|  |  |
|---|---|
| Plaintiff, | Case No. 2:24-cv-10619-BRM-KGA |
|  | Hon. Brandy R. McMillion |
|  | Removed from Oakland County Probate |
| v | Court Case No. 2024-418581-CZ |

COUZENS, LANSKY, FEALK, ROEDER
& LAZAR, P.C., a Michigan professional
service corporation, JACK S. COUZENS, II,
an individual, SADECKI & ASSOCIATES,
P.L.L.C., a Michigan professional limited liability
company, MARK W. SADECKI, an individual,
KATHLEEN JENKINS, an individual, JENKINS,
MAGNUS, VOLK AND CARROLL, P.C., a
Michigan professional service corporation, and
SUSAN HABEL, an individual,

     Defendants.

_____/

## PLAINTIFF'S
## MOTION TO REMAND STATE LAW CLAIMS TO STATE COURT

Plaintiff, Court-Appointed Special Fiduciary Henry Nirenberg, through his

counsel, Lennon Law PLLC, hereby moves to remand the state law claims in this

case back to Oakland County Probate Court.  In support of this motion, Plaintiff

relies on the attached brief in support.

Pursuant to Local Rule 7.1(a)(2), undersigned counsel states that, on April 8, 2024, he sent an email to all counsel representing Defendants seeking concurrence in this motion, and that concurrence was denied.

LENNON LAW PLLC

*/s/ Edward G. Lennon*
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI  48009
(248) 723-1276
Dated:  April 9, 2024          elennon@lennonlawpllc.com

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED..................................................................... iv

INTRODUCTION .................................................................................................... 1

RELEVANT FACTS ................................................................................................ 1

    I.     Harold Doremus and his Trust. ................................................................... 1

    II.    Harold's intended distribution scheme. ........................................................ 2

    III.   Relying upon the advice of Couzens Lansky, Jenkins makes distributions which are inconsistent with the HBD Trust and PSP Trust. ........................................... 3

    IV.   Represented by the Sadecki Defendants, Jenkins commences litigation against Habel. . 5

    V.    Oakland County Probate Judge Linda Hallmark appoints Plaintiff to investigate and prosecute claims based on the improper distributions. .................................... 6

ARGUMENT ......................................................................................................... 7

    I.     The claims asserted in this litigation. ........................................................... 7

    II.    Because this matter concerns almost exclusively trust matters governed by Michigan law, it should be remanded to State Court. ..................................................... 9

    III.   Couzens Lansky and potentially other Defendants are collaterally attacking the Probate Judge's Orders.  These defenses should be raised in front of Judge Hallmark.............. 11

CONCLUSION AND RELIEF REQUESTED .......................................................... 14

i

# INDEX OF AUTHORITIES

## CASES

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357, 349-50,
108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ............................................................ 9, 10

*Carter v. United States,* 135 F.2d 858, 861 (5th Cir. 1943) ...................................12

*Celotex Corp. v. Edwards,* 514 U.S. 300, 305-07,
115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) ............................................................12

*Republic Bldg. Co. v. Charter Twp. of Clinton*,
81 F.4th 662, 666 (6th Cir. 2923) ..........................................................................11, 12

*Soliday v. Miami County*, *Ohio*, 55 F.3d 1158, 1164 (6th Cir. 1995) ......................9

*Spartan Mills v. Bank of Am. Ill., 112 F.3d 1251, 1255 (4th Cir. 1997)*.................12

*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130,
16 L. Ed. 2d 218 (1966) ..........................................................................................10

*United States v. United Mine Workers of America*, 330 U.S. 258, 289-94,
67 S. Ct. 677, 694-96, 91 L. Ed. 884, 911-13 (1947); [*26] ...................................12

## RULES OF CIVIL PROCEDURE

MCR 5.204 .............................................................................................................7, 13

## STATUTES

29 U.S.C. 1001 Employee Retirement Income Security Act of 1974 .......................1

28 U.S.C. § 1367(a) ................................................................................................9

28 U.S.C. § 1367(c) ................................................................................................9

MCL 600.2919a ......................................................................................................8

MCL 700.1309 ........................................................................................................7

MCL 700.7813(4) .......................................................................................................8

**<u>OTHER</u>**

7 Moore's Federal Practice § 60.25[2] ....................................................................12

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.     After removal of this case by Defendants, whether this Court should remand the state law claims back to Oakland County Probate Court because state law claims are the predominant claims in this case?

Plaintiff says "Yes".

Defendants say "No".

2.     Should this Court remand the state law claims back to Oakland County Probate Court because some of the Defendants are attempting to collaterally attack Orders entered by an Oakland County Probate Court judge?

Plaintiff says "Yes".

Defendants say "No".

## INTRODUCTION

Plaintiff, Henry Nirenberg, is the Court-Appointed Special Fiduciary in *In re The Harold B. Doremus Trust u/a/d January 15, 1982 as Amended*, Oakland County Probate Court No. 2022-410,889-TV. This lawsuit seeks to recover over $20 million in monies and property lost as a result of the mismanagement of two trusts. Plaintiff asserts eight separate claims, seven of which are based on state law, against seven Defendants. Defendants removed this case to this Court solely because one claim against one Defendant is a claim brought under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. 1001. For the reasons discussed below, this Court should remand the state law claims back to Oakland County Probate Court.

## RELEVANT FACTS

### I.  Harold Doremus and his Trust.

Harold Doremus ("Harold") was born in 1922 and was the successful founder of Burke Building Centers, Inc. Harold's career allowed him to amass wealth, about which he had very specific intentions upon his death. (**Exhibit A**, February 9, 2024 Complaint filed in Oakland County Probate Court, ¶ 17[1]). Harold established The Harold B. Doremus Trust u/a/d January 15, 1982, as

---

[1] Unless otherwise indicated, future paragraph citations refer to the February 9, 2024 Complaint filed in Oakland County Probate Court.

1

Amended (the "HBD Trust") (¶ 18).  Harold died on February 13, 2019, making the HBD Trust irrevocable.  (¶ 20).

Upon information and belief, at the time of Harold's death, the HBD Trust had assets valued at $17,484,449.37.  (¶ 21).  At the time of Harold's death, Harold had an 89.7596% interest in the Burke Building Centers Inc. Profit Sharing Trust, Charles Schwab Account No. XXX-2179 (the "PSP Trust"), and that interest was valued at $20,274,023.  (¶ ¶ 22, 23).  Pursuant to a December 10, 2018 Designation of Beneficiary (the "Designation of Beneficiary"), the HBD Trust is the residuary beneficiary of Harold's interest in the PSP Trust.  (¶ 34).

## II. **Harold's intended distribution scheme.**

At the time of Harold's death, he owned a home located at 1054 Lake Angelus Shores, Lake Angelus, Michigan (the "Lake Angelus Property"), believed to be worth more than $1.1 million.  (¶¶ 29, 30).

Pursuant to the Designation of Beneficiary, upon Harold's death, the Trustee of the PSP Trust was obligated to make the following distributions from the PSP Trust:  (a) $2 million to All Saints Episcopal Church, (b) $2 million to Oakland University, (c) $2 million to Kenyon College, (d) $1 million to the University of Michigan Libraries, (e) $500,000 to Saint Andrews Episcopal Church, (f) $500,000 to Sainte Rita in Nice France, (g) $500,000 to Kathy Horton, and (g) the remainder to the HBD Trust.  Article 6 of the HBD Trust provides that, following Harold's

2

death, specific distributions totaling $85,000 were to be made to specific beneficiaries, and that $4 million was to be distributed to various beneficiaries and funded from the HBD Trust's interest in the PSP Trust. After Harold's death, the HBD Trust provided for Steven's "health, education, support and maintenance consistent with his accustomed standard of living" during Steven's lifetime. Following Steven's death, the HBD Trust was to be distributed as follows: (a) 20% to Jane Anne Doremus, (b) 15% to Judson Burke St. John, Jr., (c) 15% to Dylan St. John, (d) 10% to All Saints Episcopal Church, (e) 20% to Oakland University, and (f) 20% to Kenyon College.  (¶¶ 35-38).

### III.   Relying upon the advice of Couzens Lansky, Jenkins makes distributions which are inconsistent with the HBD Trust and PSP Trust.

Following Harold's death, Defendant Kathleen Jenkins ("Jenkins") became the successor Trustee of the HBD Trust, and Jenkins served as a Trustee of the PSP Trust until at least February 16, 2021.  Jenkins became the Personal Representative of the Estate of Harold B. Doremus (the "HBD Estate").  (¶¶ 31-33).

Jenkins retained Defendants Jack S. Couzens, II and his law firm, Couzens, Lansky, Fealk, Roeder & Lazar, P.C. (collectively, "Couzens Lansky"), to represent her and provide advice to Jenkins in Jenkins' capacity as Trustee of the HBD Trust, Trustee of the HBD Trust and Personal Representative of the HBD Estate.  (¶ 39).  It is believed Couzens Lansky have continued to represent Jenkins

3

through the present. (¶ 42). Jenkins relied on Couzens Lansky in making any distributions of funds or property from the HBD Trust, PSP Trust and HBD Estate. (¶ 44; ECF No. 7, PageID.55, ¶20).

While Jenkins served as Trustee of the HBD Trust and PSP Trust, Jenkins made the following distributions that were inconsistent with the HBD Trust and PSP Trust:

- On July 17, 2019, by Trustee's Deed and relying on the advice of Couzens, Jenkins conveyed to Steven Doremus ("Steven"), Harold Doremus' son, the "Lake Angelus Property", and there is no evidence Steven paid any consideration for his receipt of the Lake Angelus Property.

- On or about September 24, 2019, a withdrawal of $5 million was made from the PSP Trust and paid to the Burke Lumber Company Salaried Employee Profit Sharing Plan.

- On or about October 1, 2019, a withdrawal of $3.5 million was made from the PSP Trust and paid to the Burke Lumber Company Salaried Employee Profit Sharing Plan.

- On or about November 6, 2020, in her capacity as Trustee of the PSP Trust, Jenkins transferred $250,000 from the PSP Trust to the "Steven B. Doremus Beneficiary IRA".

- On or about December 30, 2020, in her capacity as Trustee of the PSP Trust, Jenkins transferred $3 million from the PSP Trust to the "Steven B. Doremus Beneficiary IRA".

- On or about February 11, 2021, Jenkins directed and authorized the disbursement of $9,210,936.25 from the PSP

4

Trust to the "Susan Habel INH IRA Beneficiary of Steven Doremus" instead of to the HBD Trust.[2]

Representing both Jenkins and Steven at the time, Couzens Lansky drafted the Trustee Deed by which the Lake Angelus Property was transferred to Steven. (¶¶ 45-46; see also ECF No. 7, PageID.55, ¶¶ 20-22).

IV.  **Represented by the Sadecki Defendants, Jenkins commences litigation against Habel.**

On or about August 26, 2021, in her capacity as Trustee of the HBD Trust and represented by Defendants Mark Sadecki and Sadecki & Associates, P.L.L.C. (collectively, the "Sadecki Defendants"), Jenkins brought a petition against Habel, as Personal Representative of The Estate of Steven Doremus, Oakland County Probate Court Case No. 2021-401996-CZ (the "Habel Litigation"). The only parties in the Habel Litigation are Jenkins, in her capacity as Trustee of the HBD Trust, and Habel, in her capacity as Personal Representative of the Steven Doremus Estate. (¶¶ 50-52).

In summary, the petition drafted by Sadecki on behalf of Jenkins acknowledges: (a) the Lake Angelus Property was an asset of the HBD Trust when it was conveyed to Steven on July 17, 2019; and (b) the transfer of the Lake Angelus Property to Steven, as well as the transfer of other monies to Steven, was

---

[2] Defendant Susan Habel ("Habel") was the long-term partner of Steven, who died on November 13, 2020. (¶¶ 25, 27).

improper. Through her petition, Jenkins seeks to have the monies and Lake Angelus Property conveyed back to the HBD Trust. (¶ 53).

Upon information and belief, purportedly to settle the Habel Litigation, Jenkins and Habel have conspired to attempt to enter into a settlement agreement which would include individuals and entities not parties to the Habel Litigation and would purportedly release from liability claims against Jenkins, Habel and Couzens Lansky. This proposed settlement agreement and release has not been approved by the Oakland County Probate Judge presiding over the Habel Litigation. (¶ 54).

## V.   Oakland County Probate Judge Linda Hallmark appoints Plaintiff to investigate and prosecute claims based on the improper distributions.

On or about December 12, 2022, Jane Anne Doremus, Judson Burke St. John, Jr., and Dylan St. John (collectively, the "Qualified Beneficiaries") brought a Petition for entry of order removing Jenkins as Trustee, appointing successor Trustee, surcharging Trustee, imposing a constructive Trust and for fees and costs, Oakland County Probate Court Case No. 2022-410,889-TV (the "Jenkins Litigation"). (¶ 56).

Subsequently, on January 25, 2023, Oakland County Probate Judge Linda Hallmark suspended the majority of Jenkins powers as Trustee of the HBD Trust. (**Exhibit B**).

6

In an Order dated June 29, 2023, Judge Hallmark appointed Plaintiff Special Fiduciary "to investigate the circumstances surrounding the conveyance by Kathleen Jenkins of the property located in Lake Angelus, Michigan; investigate the merits of Ms. Jenkins' claims of legal malpractice surrounding the conveyance; and investigate the appropriateness of trust funds being used to pay for Ms. Jenkins' legal defense." (**Exhibit C**). On December 18, 2023, Judge Hallmark expanded the Special Fiduciary's powers, rendering him:

> empowered …to pursue any and all malpractice claims available to the HBD Trust and the Suspended Trustee, Kathleen Jenkins, …and, further, to take such necessary action and file such claims as may be necessary to preserve and prosecute claims on behalf of the HBD Trust relative to its interest in the Burke Building Centers Inc. Profit Sharing Trust…

(**Exhibit D**).

## ARGUMENT

### I.     The claims asserted in this litigation.

Under MCL 700.1309, a Probate Court may appoint a special fiduciary "to perform specified duties". Pursuant to MCR 5.204, the Special Fiduciary "has all the duties and powers specified in the order of the court appointing the special fiduciary." Based on the aforementioned Oakland County Probate Court Orders, Michigan statutes and the Michigan Court Rules, Plaintiff filed this case in

Oakland County Probate Court on February 9, 2024. Defendants removed this case to this Court on March 11, 2024. (ECF No. 1).

In the Complaint, Plaintiff has asserted the following claims:

(a)   Legal malpractice against Couzens Lansky;

(b)   Legal malpractice against the Sadecki Defendants;

(c)   Breach of trust against Jenkins[3];

(d)   Statutory and common law conversion against Jenkins, Couzens and Habel[4];

(e)   Constructive Trust; and

(f)   A breach of fiduciary duties claim under ERISA against only Jenkins.

Based on these claims, Plaintiff claims the HBD Trust incurred the following damages: (a) loss of the Lake Angelus Property; (b) loss of approximately $21 million that was not put into the HBD Trust; (c) loss of approximately $2.8 million in tax benefits as a result of charitable contributions not made by the HBD Trust; and (d) excessive attorney fees and costs paid by the HBD Trust. (¶ ¶67, 72, 76 and 92). Additionally, under MCL 600.2919a(1) and MCL 700.7813(4), Plaintiff seeks 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees. (¶¶ 80, 84).

---

[3] Plaintiff contends Defendant Jenkins, Magnus, Volk and Carroll, P.C. is liable for the acts and omissions of Jenkins alleged herein under the principals of agency, vicarious liability and *respondeat superior.* (¶ 10).
[4] Count IV encompasses three different conversion claims – common law and statutory conversion under both MCL 600.2919a and MCL 700.7813(4) (a claim under the Michigan Estates and Protected Individuals Code)

**II.**   **Because this matter concerns almost exclusively trust matters governed by Michigan law, it should be remanded to State Court.**

Plaintiff does not dispute that this Court has original jurisdiction over the single claim brought under ERISA.  28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." A district court may decline to exercise supplemental jurisdiction over state law claims where:

> (1)   the claim raises a novel or complex issue of State law, [or]
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction….[or]
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).   In *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), the Supreme Court held that "a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."   A district court's decision as to whether to exercise supplemental jurisdiction over a plaintiff's state law claims is reviewed for abuse of discretion. *Soliday v. Miami County, Ohio*, 55 F.3d 1158, 1164 (6th Cir. 1995).

9

In *Cohill*, the Supreme Court discussed the propriety of exercising supplemental jurisdiction over pendent state law claims following its decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

> The Gibbs Court recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, Gibbs emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Ibid. Under Gibbs, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether [*32] to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. Id., at 726-27.

*Cohill,* 484 U.S. at 349-50.

Here, there can be no doubt that the seven state law claims asserted against seven different Defendants predominate over the single ERISA claim asserted against one Defendant, Habel.   These seven state law claims are based on Michigan common law (legal malpractice and conversion) and at least 4 different Michigan statutes (breach of trust, conversion and constructive trust).   Multiple claims (breach of trust and conversion) are based on Michigan probate statutes that

Oakland County Probate Judge Linda Hallmark – to whom this case was initially assigned – routinely interprets and applies.

Count VI, the ERISA claim that is the sole basis of Defendants' removal, is against only Habel.  If the state law claims are remanded back to Oakland County Probate Court, only one of the Defendants, Habel, will be litigating claims in two different Courts.  The remaining Defendants will be litigating the claims against them in solely Oakland County Probate Court, and, thus, removal of the state law claims has minimal impact on "judicial economy", the mantra Defendants will surely chant.

### III.    Couzens Lansky and potentially other Defendants are collaterally attacking the Probate Judge's Orders.  These defenses should be raised in front of Judge Hallmark.

In *Republic Bldg. Co. v. Charter Twp. of Clinton*, 81 F.4th 662, 666 (6th Cir. 2923), the Sixth Circuit explained the doctrine of collateral attack and Courts' reluctance to permit it to occur:

> A collateral attack is "[a]n attack on a judgment *in a proceeding other than on a direct appeal*." *United States v. Asakevich, 810 F.3d 418, 423 (6th Cir. 2016)* (alterations and emphasis in original) (quoting *Black's Law Dictionary* 318 (10th ed. 2014)). Such an attack "seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Pratt v. Ventas, Inc., 365 F.3d 514, 519 (6th Cir. 2004)*. In this vein, collateral attacks exist where the relief sought would, in some way, overrule another court's ruling. *See Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 933 (8th Cir. 2000)*. Declining to entertain collateral attacks promotes judicial efficiency and order.

11

The *Republic Bldg. Co*. Court quoted the 4th Circuit:

> The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing.

> *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 305-07, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)).

81 F.4th at 666-667.  "If a court has the general power to adjudicate the issues in the class of suits to which the case belongs, then its interim orders and final judgments, whether right or wrong, are not subject to collateral attack so far as jurisdiction over the subject matter is concerned." 7 Moore's Federal Practice § 60.25[2] (discussing *Rule 60(b)*) (citing *United States v. United Mine Workers of America,* 330 U.S. 258, 289-94, 67 S. Ct. 677, 694-96, 91 L. Ed. 884, 911-13 (1947); [*26]  *Carter v. United States*, 135 F.2d 858, 861 (5th Cir. 1943)).

Oakland County Probate Judge Linda Hallmark appointed Plaintiff as Special Fiduciary:

> empowered …to pursue any and all malpractice claims available to u.the HBD Trust and the Suspended Trustee, Kathleen Jenkins, …and, further, to take such necessary action and file such claims as may be necessary to preserve and prosecute claims on behalf of the HBD Trust relative to its interest in the Burke Building Centers Inc. Profit Sharing Trust…

(**Exhibit D**).   Notwithstanding Judge Hallmark's clear Orders, Couzens Lansky has argued in its motion to dismiss that, under case law it cites, Plaintiff is not the real party in interest and does not have standing to purse legal malpractice claims against Couzens Lansky.  (ECF No. 13, PageID. 252-256).  Making this argument, Couzens Lansky ignores MCL 700.1309 and MCR 5.204.  To the extent there is any conflict between the case law cited by Couzens Lansky and the Michigan statute and case law[5], Judge Hallmark should decide which controls.

By claiming that Plaintiff does not have standing to pursue the very claims a Michigan Probate Judge authorized Plaintiff to pursue, Couzens Lansky is collaterally attacking Judge Hallmark's Orders.   Couzens Lansky may raise its standing argument in Michigan Probate Court, and, by remanding the state law claims back to Oakland County Probate Court, this Court will preclude Couzens Lansky from collaterally attacking Judge Hallmark's Orders in this Court.

---

[5] Plaintiff has argued in his response to Couzens Lansky's motion to dismiss that the case law cited by Couzens Lansky is inapplicable.  (ECF No. 19, PageID. 392-396).

13

## <u>CONCLUSION AND RELIEF REQUESTED</u>

Plaintiff requests that this Court be granted, and that this Court remand all state law claims back to Oakland County Probate Court.

Respectfully submitted,

EDWARD G. LENNON PLLC

*/s/ Edward G. Lennon*
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI  48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated:  April 9, 2024

14

## **Proof of Service**

I certify that on April 9, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record herein at their respective addresses as disclosed on the pleadings.

Signature: /s/*Edward G. Lennon*
       Edward G. Lennon
       355 S. Old Woodward, Ste. 100
       Birmingham, MI 48009
       (248) 723-1276
       elennon@lennonlawpllc.com