UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————————

HENRY NIRENBERG, as Court-Appointed
Special Fiduciary of the Harold B. Doremus
Living Trust u/a/d January 15, 1982, as
Amended,

      Plaintiff,

v.

COUZENS, LANSKY, FEALK, ROEDER &
LAZAR, P.C., a Michigan professional service
corporation, JACK S. COUZENS, II, an
individual, SADECKI & ASSOCIATES,
P.L.L.C., a Michigan professional limited
liability company, MARK W. SADECKI, an
individual, KATHLEEN JENKINS, an
individual, JENKINS, MAGNUS, VOLK AND
CARROLL, P.C., a Michigan professional
service corporation, and SUSAN HABEL, an
individual,

      Defendants,

and

KATHLEEN JENKINS and JENKINS,
MAGNUS, VOLK AND CARROLL P.C.,

      Cross-Claimant,

v.

COUZENS, LANSKY, FEALK, ROEDER &
LAZER, P.C.; JACK S. COUZENS, II;
SADECKI & ASSOCIATES, P.L.L.C.; and
MARK W. SADECKI,

      Cross-Defendants.

CASE NO. 2:24-cv-10619-TGB-KGA

HON. TERRENCE G. BERG

Removed from Oakland County Probate
Court, Case No. 24-418581-CZ

**The Sadecki Defendants' Fed. R. Civ. P.
12(b)(6) Motion to Dismiss**

_SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation_

**<u>The Sadecki Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss</u>**

NOW COME Defendants Mark W. Sadecki and Sadecki & Associates, PLLC (the "Sadecki Defendants"), by and through their attorneys, SMITH HAUGHEY RICE & ROEGGE, and for their Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the cross claim filed by Kathleen Jenkins ("Jenkins") and her firm (Jenkins, Magnus, Volk and Carroll, PC, collectively the "Jenkins Defendants") rely on the arguments and authorities contained in their attached Brief, and state:

1.     The Jenkins Defendants provided Trustee services to the Harold B. Doremus Trust ("HBD Trust").  In this suit, originally filed in State Court but later removed to this Court, the Court-Appointed Special Fiduciary of the HBD Trust – Henry Nirenberg ("Nirenberg") – claims that the Jenkins Defendants (and others) caused significant Trust losses that he seeks to recoup in this litigation on behalf of the HBD Trust.  Against the Jenkins Defendants, Nirenberg pleads claims for "active" wrongdoing on their part – breach of trust, statutory conversion, common law conversion and ERISA violations.  Importantly, Jenkins here is being sued *individually* for her acts or omissions while functioning as the HBD Trust Trustee.  Nirenberg in the principal Complaint has also sued the Sadecki Defendants for legal malpractice, challenging the legal services that they provided to Jenkins in her capacity as Trustee of the HBD Trust.

2.     After removal, the Jenkins Defendants, partially parroting the claims asserted against the Sadecki Defendants by Nirenberg, filed a crossclaim against the Sadecki Defendants (among others) for legal malpractice (asserting the same claim Nirenberg has

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

2

filed) and common law indemnity. Importantly, Jenkins is being sued here *individually* for the challenged services she provided as Trustee. Since the Sadecki Defendants never provided legal services to Jenkins (or her firm) *individually*, neither she nor her firm have a legally viable claim for legal malpractice. No pleading amendment will ever be able change the fact that there never was any attorney-client relationship between the Jenkins Defendants *individually* and the Sadecki Defendants. Their legal malpractice claim necessarily fails as a matter of law. They simply cannot sue for the same claims that Nirenberg has asserted as the HBD Trust's Special Fiduciary.

3.     Nor does the Jenkins Defendants' indemnity claim fare any better. Since the claims asserted against them by Nirenberg are based on allegations of "active" – as opposed to "passive" – wrongdoing on their part, their indemnity claim similarly fails as a matter of law.

4.     Neither of the Jenkins Defendants' claims against the Sadecki Defendants can survive scrutiny under Rule 12(b)(6) and must therefore be dismissed.

5.     Pursuant to LR 7.1(a)(2), on April 29, 2024, counsel for the Sadecki Defendants and counsel for the Jenkins Defendants participated in a phone conference in which the movant explained the nature of the motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, the Sadecki Defendants respectfully request this Court grant their Rule 12(b)(6) Motion, dismiss the Jenkins Defendants' Crossclaim with prejudice and grant

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

such other relief that this Court might deem reasonable and appropriate under the circumstances.

DATED:  April 30, 2024

By: _Michael D. Wiese_

John R. Oostema (P26891)
Michael D. Wiese (P78353
**SMITH HAUGHEY RICE & ROEGGE**
Attorneys for the Sadecki Defendants
100 Monroe Center NW
Grand Rapids, MI 49503
616-744-8000
joostema@shrr.com
mwiese@shrr.com

Jeffrey C. Hart (P69217)
**SMITH HAUGHEY RICE & ROEGGE**
Attorneys for the Sadecki Defendants
213 S. Ashley Street, Suite 400
Ann Arbor, MI 48104
734-213-8000
jhart@shrr.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HENRY NIRENBERG, as Court-Appointed
Special Fiduciary of the Harold B. Doremus
Living Trust u/a/d January 15, 1982, as
Amended,

      Plaintiff,

v.

COUZENS, LANSKY, FEALK, ROEDER &
LAZAR, P.C., a Michigan professional service
corporation, JACK S. COUZENS, II, an
individual, SADECKI & ASSOCIATES,
P.L.L.C., a Michigan professional limited
liability company, MARK W. SADECKI, an
individual, KATHLEEN JENKINS, an
individual, JENKINS, MAGNUS, VOLK AND
CARROLL, P.C., a Michigan professional
service corporation, and SUSAN HABEL, an
individual,

      Defendants,

and

KATHLEEN JENKINS and JENKINS,
MAGNUS, VOLK AND CARROLL P.C.,

      Cross-Claimant,

v.

COUZENS, LANSKY, FEALK, ROEDER &
LAZER, P.C.; JACK S. COUZENS, II;
SADECKI & ASSOCIATES, P.L.L.C.; and
MARK W. SADECKI,

      Cross-Defendants.

CASE NO. 2:24-cv-10619-TGB-KGA

HON. TERRENCE G. BERG

Removed from Oakland County Probate
Court, Case No. 24-418581-CZ

**Brief in Support of the Sadecki
Defendants' Fed. R. Civ. P. 12(b)(6)
Motion to Dismiss**

*SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation*

## <u>Concise Statement of the Issues Presented</u>

1.    Whether Kathleen Jenkins and her firm have standing to assert a malpractice claim against the Sadecki Defendants when the Sadecki Defendants never had an attorney-client relationship with Kathleen Jenkins in her individual capacity, but rather only represented her in her role as the Trustee of a Trust?

2.    Whether Kathleen Jenkins and her firm have a viable common law or implied contractual indemnity claim where the principal Complaint filed against them contains allegations of active wrongdoing?

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## <u>Controlling or Most Appropriate Authority</u>

Fed. R. Civ. P. 12(b)(6)

*Coleman v. Gurwin*, 443 Mich. 59; 503 N.W.2d 435 (1993)

*Mieras v. DeBona*, 452 Mich. 289; 550 N.W.2d 202 (1996)

*Schaffner v. City of Riverview*, 154 Mich. App. 514; 397 N.W.2d 835 (1986).

*Johnson v. Bundy*, 129 Mich. App. 393; 342 N.W.2d 567 (1983)

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

### Introduction

Kathleen Jenkins ("Jenkins") and her firm (Jenkins, Magnus, Volk and Carroll, PC, collectively the "Jenkins Defendants") provided Trustee services to the Harold B. Doremus Trust ("HBD Trust"). In this suit, originally filed in State Court but later removed to this Court, the Court-Appointed Special Fiduciary of the HBD Trust – Henry Nirenberg ("Nirenberg") – claims that the Jenkins Defendants (and others) caused significant losses to the Trust that he seeks to recoup in this litigation on behalf of the HBD Trust. Against the Jenkins Defendants, Nirenberg pleads claims for "active" wrongdoing on their part – breach of trust, statutory conversion, common law conversion and ERISA violations. Importantly, Jenkins in this case is being sued *individually* for her acts or omissions while functioning as the HBD Trust Trustee. The other defendants Nirenberg sued include (i) professionals who provided legal services to Jenkins *in her capacity as Trustee* of the HBD Trust (including Mark Sadecki ("Sadecki") and his firm (Sadecki & Associates, PLLC, collectively the "Sadecki Defendants")) against whom he – as Special Fiduciary – pleads a legal malpractice claim, and (ii) a companion of one of the beneficiaries of the HBD Trust.

After removal, the Jenkins Defendants, partially parroting the claims asserted against the Sadecki Defendants by Nirenberg, filed a crossclaim against the Sadecki Defendants (and the other lawyer defendants, Jack Couzens, II and Couzens, Lansky, Fealk, Roeder & Lazar, PC, collectively the "CL Defendants") for legal malpractice (asserting the same claim Nirenberg has filed) and common law indemnity. But, since neither she nor her firm have

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

a legally viable claim against the Sadecki Defendants under either theory, the Sadecki Defendants move to dismiss them. That is the focus of this Motion.

Importantly, Jenkins is being sued *individually* for the challenged services she provided as Trustee. Since the Sadecki Defendants never provided legal services to Jenkins (or her firm) *individually*, neither she nor her firm have a legally viable claim for legal malpractice. No pleading amendment will ever be able to change the fact that there never was any attorney-client relationship between Jenkins *individually* and the Sadecki Defendants. Her legal malpractice claim thus necessarily fails as a matter of law. She simply cannot sue for the same claims that Nirenberg has asserted as the HBD Trust's Special Fiduciary. Nor does her (or the firm's) indemnity claim fare any better. Since the claims asserted against them by Nirenberg are based on allegations of "active" – as opposed to "passive" – wrongdoing on her part, their indemnity claim similarly fails as a matter of law.

Neither of the Jenkins Defendants' claims against the Sadecki Defendants can survive scrutiny under Fed. R. Civ. P. 12(b)(6) and must therefore be dismissed. Before addressing the law, the Sadecki Defendants begin with additional background to place their arguments in an appropriate context.

## Relevant Factual Background

### I. Nirenberg's Principal Complaint.

On February 9, 2024, Nirenberg filed this lawsuit in the Oakland County Probate Court. (ECF No. 1-2, PageID.14-31). The suit asserted six counts against seven defendants:

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

- Count I – Legal Malpractice against the CL Defendants (ECF No. 1-2, PageID.24-25, ¶¶63-67).

- Count II – Legal Malpractice against the Sadecki Defendants (ECF No. 1-2, PageID.25-26, ¶¶68-72).

- Count III – Breach of Trust against Jenkins (ECF No. 1-2, PageID.26-27, ¶¶73-76).

- Count IV – Statutory and Common Law Conversion against Jenkins, Couzens, and Habel (ECF No. 1-2, PageID.28-29, ¶¶77-84).

- Count V – Constructive Trust (ECF No. 1-2, PageID.29, ¶¶85-87).

- Count VI – ERISA Claim against Jenkins (ECF No. 1-2, PageID.29-30, ¶¶88-92).

According to the Complaint, Harold Doremus ("Doremus") died on February 19, 2019, which made his HDB Trust irrevocable. (ECF No. 1-2, PageID.17, ¶20). At the time of Doremus' death, the HBD Trust apparently had assets exceeding $17 million (ECF No. 1-2, PageID.17, ¶20) and Doremus held a 90% interest in a Profit Sharing Trust ("PSP Trust") that had over $20 million in assets (ECF No. 1-2, PageID.17, ¶22-23). Doremus was survived by his son, Steven, who passed away the following year. (ECF No. 1-2, PageID.17-18, ¶¶24-25). Though Steven was not married at the time of his death, Steven did have a long-term partner, defendant Susan Habel ("Habel"), with whom he lived and who now serves as the personal representative of his estate and Trustee of his trust. (ECF No. 1-2, PageID.18, ¶¶26-28).

After Doremus died, Jenkins became the successor Trustee of the HBD Trust, the PSP Trust, and was appointed Personal Representative of Doremus' estate. (ECF No. 1-2, PageID.18, ¶¶31-33). The Complaint details several distributions that the HBD and PSP

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Trusts were obligated to make upon Doremus' death.  (ECF No. 1-2, PageID.18-19, ¶¶35-38).  It further alleges that Jenkins, relying on the advice of the CL Defendants (not the Sadecki Defendants), made six distributions that were inconsistent with the requirements of the HBD and PSP Trusts.  (ECF No. 1-2, PageID.20, ¶43).  Of those distributions, the only distribution relevant to the HBD Trust was her conveyance of the Doremus' lake house property to Steven.  (ECF No. 1-2, PageID.20, ¶43).  The remainder of the distributions which form the core of Nirenberg's clams were made from the PSP Trust.

On February 16, 2021, Habel (in her capacity as an officer in the company started by Doremus) removed Jenkins as Trustee of the PSP Trust and appointed herself in Jenkins' place.  (ECF No. 1-2, PageID.21, ¶48).  After Habel removed Jenkins as the Trustee of the PSP Trust, Jenkins – in her capacity as Trustee of the HBD Trust – hired the Sadecki Defendants for the limited purpose of filing a petition against Habel, as Personal Representative of Steven's Estate, to recoup the lake front property.  (ECF No. 1-2, PageID.21-22, ¶¶50, 53).  According to Nirenberg, Jenkins and Habel "conspired" with each other by "attempt[ing]" to enter into an unfavorable settlement agreement to resolve that case, but acknowledges that the settlement he questions in this suit has not as yet been approved by the Probate Court.  (ECF No. 1-2, PageID.21, ¶54)

Against the Sadecki Defendants, Nirenberg alleges that Sadecki represented Jenkins in her capacity as Trustee of both the HBD Trust *and the PSP Trust*, though that is clearly at odds with the engagement agreements (there were two of them) between the Sadecki Defendants and Jenkins.  Under the terms of each of those engagement agreements, the

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

client was clearly identified as "Kathleen Jenkins, as the Trustee of the Harold B. Doremus Living Trust dated January 15, 1982…" (See **Exhibit 1**)[1] – not Jenkins *individually*. Nirenberg's Complaint then outlines several areas of alleged malpractice which he attributes to the Sadecki Defendants:

- Sadecki failed to recommend or bring "all available claims" against Habel (the Complaint nowhere identifies what claims were "available," which, if interpreted too broadly, would necessarily exceed the scope of the engagement);

- Sadecki recommended that Jenkins pursue an unfavorable settlement (which Nirenberg acknowledges has not as yet been approved by the Probate Court);

- Sadecki failed to recommend malpractice claims against the CL Defendants (which, of course, is beyond the scope of the engagement); and

- Other, yet to be determined acts of malpractice that "may" be ascertained in discovery (whatever that entails). (ECF No. 1-2, PageID.26, ¶71).

According to Nirenberg, as a result of those alleged acts or omissions, the HBD Trust sustained significant damages. (ECF No. 1-2, PageID.26, ¶72).

---

[1] "In ruling on a motion to dismiss, the Court may consider the complaint as well as … documents that are referenced in the plaintiff's complaint *and that are central to plaintiff's claims*." *Musleh v. American Steamship Company*, 326 F. Supp. 3d 507, 514 (E.D. Mich. 2018) (Emphasis supplied), citing *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015). The creation of an attorney-client relationship is, of course, generally governed by principles of contract law. *Fletcher v. Board of Education*, 323 Mich. 343, 348; 35 N.W.2d 177, 180 (1948); *Iron Workers Local 25 Pension Fund v. Watson Wyatt and Company*, No. 04-cv-04243, 2009 WL 3698562, *7 (E.D. Mich. Nov. 4, 2009). Here, the attorney-client relationship is referenced in Jenkins' crossclaim and is central to her legal malpractice claim against the Sadecki Defendants, and thus the contract that governs that relationship may be considered in the context of a request for Fed. R. Civ. P. 12(b)(6) relief. See also *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6).").

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

**II.    <u>Jenkins' Crossclaim Against the Sadecki Defendants</u>**.

After removal to this Court, Jenkins (and her accounting firm) filed a Crossclaim against the Sadecki and CL Defendants.  She asserts two claims against the Sadecki Defendants – she re-alleges and duplicates Nirenberg's legal malpractice claim as her own (ECF No. 7, PageID.57-58, ¶¶ 33-36) and includes another claim for common law indemnity (ECF No. 7, PageID.58-59, ¶¶37-41).  The viability of those claims is the subject of this motion.

<u>Controlling Legal Framework and Analysis</u>

**I.    <u>Standard of Review</u>**.

Fed. R. Civ. P. 12(b)(6) authorizes courts to dismiss cases where a plaintiff "fail[s] to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to "allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."[2] When ruling on a Rule 12(b)(6) motion, a court must "construe the complaint in a light most favorable" to Plaintiff and "accept all of [its] factual allegations as true."[3] But the court "need not accept as true legal conclusions or unwarranted factual inferences."[4] Thus, "legal conclusions masquerading as factual allegations will not suffice."[5] And, "[a]lthough the factual allegations in a complaint need

---

[2] *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993).
[3] *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).
[4] *DirectTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007) (citation omitted).
[5] *Edison v. State of Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir.2007).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

not be detailed, they must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."[6]

Thus, to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[7] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

Here, Jenkins' Crossclaim fails to meet that standard.  For that and other reasons explained below, Jenkins' claims against the Sadecki Defendants should be dismissed in their entirety.

## II.   Kathleen Jenkins and her firm lack standing to assert a malpractice claim against the Sadecki Defendants when the Sadecki Defendants never had an attorney-client relationship with Kathleen Jenkins in her individual capacity, but rather only represented her in her role as the Trustee of a Trust.

To succeed in a legal malpractice claim, Jenkins and her firm must first establish that they had an attorney-client relationship[9] with Sadecki *in their individual capacity* since, absent "unique" or "special" circumstances,[10] "a legal malpractice action may be brought only by a client."[11] This rule, it has been observed, "exists to ensure the inviolability of the attorney's duty

---

[6] *Id.* (cleaned up).

[7] *Iqbal*, 556 U.S. at 678 (internal quotation omitted).

[8] *Id.*

[9] *Coleman v. Gurwin*, 443 Mich. 59, 63; 503 N.W.2d 435 (1993).

[10] *Mieras v. DeBona*, 452 Mich. 278, 297; 550 N.W.2d 202 (1996).

[11] *Beaty v. Hertzberg & Golden*, 456 Mich. 247, 253; 571 N.W.2d 716 (1997).  See generally, *Atlanta International Ins Co v. Bell*, 438 Mich. 512, 518; 475 N.W.2d 294 (1991) ("[T]he general rule of law . . . dictates that 'an attorney will be held liable for . . . negligence only to

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

of loyalty to his client."[12]  It "prevent[s] conflicts from derailing the attorney's unswerving duty of loyalty of representation to the client" since any other approach would necessarily "detract from the attorney's duty to represent the client diligently and without reservation."[13]  Because of the attorney-client relationship requirement's important purposes, Michigan courts have been consistently "reluctan[t] to permit an attorney's actions that affect a non-client to be a predicate to liability because of the potential for conflicts of interest that could seriously undermine counsel's duty of loyalty to the client."[14]

### A.   The Sadecki Defendants never had an attorney-client relationship with Kathleen Jenkins in her individual capacity, but rather only represented her in her role as the Trustee of a Trust.

Since the "employment of counsel does not differ in its incidence or in the rules which govern it, from the employment of an agent in any other capacity or business,"[15] the relationship, whether express or implied,[16] requires mutual assent on all of the essential terms[17] – it cannot be created unilaterally by either the attorney or the putative client.[18]  Importantly, in addressing the attorney-client relationship issue in the fiduciary context, inquiry must focus on exactly who the client was, and in what capacity.  When an attorney is retained to represent a fiduciary, the general

---

his client, and cannot, in the absence of special circumstances, be held liable to anyone else.'").

[12] *Atlanta International Ins Co v. Bell*, 438 Mich. at 518-519.

[13] *Atlanta International Ins Co v. Bell*, 438 Mich. at 518-519.

[14] *Beaty v. Hertzberg & Golden*, 456 Mich. at 254.

[15] *Garey v. Kelvinator Corp*, 279 Mich. 174, 190; 271 N.W.2d 723 (1937).

[16] 7a CJS Attorney and Client §169 (a).

[17] *Eadara v. Henry Ford Health Systems*, 2004 WL 243402 (Mich. App. Feb. 10, 2004).

[18] *Scott v. Green*, 140 Mich. App. 384; 364 N.W.2d 709 (1985).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

rule is that the attorney-client relationship *only exists between the attorney and the fiduciary in the fiduciary's capacity as a fiduciary.* See MCR 5.117(A).[19]  A fiduciary, of course, is any person "having [a] duty, created by his undertaking, to act primarily for another's benefit in matters connected to such undertaking."[20]  There are many types of fiduciaries, including those acting as trustees as Jenkins did when she hired the Sadecki Defendants.[21]

Here, Jenkins is being sued *individually* for the challenged services she provided as Trustee. Since the Sadecki Defendants never provided legal services to Jenkins (or her firm) *individually*, neither she nor her firm have a legally viable claim for legal malpractice. No pleading amendment will ever be able to change the fact that there never was any attorney-client relationship between Jenkins *individually* and the Sadecki Defendants.  Her legal malpractice claim thus necessarily fails as a matter of law.  She simply cannot sue for the same claims that Nirenberg has asserted as the HBD Trust's Special Fiduciary.

---

[19]  Michigan courts have addressed this attorney-client relationship issue in a variety of different fiduciary contexts – (i) Decedent's Estates, *McTaggart v Lindsey*, 202 Mich. App. 612; 509 N.W.2d 881 (1993), (ii) Trusts, *In re Barnes*, 2000 WL 33418069, *5 (Mich. App. June 27, 2000) (Court held that the attorney-client relationship in the trust context is between the attorney and the trustee, not between the attorney and the beneficiaries of the trust), (iii) Guardianships, RI-176 ("When a lawyer is asked by one person to seek the appointment of the guardian over the personal property of another, the attorney functions as the lawyer for the petitioner and not for the alleged and incapacitated person"), and (iv) Next Friends, *Stanke v. Stanke*, 2008 WL 216071, *3 (Mich. App. Jan. 24, 2008); *In re Makarewicz*, 204 Mich. App. 369; 516 N.W.2d 90 (1994); *In re Powell*, 160 Mich. App. 704; 408 N.W.2d 525 (1987). In each instance, the court held that the client was *the fiduciary in the fiduciary's capacity* as a fiduciary.

[20]  Black's Law Dictionary (5th Edition).

[21]  *In re Karmey*, 468 Mich 68, 75 fn 2; 658 NW2d 796 (2003).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

**B.**    <u>The two very limited "special" or "unique" circumstances in which Michigan courts have relaxed the privity requirement do not apply to the Sadecki Defendants</u>.

There are two very limited "special" or "unique" circumstances in which Michigan courts have relaxed the privity requirement if, *without creating any potential conflict of interest,* the Plaintiff can establish the pre-requisites for their use – either based on (i) the equitable subrogation doctrine[22] or (ii) the so-called *Mieras* estate planning exception.[23]   But, and importantly, *neither of those exceptions may be used to support a malpractice claim if their use would create potential conflicts of interest for the attorney,* thus jeopardizing the attorney's duty of loyalty to his or her client.[24]

**1.**    <u>The *Mieras* estate planning exception does not apply to the Sadecki Defendants</u>.

In *Mieras v. DeBona*, 452 Mich. 278; 550 N.W.2d 202 (1996), the Court relaxed the privity requirement for malpractice claims slightly in the estate planning context, holding that, in the event of defects that appear on the face of estate planning documents (i.e., the documents on their

---

[22] Under the equitable subrogation doctrine, if "a person . . . pays a debt for which another is primarily responsible," that person may be "substituted to all of the rights and remedies of the other." *Auto Owners Ins Co v. Amoco Prod Co*, 468 Mich. 53, 59; 658 N.W.2d 460 (2003). *Beaty v. Hertzberg & Golden, PC*, 456 Mich. 247; 571 N.W.2d 716 (1997).  As discussed further below, none of the prerequisites for the use of that theory are present here.  Hence, that exception is legally irrelevant.

[23] *Beaty v. Hertzberg & Golden*, 456 Mich. at 254.

[24] *Beaty v. Hertzberg & Golden*, 456 Mich. at 253-254 (equitable subrogation); *American Employers Insurance Co v. Medical Protective Co,* 165 Mich. App. 657, 660; 419 N.W.2d 447 (1988) (equitable subrogation); *Atlanta International Ins Co v. Bell*, <u>supra</u> (equitable subrogation), *Mieras v. DeBona*, <u>supra</u> (the *Mieras* exception); *In re Barnes*, 2000 WL 33418069 (Mich. App. June 27, 2000) (the *Mieras* exception).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

face demonstrate that the testator's intent was frustrated by a drafter's error), named beneficiaries may sue the estate plan drafter for negligence as third-party beneficiaries.  But only "unique" cases fall within that exception – it only applies (i) if the testator's intent is frustrated by *an error in the document* (importantly, extrinsic evidence may not be used to show the frustration of the testator's intent), (ii) to named beneficiaries, and (iii) if the interests of the beneficiary and client *are not* adverse (i.e., it cannot be used if its use would create a conflict for the attorney).  Clearly, those types of "unique" circumstances do not exist here.

Instead, when Jenkins hired the Sadecki Defendants to file litigation against Habel (in her capacity as Personal Representative of the Estate of Steven Doremus) to recoup the lake front property, she hired him *solely in her capacity as Trustee* of the HBD Trust – not as an individual or in her individual capacity.  The engagement agreement confirms that.  (**Exhibit 1**).  In the Jenkins Defendants' Crossclaim, they merely duplicate and re-allege Nirenberg's legal malpractice claim against the Sadecki Defendants as if they have standing based on an attorney-client relationship to do that.  But they do not have that luxury – neither Jenkins nor her firm were ever clients in their *individual* capacity.  Yet, they just copied and pasted the malpractice claim asserted by Nirenberg and try to make it their own.  The law will not tolerate that since there never was an attorney-client relationship between them in their individual capacity.[25]

### 2. The equitable subrogation doctrine exception does not apply to the Sadecki Defendants

---

[25] *Simko v. Blake*, 448 Mich. 648, 655; 532 N.W.2d 842 (1995).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

An attorney's negligence may expose him to liability to third parties under the equitable doctrine of subrogation only if certain conditions are met.[26] "Those conditions are: (1) a special relationship must exist between the client and the third party in which the potential for conflicts of interest is eliminated because the interests of the two are merged with regard to the particular issue where negligence of counsel is alleged, (2) the third party must lack any other available legal remedy, and (3) the third party must not be a "mere volunteer," i.e., the damage must have been incurred as a consequence of the third party's fulfillment of a legal or equitable duty the third party owed to the client.[27]

In this case, the Sadecki Defendants do not meet these disqualifying conditions and thus, Jenkins cannot succeed to the rights of the Sadecki Defendants' client, Jenkins (*solely in her capacity as Trustee* of the HBD Trust – not as an individual or in her individual capacity.) (**Exhibit 1**).

No special relationship exists between the client (Jenkins solely in her capacity as Trustee of the HBD Trust) and Jenkins (in her individual capacity) in which the potential for conflicts of interest is eliminated because the interests of the two are merged with regard to the particular

---

[26] *Atlanta Int'l, supra* at 522, 475 N.W.2d 294.

[27] *Id.* at 519–520, 521–523, 475 N.W.2d 294; see also *Senters v. Ottawa Savings Bank*, *FSB*, 443 Mich. 45, 56, 503 N.W.2d 639 (1993), and *Ramirez v. Bureau of State Lottery*, 186 Mich. App. 275, 285, 463 N.W.2d 245 (1990) (holding that equity will not interfere where a legal remedy is available); *Auto Club Ins. Ass'n v. New York Life Ins. Co.*, 440 Mich. 126, 132, 485 N.W.2d 695 (1992), *Commercial Union Ins. Co. v. Medical Protective Co*., 426 Mich. 109, 117, 393 N.W.2d 479 (1986), and *Smith v. Sprague*, 244 Mich. 577, 579–580, 222 N.W. 207 (1928) (holding that equitable subrogation is not available to a "mere volunteer")."

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

issue where negligence of counsel is alleged.   Again, when an attorney is retained to represent a fiduciary, the general rule is that the attorney-client relationship *only exists between the attorney and the fiduciary in the fiduciary's capacity as a fiduciary.* See MCR 5.117(A).  Thus, here the attorney-client relationship between the Sadecki Defendants and Jenkins solely in her capacity as Trustee of the HBD Trust did not merge with interests of Jenkins (in her individual capacity). The Sadecki Defendants' sole duty was to Jenkins solely in her capacity as Trustee of the HBD Trust, which could conflict with any interests of Jenkins in her individual capacity.

In addition, Jenkins, in her individual capacity, does not lack any other available legal remedy because she has alleged a myriad of claims against the other Defendants in this action. Finally, Jenkins, in her individual capacity, was not damaged as a consequence of her fulfillment of any legal or equitable duty that she owed to Defendants Sadecki's client, Jenkins in her capacity as Trustee of the HBD Trust.

Respectfully, the Jenkins Defendants' legal malpractice claim cannot withstand scrutiny under Fed. R. Civ. P. 12(b)(6) and must be dismissed.  The Sadecki Defendants are entitled to a judgment on the pleadings.

## III.   <u>Jenkins' Indemnification Claim Fails as a Matter of Law</u>.

Michigan recognizes three different types of indemnity claims – common law indemnity, contractual indemnity, and implied contractual indemnity.   The Jenkins Defendants, in this instance, assert either a common law or an implied contractual indemnity claim against the Sadecki Defendants.  The theory of common law indemnity, of course, "is that where the wrongful act of one results in liability being imposed upon another, the

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

innocent party may [seek] indemnity from the person actually guilty of the wrong."[28]  Unlike common law indemnity which is rooted in the indemnitee's breach of a duty owed to the principal plaintiff, implied contractual indemnity is based on the breach by the indemnitee of an undertaking for the indemnitor.[29]  Though they are different species of the same remedy, they share a crucial common requirement – "[b]oth common-law indemnity and implied contractual indemnity require that the person seeking indemnification *must prove freedom from active negligence*."[30]  The Court in *Johnson v. Bundy*, 129 Mich. App. 393, 399; 342 N.W.2d 567 (1983) explained the principle this way:

> [T]he general rule is that indemnity is available only if the party seeking it is *not actively negligent*.  In ascertaining this, the court examines the primary plaintiff's complaint; if that complaint alleges active negligence, the defendant, third-party plaintiff is not entitled to either common law indemnification or implied contractual indemnification. (Emphasis supplied)

Under this analytical model, inquiry focuses on the *claims asserted by the principal plaintiff* (i.e., the claims asserted by Nirenberg) to determine whether the Jenkins Defendants potential exposure is based on their alleged "active" versus "passive" fault.  "Passive" fault,

---

[28] *Peeples, v. Detroit*, 99 Mich. App. 285, 292; 297 N.W.2d 839 (1980).
[29] *Williams v. Litton Systems*, Inc, 433 Mich. 755, 759; 499 N.W.2d 669 (1989).
[30] *Schaffner v. City of Riverview*, 154 Mich. App. 514, 520-521; 397 N.W.2d 835 (1986) (Emphasis supplied).  See also *Feaster v. Hous*, 137 Mich. App. 783, 791; 359 N.W.2d 219 (1984) (A defendant is not entitled to recovery under either indemnity theory if the primary complaint alleges active negligence.); *Hadley v. Trio Tool Co*, 143 Mich. App. 319, 331; 372 NW2d 537 (1985)("[A]ctive negligence alleged against a defendant precludes that defendant from seeking indemnity from a third party, even under an implied contract of indemnity.").

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

otherwise referred to as derivative liability,[31] applies where liability is imposed not based on conduct, but by statute[32] or because of that party's legal relationship[33] with the actively at fault wrongdoer.[34]

Accordingly, to test whether Jenkins' indemnity claim can survive scrutiny at this point, inquiry necessarily focuses on the claims asserted against the Jenkins Defendants by Nirenberg in the principal Complaint. Here, Nirenberg's Complaint unquestionably asserts "active" fault claims against the Jenkins Defendants. The Complaint alleges that Jenkins breached her legal obligations by (i) making distributions inconsistent with the HBD and PSP Trusts (ECF No. 1-2, PageID.20, ¶43); (ii) failing to secure all Trust property and funds, (iii) failing to provide annual accountings to beneficiaries of the HBD Trust, and (iv) failing to make distributions which resulted in deprivation of charitable deductions for tax purposes, among other things. (ECF No. 1-2, PageID.27, ¶75). The conversion claim alleges that Jenkins "aided in the concealment of stolen, embezzled or converted HBD funds and property while knowing the property was stolen, embezzled or converted." (ECF No. 1-2, pageID.28-29, ¶83). The ERISA claim also alleges "active" fault based on Jenkins alleged

---

[31] *Reed v. St. Clair Rubber Co*., 118 Mich. App. 1, 8; 324 N.W.2d 512 (1982).

[32] An example of this type of "passive" fault is liability imposed on automobile owners under the owner's liability statute. *Beck v. Westphal*, 141 Mich. App. 136, 144; 366 N.W.2d 512 (1982).

[33] An example of this type of "passive" fault is liability imposed under the doctrine of respondeat superior. *Provencal v. Parker*, 66 Mich. App. 431, 439; 239 N.W.2d 632 (1976) (The Court observed that respondeat superior liability "is of a secondary nature, and therefore is only passive negligence.").

[34] See *Detroit Edison Co. v. Price Bros. Co.* 249 F.2d 3 (6th Cir. 1957).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

breach of various fiduciary duties. (ECF No. 1-2, PageID.30, ¶92). In short, Nirenberg only asserts "active" fault claims against the Jenkins Defendants – nowhere does he allege or even suggest that the Jenkins Defendants are liable by operation of law or that they are vicariously liable for the Sadecki Defendants' acts or omissions. That reality – which no amendment can fix – is fatal to the Jenkins Defendants' indemnity claim against the Sadecki Defendants. Hence their Crossclaim fails as a matter of law and must be dismissed.

### Relief Requested

For these reasons, the Sadecki Defendants respectfully request this Court grant their Rule 12(b)(6) Motion, dismiss the Jenkins Defendants' Crossclaim with prejudice, and grant such other relief that this Court might deem reasonable and appropriate under the circumstances.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

DATED:  April 30, 2024

By: _Michael D. Wiese_____
John R. Oostema (P26891)
Michael D. Wiese (P78353
**SMITH HAUGHEY RICE & ROEGGE**
Attorneys for the Sadecki Defendants
100 Monroe Center NW
Grand Rapids, MI 49503
616-744-8000
joostema@shrr.com
mwiese@shrr.com

Jeffrey C. Hart (P69217)
**SMITH HAUGHEY RICE & ROEGGE**
Attorneys for the Sadecki Defendants
213 S. Ashley Street, Suite 400
Ann Arbor, MI 48104
734-213-8000
jhart@shrr.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6130413.v1