UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY NIRENBERG,

      Plaintiff,

v.

COUZENS,  LANSKY,  FEALK,
ROEDER & LAZAR, P.C., et al.,

      Defendants.

Case No. 24-cv-10619

Honorable Robert J. White

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE
COMPLAINT**

This case was removed from state court and arises from allegedly improper

distributions from two trust accounts. (ECF Nos. 1, 1-2).  Plaintiff Henry Nirenberg,

a state court-appointed special fiduciary, asserts claims for (1) legal malpractice

against Defendants Jack S. Couzens and Couzens, Lansky, Fealk, Roeder & Lazar,

P.C. (the Couzens Defendants); (2) legal malpractice against Defendants Mark W.

Sadecki and Sadecki & Associates, P.L.L.C. (the Sadecki Defendants); (3) breach of

trust and an ERISA violation against Defendants Kathleen Jenkins and Jenkins,

Magnus, Volk, and Carrol, P.C. (the Jenkins Defendants)[1]; and (4) conversion against Defendants Jenkins, Couzens, and Susan Habel.  Plaintiff also seeks a constructive trust. (ECF No. 1-2).   The Jenkins Defendants assert (1) crossclaims for legal malpractice against the Couzens and Sadecki Defendants, and (2) that they should be indemnified from liability because of these other defendants' malpractice. (ECF No. 7).

Before the Court is Plaintiff's motion for leave to amend the complaint. (ECF No. 40).  The Parties fully briefed the motions and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2).  For the following reasons, the Court grants in part and denies in part the motion.  Specifically, Plaintiff may file an amended complaint including his additional allegations concerning an "adjoining property" and the Couzens Defendants' involvement in a conversion claim and a February 2021 distribution, as well as all his additional allegations regarding Habel. But Plaintiff's motion is denied to the extent he seeks to add allegations related to the Couzens and Sadecki Defendants representing the relevant trust itself.

---

[1] Although the specific counts of Plaintiff's complaint against Jenkins do not identify the Jenkins firm, Plaintiff alleges generally that the firm "is responsible for the acts and omissions of Jenkins . . . under the principles of agency, vicarious liability, and *respondeat superior*." (ECF No. 1-2, PageID.16).

## I.   Background

This case centers around two trust accounts, the Harold B. Doremus Trust (the HBD trust) and the Burke Building Centers Inc. Profit Sharing Trust (the PSP trust). (ECF No. 1-2, PageID.17). It is undisputed that the PSP trust is an employee benefit plan governed by ERISA. According to Plaintiff,

> [t]his lawsuit arises out of the mismanagement of [the two trusts] and the related theft of over $20 million in monies and assets . . . . Compounding their misdeeds, some of the Defendants have attempted to enter into an agreement among the wrongdoers that mutually insulates them from liability . . . . This lawsuit is intended to rectify the consequences of Defendants' egregious wrongdoing.

(ECF No. 1-2, PageID.17).

Plaintiff's complaint factually alleges the following:

Harold Doremus, the founder of Burke Building Centers, Inc., established the HBD trust in 1982 and died in 2019. (ECF No. 1-2, PageID.17). At the time of Doremus's death, the HBD trust was valued at $17,484,449.37, and Doremus's interest in the PSP trust was valued at $20,274,023. (ECF No. 1-2, PageID.17). Pursuant to a 2018 designation, the HBD trust "is the residuary beneficiary" of Doremus's interest in the PSP trust. (ECF No. 1-2, PageID.18).

Doremus's son, Steven, who was unmarried and without any descendants, died in 2020. (ECF No. 1-2, PageID.17-18). Defendant Habel was Steven's long-term partner, and she is the personal representative of Steven's estate and the trustee of "the Steven Doremus Trust." (ECF No. 1-2, PageID.18).

Defendant Jenkins, a certified public accountant, became the successor trustee of the HBD trust following Doremous's death, and she also served as trustee of the PSP trust from that time until at least February 2021. (ECF No. 1-2, PageID.16, 18). The PSP trust obligated certain distributions after Doremous's death, and the HBD trust did the same with respect to both Doremous's and Steven's deaths. (ECF No. 1-2, PageID.18-19). During Jenkins' time as trustee, however—while legally represented by and relying on the advice of the Couzens Defendants—she made various distributions inconsistent with the HBD and PSP trusts. (ECF No. 1-2, PageID.19-21).

These improper distributions included: (1) conveying real property (the AL property) valued at over $1.1 million from the HBD trust to Steven for no consideration; (2) paying $8.5 million from the PSP trust to the Burke Lumber Company Salaried Employee Profit Sharing Plan; (3) transferring $3.25 million from the PSP trust to the "Steven B. Doremus Beneficiary IRA"; and (4) distributing $9,210,936.25 from the PSP trust to the "Susan Habel INH IRA Beneficiary of Steven Doremus" instead of to the HBD trust. (ECF No. 1-2, PageID.18, 20, 26-27).

Concerning the AL property in particular, the Couzens Defendants drafted—"purportedly as attorneys for Jenkins" but while also representing Steven—the deed conveying the property to Steven. (ECF No. 1-2, PageID.21).  And after this conveyance, "[a]pparently to avoid any dispute as to whether the [property] had been

4

conveyed to Steven, . . . Couzens had Jenkins execute a Personal Representative's deed by which the [property] was conveyed to Jenkins, as Trustee of the HBD Trust." (ECF No. 1-2, PageID.21).

After these actions, in February 2021, Defendant Habel, "in her capacity as officer [sic] of Burke Building Centers, Inc.," removed Defendant Jenkins as trustee of the PSP trust. Habel appointed herself as the new trustee. At this time, the PSP trust held $2,469,466.77 that "should have been distributed to the HBD Trust." (ECF No. 1-2, PageID.21).

Jenkins, as trustee for the HBD trust, later filed a state-court action against Habel (the Habel litigation), in Habel's capacity as the personal representative for Steven's estate. The Sadecki Defendants initially represented Jenkins as counsel in that case, which involved Jenkins (1) acknowledgment that the earlier AL-property and fund transfers to Steven were improper and (2) request to return the AL property and funds to the HBD trust. (ECF No. 1-2, PageID.22).

And according to the complaint:

> Upon information and belief, purportedly to settle the Habel Litigation, Jenkins and Habel have conspired to attempt to enter into a settlement agreement which would include individuals and entities not parties to the Habel Litigation and would purportedly release from liability claims against Jenkins, Habel and Couzens Lansky. This proposed settlement agreement and release has not been approved by the judge presiding over the Habel Litigation.[2]

---

[2] According to Habel, approval of this settlement remains pending since Plaintiff filed this case. (ECF No. 45, PageID.1011).

Sadecki ceased representing Jenkins in the Habel Litigation on or about December 13, 2023.

(ECF No. 1-2, PageID.22).

Another state-court case (the Jenkins litigation) arose in December 2022 when various beneficiaries of the HBD trust sought Jenkins' removal as trustee and the imposition of a constructive trust. (ECF No. 1-2, PageID.22-23). The state court suspended Jenkins' authority and "appointed Plaintiff [as a] special fiduciary 'to investigate the circumstances surrounding the conveyance by Kathleen Jenkins of the [AL] property . . . ; investigate the merits of Ms. Jenkins' claims of legal malpractice surrounding the conveyance; and investigate the appropriateness of trust funds being used to pay for Ms. Jenkins' legal defense.'" (ECF No. 1-2, PageID.23). The court later expanded Plaintiff's authority "'to pursue any and all malpractice claims available to the HBD Trust and the Suspended Trustee, Kathleen Jenkins, . . . and, further, to take such necessary action and file such claims as may be necessary to preserve and prosecute claims on behalf of the HBD Trust relative to its interest in the [PSP] Trust . . . .'" (ECF No. 1-2, PageID.23 (omissions in original)).

The complaint asserts claims against the Jenkins Defendants for breach of trust (concerning the HBD trust) and an ERISA violation (concerning the PSP trust) arising from Jenkins' improper distributions and other related conduct as trustee. (ECF No. 1-2, PageID.26-27, 29-30). Plaintiff also asserts a legal malpractice claim

against the Couzens Defendants concerning their representation of Jenkins when she breached her duties to the trusts, and a legal malpractice claim against the Sadecki Defendants concerning their representation of Jenkins during the Habel litigation. (ECF No. 1-2, PageID.24-26).

Plaintiff's conversion claim against Habel asserts that she "stole, embezzled, or converted HBD Trust funds and property to her own use and benefit." (ECF No. 1-2, PageID.28). Plaintiff's conversion claim against Defendants Jenkins and Couzens alleges that they knowingly aided and abetted in concealing such funds and property. (ECF No. 1-2, PageID.28-29). Lastly, Plaintiff, "to avoid unjust enrichment and injustice," seeks a constructive trust over the property and funds that (1) were improperly removed from the HBD trust and (2) should have been distributed from the PSP trust to the HBD trust rather than to other individuals and entities. (ECF No. 1-2, PageID.29).

The Jenkins Defendants' crossclaims assert one count for legal malpractice each against both the Couzens and Sadecki Defendants, respectively. (ECF No. 7, PageID.56-58). The Jenkins Defendants allege that the Couzens Defendants provided negligent representation by advising Jenkins to make several disbursements contrary to the terms of the HBD and PSP trusts, including the AL property transfer to Steven and various fund transfers for Steven's benefit. (ECF No. 7, PageID.54-57). They allege that the Sadecki Defendants provided negligent

representation by "fail[ing] to advise Jenkins as to all available claims in the Habel Litigation" and "advis[ing] Jenkins to agree to a settlement of the Habel Litigation that may release claims against [the Couzens Defendants]." (ECF No. 7, PageID.55-58). The Jenkins Defendants seek restitution and indemnification to the extent they are held liable for any conduct taken based on these other defendants' malpractice. c(ECF No. 7, PageID.58-59).

The Sadecki and Couzens Defendants each moved to dismiss all Plaintiff's claims against them (ECF Nos. 13, 36). Defendant Habel similarly moved to dismiss Plaintiff's conversion claim against her. (ECF No. 12). And the Sadecki and Couzens Defendants each moved to dismiss the Jenkins Defendants' crossclaims. (ECF No. 23, 30). Plaintiff moved to remand this case back to state court. (ECF No. 22).

## A.    Motion to Amend

As these motions were pending, Plaintiff moved for leave to amend the complaint. (ECF No. 40). Plaintiff "seeks to bolster and clarify certain factual allegations based on information and documents obtained since the filing of this case." (ECF No. 40, PageID.931). Plaintiff also seeks to add claims against Habel for waste, trespass, and breach of fiduciary duties under ERISA. (ECF No. 40, PageID.931). Plaintiff argues that his proposed amendments "are based on known facts and well-recognized causes of action," and would not prejudice Defendants

because no formal discovery has started yet in this case. (ECF No. 40, PageID.930-32).

In particular, Plaintiff's proposed amended complaint adds, in relevant part, the following factual allegations: (1) "Couzens Lansky provided legal services to the HBD Trust from its inception until at least October[] 2023"; (2) "At the time of his death, Harold also owned a vacant parcel immediately adjacent to the [LA] Property (the 'Adjoining Property')"; and (3) "After Harold's death, the Adjoining Property was transferred to the HBD Trust, which remains the owner of the Adjoining Property." (*Compare* ECF No. 40-1, PageID.939-40 *with* ECF No. 1-2, PageID.17-18).

Next, the proposed amended complaint, after stating that the Couzens Defendants represented Jenkins (in her role as trustee) during the period of improper disbursements at issue, adds that:

> . . . Couzens Lansky also continued to represent the HBD Trust [during this time].
>
> 42. Couzens Lansky's bills identified the matter in which Couzens Lansky represented the HBD Trust and Jenkins as:
>
> BURKEL-00015
> Harold B. Doremus Trust
>
> Couzens Lansky sent the bill in "BURKEL-00015" to "Harold B. Doremus Trust, c/o Kathleen A. Jenkins PA". [sic]

*              *              *

9

45. Couzens and Couzens Lansky continued to represent Jenkins, the HBD Trust and the HBD Estate through at least October[] 2023.

(*Compare* ECF No. 40-1, PageID.942-43 *with* ECF No. 1-2, PageID.19-20).

And the proposed amended complaint adds that the Couzens Defendants' billing records confirm they advised Jenkins regarding an improper distribution from February 2021. (*Compare* ECF No. 40-1, PageID.944 *with* ECF No. 1-2, PageID.20).

The proposed amended complaint similarly adds, with respect to the legal malpractice claim against the Couzens Defendants, that the Couzens Defendants committed malpractice in their representation of Jenkins *and the HBD trust*. (*Compare* ECF No. 40-1, PageID.948-50 *with* ECF No. 1-2, PageID.24-25). It also, regarding the conversion claim, substitutes Couzens Lansky (the firm) for Couzens individually. (*Compare* ECF No. 40-1, PageID.953-55 *with* ECF No. 1-2, PageID.28-29).

Regarding the Habel litigation, the proposed amended complaint only specifies that the Sadecki Defendants initiated the case on Jenkins' behalf and adds that Jenkins retained the Sadecki Defendants "to provide 'legal services regarding a legal analysis and claim(s) to be filed against the Estate of Steven Doremus and the Steven Doremus Living Trust . . . .'" (*Compare* ECF No. 40-1, PageID.945-46 *with* ECF No. 1-2, PageID.21-22). With respect to the claim against the Sadecki Defendants, however, the proposed amended complaint adds that the Sadecki

Defendants committed legal malpractice in their representation of Jenkins *and the HBD trust*. (*Compare* ECF No. 40-1, PageID.950-52 *with* ECF No. 1-2, PageID.25-26).

Lastly, the proposed amended complaint adds three new claims against Habel (*Compare* ECF No. 40-1, PageID.956-60 *with* ECF No. 1-2, PageID.29-30). First, it adds an ERISA claim due to Habel's failure to take any remedial action with respect to Jenkins' improper distributions from the PSP trust once Habel became trustee. (ECF No. 40-1, PageID.956-57). Next, it adds a claim for waste for Habel's failure to adequately maintain the AL property as the personal representative of Steven's estate. (ECF No. 40-1, PageID.957-58). It also adds a trespass claim for intentional intrusion on the adjoining property belonging to the HBD trust. (ECF No. 40-1, PageID.958-60).

The proposed amended complaint includes no substantive changes regarding the Jenkins litigation, nor regarding any of Plaintiff's other claims. (*Compare* ECF No. 40-1, PageID.946-48, 52-55 *with* ECF No. 1-2, PageID.22-23, 26-29). In sum, the proposed amended complaint, as relevant here, (1) clarifies that the Couzens and Sadecki Defendants represented *both* the HBD trust itself and Jenkins, as trustee, when they allegedly committed legal malpractice, (2) adds an ERISA claim against Habel due to her inaction after becoming trustee, and (3) adds the waste and trespass claims concerning Habel's conduct regarding the AL and adjoining properties.

The Jenkins Defendants do not object to Plaintiff's motion to amend. (ECF No. 43).  The remaining defendants, however, each filed separate responses to the motion.

**B.    The Couzens Defendants' Response**

The Couzens Defendants argue that Plaintiff's proposed amendment to add that they represented the HBD trust is futile—and both legally and factually impossible—because they only represented Jenkins as trustee and had no attorney-client relationship with the trust itself. (ECF No. 46, PageID.1149-50).  Next, the Couzens Defendants argue that Plaintiff's proposed allegation regarding their billing records and involvement with a February 11, 2021 disbursement is factually incorrect and should be denied unless Plaintiff produces specific records in support. (ECF No. 46, PageID.1150-51).  They also argue that substituting the Couzens firm for Couzens individually on the conversion claim is futile because (1) the claim is untimely and (2) Plaintiff fails to specifically allege that any of the Couzens Defendants ever exerted any act of dominion over—or else aided in concealing— any trust property. (ECF No. 46, PageID.1151-52).

Lastly, the Couzens Defendants accuse Plaintiff and Jenkins of attempting to reach some kind of agreement between themselves in order to "get around Plaintiff's incurable defect—[that] Plaintiff has no attorney client relationship with the [Couzens] Defendants and Jenkins does—and Jenkins' lack of insurance policy

funds—to allow Plaintiff to effectively take an assignment of Jenkins' malpractice claim that she does not want to fund." (ECF No. 46, PageID.1152-53).  According to the Couzens Defendants, "Plaintiff cannot be allowed to prosecute Jenkins' cross-claim against the[m] while not pursuing any claim against the Jenkins Defendants." (ECF No. 46, PageID.1153).

Plaintiff counters that the proposed amendments concerning the Couzens Defendants are not futile because he submitted facts and supporting documentary evidence showing that the Couzens Defendants represented the HBD trust and were involved in advising Jenkins concerning at least one improper trust distribution. (ECF No. 49, PageID.1191-94).  Plaintiff also counters that he asserts a viable conversion claim based on the Couzens Defendants aiding in the concealment of converted trust property. (ECF No. 49, PageID.1194-95).  Next, Plaintiff argues that Jenkins has not assigned any of her crossclaims, which she is prosecuting with independent counsel, to Plaintiff. (ECF No. 49, PageID.1195).  And Plaintiff argues there is no undue delay or prejudice to the Couzens Defendants where discovery has not begun and the proposed amended complaint adds no new claims against them. (ECF No. 49, PageID.1196).

### C.   The Sadecki Defendants' Response

The Sadecki Defendants first argue that Plaintiff committed a fraud upon the court by (1) stating at an April 2025 status conference that there was no settlement

agreement between him and the Jenkins Defendants and (2) asserting in the proposed amended complaint that the Sadecki Defendants represented the HBD trust. (ECF No. 44, PageID.984-86).   According to the Sadecki Defendants, these false statements were made in an effort to avoid Michigan law that precludes the assignment of a malpractice claim. (ECF No. 44, PageID.985-86).   The Sadecki Defendants also argue that the proposed amended claims against them would nevertheless be futile because they only represented Jenkins as trustee and had no attorney-client relationship with the HBD trust itself. (ECF No. 44, PageID.986-87). Next, the Sadecki Defendants argue that the proposed amendments are untimely and unduly prejudicial given Plaintiff's delay and the cost to the Sadecki Defendants "in having to spend large sums . . . to continue to extract itself from a case that has no basis in law." (ECF No. 44, PageID.987-88).

Plaintiff counters that he committed no fraud on the Court, arguing that he accurately informed the Court "words to the effect of 'The agreement between Plaintiff and Jenkins allows Jenkins and her firm to remain as Defendants in this case.'" (ECF No. 47, PageID.1163-64).   Plaintiff then states that he circulated a proposed stipulation to dismiss the Jenkins Defendants in October 2024 that was not agreed-to by the other defendants. (ECF No. 47, PageID.1164).   Plaintiff continues:

> So, if Sadecki is complaining to this Court that Jenkins and her firm remain as Defendants in the proposed First Amended Complaint, Sadecki should present to this Court a rational explanation for refusing

to stipulate to the dismissal of Jenkins and her firm when presented with the opportunity in October[] 2024.

(ECF No. 47, PageID.1164).

Next, Plaintiff again argues that Jenkins has not assigned any of her crossclaims to him. (ECF No. 47, PageID.1164).  Plaintiff argues further that whether the Sadecki Defendants represented the HBD trust is a factual dispute that must be litigated in this case. (ECF No. 47, PageID.1164-65).  Plaintiff also argues that (1) the Sadecki Defendants misstate the law and (2) he has standing to pursue a malpractice claim against them via his appointment as special fiduciary. (ECF No. 47, PageID.1165-68).  And Plaintiff argues there is no undue delay or prejudice to the Sadecki Defendants where discovery has not begun and the proposed amended complaint adds no new claims against them. (ECF No. 47, PageID.1168).

## D.    Habel's Response

Defendant Habel argues that Plaintiff's proposed ERISA breach-of-duty and trespass claims against her are futile because they are barred by the applicable statutes of limitations. (ECF No. 45, PageID.1013-19, 1021-22).  Next, Habel argues that Plaintiff's proposed waste claim against her is also futile because the HBD trust has no legal interest in the AL property that would give rise to such a claim. (ECF No. 45, PageID.1019-22).  And Habel states that Jenkins transferred the AL property to Steven pursuant to Article 7 of the HBD trust. (ECF No. 45, PageID.1009).  Lastly, Habel argues that Plaintiff's motion should be denied because (1) the facts have not

15

changed since the Habel litigation was initially filed in state court in August 2021 and (2) Plaintiff exhibited "extraordinary delay" by waiting years to seek amendment of the complaint. (ECF No. 45, PageID.1022-23).

Plaintiff first counters that Article 7 of the HBD trust did not authorize the AL property conveyance. (ECF No. 50, PageID.1211-12).  Next, Plaintiff argues that his proposed ERISA claim against Habel is timely because (1) the claim adds no new parties and thus relates back to when this case was filed and (2) this case was filed within three years of when Habel became trustee. (ECF No. 50, PageID.1212-14). And Plaintiff argues that he has an interest in the AL property to support the waste claim because of his request for a constructive trust with respect to the property. (ECF No. 50, PageID.1214-15).  Plaintiff also argues that Habel's "continuing" trespass on the adjoining property "is timely and actionable." (ECF No. 50, PageID.1215-16).  Lastly, Plaintiff argues that there is no undue delay or prejudice because (1) he filed this case shortly after the probate court expanded his authority to pursue claims on behalf of the HBD trust and Jenkins, and (2) discovery has not started. (ECF No. 50, PageID.1216).

## II.    Legal Standards

Under Fed. R. Civ. P. 15(a)(2), courts "should freely give leave" to amend a complaint "when justice so requires."  Whether to grant or deny leave to amend is left to the district court's discretion. *See Rose v. Hartford Underwriters Ins. Co.*, 203

F.3d 417, 420 (6th Cir. 2000) ("a district court has discretion to deny a motion to amend"); *St. Clair Marine Salvage, Inc. v. Hawkins*, No. 23-10956, 2024 U.S. Dist. LEXIS 10294, at *1-2 (E.D. Mich Jan. 19, 2024) ("The decision to grant or to deny leave to amend is left to the sound discretion of the trial judge.") (cleaned up).

> To determine whether to grant leave to amend a pleading, the Court must consider six factors: (1) "undue delay in filing"; (2) "lack of notice to the opposing party"; (3) "bad faith by the moving party"; (4) "repeated failure to cure deficiencies by previous amendments"; (5) "undue prejudice to the opposing party"; and (6) "futility of [the] amendment."

*Smith v. Blue Cross Blue Shield*, No. 23-12003, 2024 U.S. Dist. LEXIS 190336, at *2-3 (E.D. Mich. Aug. 9, 2024) (alteration in original; quoting *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001)).  "Delay by itself is not sufficient reason to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade*, 259 F.3d at 458-459 (quotation omitted).

Further, a proposed amendment is futile if the complaint could not survive a motion to dismiss. *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022).  A proposed amended complaint must therefore allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The district court must "construe the complaint in a light most favorable to the plaintiff, accept all of

the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted).[3]

## III. Analysis

### A. Delay and Prejudice

As an initial matter, Defendants do not argue any lack of notice, bad faith, or repeated failure to cure deficiencies by previous amendments. Concerning undue delay and prejudice, Plaintiff filed this case in state court on February 9, 2024, it was

---

[3] Generally, the court may not consider matters outside of the pleadings in ruling on a motion to dismiss. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). The court may, however, consider any documents attached to the complaint, public records, or exhibits that are referred to in the complaint "and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *See also* Fed. R. Civ. P. 10(c). As related to application of the 12(b)(6) standard in deciding the futility issue here, the record on Plaintiff's motion to amend includes various documents outside the pleadings that the Court will consider: public records related to Plaintiff's appointment as special fiduciary (ECF Nos. 40-2, 40-3); a Couzens firm billing record (ECF No. 49-1) referenced in the proposed amended complaint and central to the malpractice claim against the Couzens Defendants; and Habel's exhibits showing the relevant trust and property-conveyance documents (ECF Nos. 45-2, 45-3) also referenced in the proposed amended complaint and central to Plaintiff's overall claims. The Court does not consider a draft stipulated order to dismiss the Jenkins Defendants (ECF No. 44-1); Plaintiff's email exhibit regarding a purportedly incorrect case reference (ECF No. 47-1); or Habel's remaining exhibits, including her affidavit, documents related to Habel's replacement as trustee for Jenkins, and an unexecuted settlement agreement between the HBD trust and Steven's estate. (ECF Nos. 45-4, 45-5, 45-6).

removed to federal court on March 11, 2024, and Defendants filed their respective motions to dismiss between March 18, 2024, and December 31, 2024. (ECF Nos. 1, 12-13, 36).  Given the pending motions to dismiss, the Court has yet to issue a scheduling order, so the case remains in the pleading stage and discovery has not started.

Under these circumstances, the Court concludes that both the undue delay and prejudice factors weigh in favor of granting Plaintiff leave to amend. *See Mersen USA-Midland-MI Inc. v. Graphite Machining Servs. & Innovations, LLC*, No. 12-10961, 2012 U.S. Dist. LEXIS 104158, at \*4 (E.D. Mich. Jul. 26, 2012) ("Undue delay is typically found where years have passed, discovery has been substantially conducted, and dispositive motion deadlines have passed."); *Trs. of Sheet Metal Workers Local Union No. 80 Ins. Trust Fund v. Blue Cross & Blue Shield of Mich.*, No. 13-10415, 2015 U.S. Dist. LEXIS 109332, at \*6 (E.D. Mich. Aug. 19, 2015) ("Because discovery has not commenced and the Court has yet to issue a scheduling order, the Court does not find that Plaintiff waited an unreasonable amount of time to seek leave to amend."); *Black v. Murphy*, No. 24-10634, 2024 U.S. Dist. LEXIS 238426, at \*4 (E.D. Mich. Sept. 23, 2024) ("allowing the amendment would not create undue prejudice, especially considering the case is still in the pleadings stage"); *Int'l IP Holdings v. Green Planet, Inc.*, No 13-13988, 2016 U.S. Dist. LEXIS 116677, at \*4-5 (E.D. Mich. Aug. 30, 2016) (no undue prejudice in part because

"discovery has not begun, no trial date has been set, and no scheduling order is in place with respect to the surviving claim").

### B.    Futility

#### i.  Claims Against the Legal Defendants

The Court will first address the malpractice-related amendments common to both the Couzens and Sadecki Defendants.  As an initial matter, these defendants are correct that legal malpractice claims are unassignable under Michigan law. *See Joos v. Drillock*, 127 Mich. App. 99, 105 (Mich. App. 1983) ("In view of the personal nature of the attorney-client relationship and the public policy considerations discussed above, we conclude that a legal malpractice cause of action is not subject to assignment.").  Here, however, the Court concludes that Jenkins has not assigned her malpractice claims.

In *Weston v. Dowty*, 163 Mich. App. 238 (Mich. App. 1987), the plaintiffs filed a malpractice action against defendants who previously represented them, as defendants, against Ella Sharp in a personal injury suit.  In the prior action, the plaintiffs and Sharp entered into a consent judgment where "plaintiffs agreed to file a legal malpractice action against defendants and to give any monies received as damages in that suit to Sharpe, less costs and attorney fees." *Id.* at 239-40.  Under these circumstances, the appeals court concluded that the plaintiffs did not assign a malpractice claim because they "merely agreed" "to assign only a portion of their

20

recovery, if any, from the malpractice suit . . . ." *Id.* at 241-42. The court also emphasized that "Sharpe did not bring the suit against defendants, as the assignee[] did in *Joos* . . . . Rather, plaintiffs themselves brought the suit." *Id.* at 242.

Accordingly, to the extent Plaintiff and the Jenkins Defendants intend to settle the claims between them, with Plaintiff entitled to some amount of any damages recovered by the Jenkins Defendants pursuing their own crossclaims against the Couzens and Sadecki Defendants, this is not prohibited.[4] Like in *Weston*, the Jenkins Defendants are pursuing their own separate malpractice claims against the Couzens and Sadecki Defendants, and the former have their own counsel independent from Plaintiff. And to the extent Plaintiff relies on the probate court order expanding his powers as special fiduciary to give him authority to pursue malpractice claims on Jenkins' behalf, the Court does not consider this an assignment. *See* Restatement (Second) of Contracts § 317(1) ("An assignment of a right is a manifestation of the *assignor's intention* to transfer it . . . .") (emphasis added); *S&M Brands, Inc. v. Summers*, 420 F. Supp. 2d 840, 845 (M.D. Tenn. 2006) ("An assignment is a contract between the assignor and the assignee . . . .").

---

[4] Because the facts in this regard remain unclear and the legal defendants' related substantive argument concerning assignment is meritless, at this point the Court has insufficient evidence to conclude that Plaintiff perpetrated a fraud on the court concerning he and the Jenkins Defendants settling their dispute.

Nevertheless, the Court must still address the viability of Plaintiff's own, separate malpractice claims, with specific focus in this regard on the proposed factual amendments.  And the Court agrees with the Couzens and the Sadecki Defendants that it is a legal impossibility under current Michigan law for them to have represented the HBD trust itself, as opposed to merely representing Jenkins as trustee.[5]  The Court therefore concludes that the proposed amendments alleging that these defendants represented the HBD trust are futile.

In arguing that "it is a legal and factual impossibility" for the Couzens Defendants to have represented the HBD trust (as opposed to only representing Jenkins as trustee), the Couzens Defendants cite Mich. Comp. Laws § 700.7812. (ECF No. 46, PageID.1149-50).  They assert:

> A *trust* is an artificial entity that acts through a trustee; the "trust" is not represented.  A trust requires a trustee to administer the trust.  It is a trustee who enforces claims of the trust and defends claims against the trust.

(ECF No. 46, PageID.1149-50 (emphasis in original).

And the Couzens Defendants claim it would be "[a]n obvious ethical conflict" to represent both a trust itself and the trustee thereof. (ECF No. 46, PageID.1150).

---

[5] To the extend the Sadecki Defendants argue that Plaintiff perpetrated a fraud on the court by stating that they represented the trust, the Court disagrees.  Rather, the Court views this as a nonfrivolous, substantive legal and factual dispute, and it addresses the dispute accordingly.

22

For their part, the Sadecki Defendants similarly argue that under Michigan law, "the attorney client relationship flows between the Trustee as the trust's fiduciary and attorney[, n]ot between the Trust and the attorney." (ECF No. 44, PageID.986). In support, they rely on Mich. Ct. R. § 5.117(A), *Whitton v. Hopkins*, No. 364842, 2024 Mich. App. LEXIS 7580 (Mich. App. Sept. 30, 2024), and *Estate of Tyler Jacob Maki v. Coen*, 318 Mich. App. 532 (Mich. App. 2017). (ECF No. 44, PageID.986-87).

Mich. Comp. Laws § 700.7812 provides that "[a] trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust." Mich. Ct. R. § 5.117(A) provides that "[a]n attorney filing an appearance on behalf of a fiduciary shall represent the fiduciary."

In *Maki*, 318 Mich. App. 532, the court relied on the language of Mich. Ct. R. § 5.117(A) and Mich. Comp. Laws § 700.5423(2)(z) (regarding legal representation hired by the conservator of an estate) to conclude that "an attorney hired to perform legal services for a conservator represents the conservator and does not have an attorney-client relationship with the estate." *Id.* at 540-42.

In *Whitton*, 2024 Mich. App. LEXIS 7580, the court expanded this rule to apply to trusts and trustees, as well. *Id.* at *11-15. The court determined that the plain language of Mich. Comp. Laws § 700.7817(w) (regarding legal representation hired by the trustee of a trust) "establishes [that] an attorney hired by a . . . trustee

represents the . . . trustee, and the attorney does not have an attorney-client relationship with . . . the trust." *Id.* at *14-15.  And it determined that the statute and Mich. Ct. R. § 5.117(A) together "establish [that] an attorney employed by a . . . trustee to perform legal services for them represents the . . . trustee—not the . . . trust." *Id.* at *15.  The court ultimately held that dismissal of a trust's malpractice claim was proper for lack of standing because the defendants only represented the trustees in their fiduciary capacity. *Id.* at *14-19.

Under *Whitton*, therefore, it is not legally possible for the Couzens and Sadecki Defendants to have represented the HBD trust in addition to Jenkins as trustee.  Given this legal impossibility, Plaintiff's proposed amendments with respect to the Couzens and Sadecki Defendants representing the HBD trust in no way bolster his legal malpractice claims,[6] and are futile.  Plaintiff's motion to amend is therefore denied in part, as related to these allegations.

Moving to Plaintiff's remaining proposed amendments with respect to the Couzens Defendants, the Court is divided.  Concerning the additional factual information regarding the Couzens Defendants' billing records, these defendants only assert that the information is wrong and should be disallowed without specific

---

[6] To the extent Plaintiff argues he has standing to pursue malpractice claims on Jenkins' behalf via Michigan law and the probate court order expanding his powers as special fiduciary, this will be addressed later, if necessary, in resolving any renewed motions to dismiss once Plaintiff amends the complaint.

supporting documentation.  But Plaintiff's facts must be construed as true at this stage, and, in any event, his reply brief does provide specific records to support the additional facts.

That said, the facts of these billing records cannot overcome the legal impossibility, discussed above, of the Couzens Defendants representing the trust itself.  Accordingly, because it does not bolster Plaintiff's malpractice claims, the Court rejects Plaintiff's proposed amendment related to the billing records and the Couzens Defendants representing the trust itself.  But Plaintiff's motion is granted with respect to the billing records substantiating the Couzens Defendants' involvement in a February 2021 distribution.

Concerning the conversion claim, the proposed amended complaint asserts that the Couzens Defendants, "through their actions described above," "aided [Habel] in the concealment of stolen, embezzled or converted HBD funds and property while knowing the property was stolen, embezzled or converted." (ECF No. 40-1, PageID.954-55).  In Michigan, statutory conversion under Mich. Comp. Laws § 600.2919a(1)(b) is defined, in relevant part, as "[a]nother person's . . . aiding in the concealment of stolen, embezzled, or converted property when the person . . . [doing so] knew that the property was stolen, embezzled, or converted."

The Couzens Defendants argue that the proposed amended complaint lacks any specific factual allegations that they ever aided in concealing anything (ECF No.

46, PageID.1152), but both the original and proposed amended complaints include facts alleging that the Couzens Defendants, with knowledge of the relevant trust requirements, advised Jenkins concerning the various improper trust transfers and specifically assisted in deeding away the AL property, which Plaintiff maintains was illegal.  Construing Plaintiff's facts as true, the Court concludes that the proposed amended complaint asserts a plausible conversion claim against the Couzens Defendants.

To the extent the Couzens Defendants also argue that the proposed conversion claim is untimely and/or otherwise seeks to improperly add a new defendant, they do so with little explanation and no reliance whatsoever on any legal authority.  The Court therefore deems these arguments waived. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (cleaned up).

In sum, the Court rejects all Plaintiff's proposed amendments related to the Couzens and Sadecki Defendants representing the trust itself, and it permits Plaintiff's proposed amendments regarding the Couzens Defendants' involvement in the conversion claim and the February 2021 distribution.

### ii. Claims Against Habel—ERISA and Trespass

26

As discussed, Habel argues that the proposed amended complaint's ERISA breach-of-duty and trespass claims against her are untimely and therefore futile. The parties do not dispute that both causes of action are subject to a three-year statute of limitations. Habel became trustee of the PSP trust on February 16, 2021, and the parties agree that this is when the ERISA claim against Habel accrued. Plaintiff filed the initial complaint in this case on February 9, 2024, just within three years of the accrual date. The ERISA claim is therefore timely only if it relates back to the original complaint.

As relevant here, an amendment to a pleading relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Here, the ERISA claim against Habel arises from the same operative facts as set out in the original complaint.

However, "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010); *see also id.* ("Rule 15(c)(1)(B) allows relation back of an amendment asserting a 'claim or defense,' but it does not authorize the relation back of an amendment adding a new party.").

Relying on *Ermold v. Davis*, No. 15-46, 2017 U.S. Dist. LEXIS 224611 (E.D. Ky. Oct. 11, 2017), Habel argues that the ERISA claim seeks to add a new party because Habel, in her official capacity as trustee, has distinct legal duties from Habel individually. (ECF No. 45, PageID.1016-18).  In *Emrold*, the district court stated that "[a]lthough the same operative facts give rise to Plaintiff' official-capacity and personal-capacity claims, they are distinct legal rights *against different parties*[.]" *Id.* at *2 (emphasis added).  However, this was said in the specific context of a § 1983 suit, the defendant was a government official, and the reasoning was only applied to determine whether a certification for appeal could issue. *Id.*

Indeed, the court recognized that the suit against the government defendant in her official capacity was effectively against the Commonwealth of Kentucky. *Id.*  So the "different parties" contemplated in official- and individual-capacity suits against government officials are (1) the distinct government unit and (2) the official acting under said unit's authority.  Importantly, this distinction does not apply here.  Habel as trustee is not a state actor, and her liability as trustee does not implicate any other induvial or entity, as is the case for government officials.

Ultimately, because Habel's authority is distinguishable from this case and inapplicable to the relation-back doctrine, the Court rejects her argument.  The ERISA claim against Habel, therefore, relates back to the original complaint, is timely, and is not futile.

Concerning trespass, the proposed amended complaint asserts that the LA property, via its landscaping, paving, decking, and irrigation systems, "has encroached and *is encroaching*" on the adjacent parcel owned by the HBD trust. (ECF No. 40-1, PageID.959 (emphasis added)).  Habel, however, argues that this claim accrued on July 17, 2019, (and therefore had to be filed by July 2022) because "there has been no potentially encroaching landscaping, brick paving, decking, or changes to the irrigation system since July 17, 2019, when [the AL property] was deeded to Steven." (ECF No. 45, PageID.1022).

Here, whether the alleged trespass is continuing or ceased early enough to preclude a timely claim presents a quintessential factual dispute that cannot be resolved at this stage of the proceedings. *See Prepared Food Photos, Inc. v. Lakess Super Mkt., Inc.*, No. 23-100, 2023 U.S. Dist. LEXIS 233785, at *4 (W.D. Mich. Dec. 15, 2023) ("A 12(b)(6) motion based on a statute of limitations is only appropriate where it is clear from the face of the complaint that relief is time-barred.").  And accepting Plaintiff's factual allegations as true, the alleged trespass continues to this date.  Accordingly, for the purpose of Plaintiff's motion to amend, the Court concludes that the trespass claim is timely and not futile.

### iii.  Claims Against Habel—Waste

"The three elements of common-law waste are unreasonable conduct by the owner of a possessory estate, conduct resulting in physical damage to the real estate,

and a substantial diminution in the value of the estate *in which others have an interest*." *Mahrle v. Enbridge Energy Ltd.*, No. 331221, 2017 Mich. App. LEXIS 963, at *38 (Mich. App. Jun. 15, 2017) (emphasis added), quoting 93 C.J.S. Waste § 4; *see also New Prods. Corp. v. Miller*, No. 360048, 2023 Mich. App. LEXIS 4659 (Mich. App. Jun. 29, 2023) (same).

Relying on *New Prods. Corp.*, Habel argues that Plaintiff cannot establish any legal interest in the LA property as needed to support a waste claim. (ECF No. 45, PageID.1020).  In *New Prods. Corp.*, the Michigan Court of Appeals reviewed the lower court's judgment, following trial, of no cause of action on a waste claim (among others). *Id.* at *1-6.  The appeals court determined that two co-trustee defendants could not be liable for waste because they "had [no] relationship with the real property that could be equated with a right of possession." *Id.* at *25.

But Habel's reliance on this case is misplaced.  First, the waste claim in *New Prods. Corp.* was not against these defendants in their role as trustees of the relevant trust, but instead as officers of a separate corporate entity, Modern Plastics. *Id.* at *20-26.  And according to the appeals court, "Modern Plastics had the possessory interest throughout the period at issue, so it alone could be liable for waste, . . . [and the defendants] held no position of authority in Modern Plastics and did no affirmative act causing harm to the property." *Id.* at *25.

Accordingly, the reasoning in *New Prods. Corp.* applied to the defendants not owning a possessory estate, not the plaintiff lacking an interest in the property (as Habel alleges is the case here). And *New Prods. Corp.* was also decided after a trial to resolve any disputed facts concerning the respective parties' interests.

Here, however, it is undisputed that Habel has had a possessory ownership interest in the AL property since Steven's death in 2020. And accepting Plaintiff's allegations as true, Habel has since neglected to maintain the property, resulting in extensive damage to the home and yard. As to whether Plaintiff has an interest in the property, that is a key issue that must be resolved through litigating this case. But at this stage, where both the original and proposed amended complaints seek a constructive trust and effectively assert that the HBD trust owned the AL property until it was illegally transferred to Steven, the court cannot conclude that the waste claim is futile.

In sum, because none of the proposed amendments concerning Habel are futile, Plaintiff's motion to amend is granted in part, as to these allegations.

31

\* \* \*

For the reasons given, the Court ORDERS that Plaintiff motion to amend (ECF No. 40) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff may file an amended complaint, within one week of this order, including his additional allegations concerning the (1) "adjoining property" and (2) the Couzens Defendants' involvement in a conversion claim and a February 2021 distribution, as well as (3) all his additional allegations regarding Habel.

IT IS FURTHER ORDERED that Plaintiff's motion is denied to the extent he seeks to add allegations related to the Couzens and Sadecki Defendants representing the HBD trust itself.

IT IS FURTHER ORDERED that Defendants have leave to refile their respective motions to dismiss within two weeks of when Plaintiff files the amended complaint.

Dated: June 25, 2025                    s/Robert J. White_____
                                        Robert J. White
                                        United States District Judge