UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY NIRENBERG,

     Plaintiff,

v.

COUZENS, LANSKY, FEALK,
ROEDER & LAZAR, P.C., et al.,

     Defendants.

Case No. 24-cv-10619

Honorable Robert J. White

## <u>ORDER</u>

**(1) DENYING PLAINTIFF'S MOTION TO REMAND;**

**(2) GRANTING SUSAN HABEL'S MOTION TO DISMISS;**

**(3) GRATING IN PART AND DENYING IN PART THE LEGAL DEFENDANTS' MOTIONS TO DISMISS CROSSCLAIMS;**

**(4) DENYING THE SADECKI DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS; AND,**

**(5) GRANTING IN PART AND DENYING IN PART THE COUZENS DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS.**

This case was removed from state court and arises from allegedly improper distributions from two trust accounts. (ECF Nos. 1, 52).  Plaintiff Henry Nirenberg, a state court-appointed fiduciary, asserts claims for (1) legal malpractice against Defendants Jack S. Couzens and the law firm Couzens, Lansky, Fealk, Roeder & Lazar, P.C. (the Couzens Defendants); (2) legal malpractice against Defendants Mark W. Sadecki and the law firm Sadecki & Associates, P.L.L.C. (the Sadecki Defendants)[1]; (3) breach of trust and an ERISA violation against Defendants Kathleen Jenkins and the accounting firm Jenkins, Magnus, Volk, and Carrol, P.C. (the Jenkins Defendants)[2]; and (4) conversion against the Couzens Defendants, Jenkins, and Defendant Susan Habel.  Plaintiff brings an ERISA claim against Habel, as well.   Plaintiff also seeks a constructive trust. (ECF No. 52).   The Jenkins Defendants filed crossclaims for legal malpractice and indemnification against the Couzens and Sadecki Defendants, asserting that the Jenkins Defendants should be indemnified from liability because of defendants' malpractice. (ECF No. 7).

---

[1] The Couzens and Sadecki Defendants are in some instances in this opinion referred to collectively as the Legal Defendants.

[2] Although the specific counts of Plaintiff's complaint against Jenkins do not identify the Jenkins firm, Plaintiff alleges generally that the firm "is responsible for the acts and omissions of Jenkins . . . under the principles of agency, vicarious liability, and *respondeat superior*." (ECF No. 52, PageID.1254).

Before the Court are (1) Habel's, the Couzens Defendants', and the Sadecki Defendants' respective motions to dismiss Plaintiff's claims (ECF Nos. 53, 55, 57); (2) the Couzens and Sadecki Defendants' respective motions to dismiss the Jenkins Defendants' crossclaims (ECF Nos. 23, 30); and (3) Plaintiff's motion to remand (ECF No. 22).   All the various motions to dismiss are made pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim).   The Parties fully briefed the motions and the Court held oral argument.

For the following reasons, the Court (1) denies Plaintiff's motion to remand, (2) grants Habel's motion to dismiss, (3) grants in part and denies in part the Legal Defendants' motions to dismiss the Jenkins Defendants' crossclaims, (4) denies the Sadecki Defendants' motion to dismiss Plaintiff's claims, and (5) grants in part and denies in part the Couzens Defendants' motion to dismiss Plaintiff's claims.

Specifically, all Plaintiff's conversion claims are dismissed with prejudice as either untimely or insufficiently pled.   The ERISA claim against Habel is dismissed with prejudice because (1) the HBD trust never exhausted its administrative remedies concerning the PSP funds it was allegedly deprived of and (2) Plaintiff has insufficiently alleged that Habel knew that Jenkins' distributions from the PSP trust were improper.   The Jenkins Defendants' indemnification crossclaims are dismissed

3

with prejudice because this is not the type of vicarious liability case where indemnification applies.

Plaintiff's and the Jenkins Defendants' claims for legal malpractice do not warrant dismissal at the 12(b)(6) stage.  Finally, the Court concludes that although Plaintiff cannot assert a stand-alone claim for a constructive trust, whether such a remedy is available with respect to Plaintiff's surviving claims is an issue best addressed on a developed record supplemented by discovery.

## I.    Background

This case centers around two trust accounts, the Harold B. Doremus Trust (the HBD trust) and the Burke Building Centers Inc. Profit Sharing Trust (the PSP trust). (ECF No. 52, PageID.1255).  It is undisputed that the PSP trust is an employee benefit plan governed by ERISA.  According to Plaintiff,

> [t]his lawsuit arises out of the mismanagement of [the two trusts] and the related theft of over $20 million in monies and assets . . . . Compounding their misdeeds, some of the Defendants have attempted to enter into an agreement among the wrongdoers that mutually insulates them from liability . . . . This lawsuit is intended to rectify the consequences of Defendants' egregious wrongdoing.

(ECF No. 52, PageID.1255).

Plaintiff's amended complaint factually alleges the following:

Harold Doremus, the founder of Burke Building Centers, Inc., established the HBD trust in 1982 and died in 2019. (ECF No. 52, PageID.1255-56).  At the time of

4

Harold's death, the HBD trust was valued at $17,484,449.37, and Harold's interest in the PSP trust was valued at $20,274,023. (ECF No. 52, PageID.1256).  Pursuant to a 2018 designation, the HBD trust "is the residuary beneficiary" of Harold's interest in the PSP trust. (ECF No. 52, PageID.1257).

Harold's son, Steven, who was unmarried and without any descendants, died in 2020. (ECF No. 52, PageID.1256).  Defendant Habel was Steven's long-term partner, and she is the personal representative of Steven's estate and the trustee of "the Steven Doremus Trust." (ECF No. 52, PageID.1256).

Defendant Jenkins, a certified public accountant, became the successor trustee of the HBD trust following Harold's death, and she also served as trustee of the PSP trust from that time until at least February 2021. (ECF No. 52, PageID.1254, 1257). The PSP trust obligated certain distributions after Harold's death, and the HBD trust did the same with respect to both Harold's and Steven's deaths. (ECF No. 52, PageID.1257-58). During Jenkins' time as trustee, however—while legally represented by and relying on the advice of the Couzens Defendants—she made various distributions inconsistent with the HBD and PSP trusts. (ECF No. 52, PageID.1258-60).

These improper distributions included: (1) conveying real property (the AL property) valued at over $1.1 million from the HBD trust to Steven for no

5

consideration; (2) paying $8.5 million from the PSP trust to the Burke Lumber Company Salaried Employee Profit Sharing Plan; (3) transferring $3.25 million from the PSP trust to the "Steven B. Doremus Beneficiary IRA"; and (4) distributing $9,210,936.25 from the PSP trust to the "Susan Habel INH IRA Beneficiary of Steven Doremus" instead of to the HBD trust. (ECF No. 52, PageID.1256-57, 1259-60, 1268-69). The first two of these conveyances occurred after Harold died but before Steven did; the latter two occurred just before and after Steven's death, respectively. (*See* ECF No. 52, PageID.1256, 1260).

Concerning the AL property in particular, the Couzens Defendants allegedly drafted and recorded the deed conveying the property to Steven, while they also represented Steven as counsel. (ECF No. 52, PageID.1260-61). And after this conveyance, "[a]pparently to avoid any dispute as to whether the [property] had been conveyed to Steven, . . . Couzens had Jenkins execute a Personal Representative's deed by which the [property] was conveyed to Jenkins, as Trustee of the HBD Trust." (ECF No. 52, PageID.1261).

After these actions, in February 2021, Habel, "in her capacity as officer [sic] of Burke Building Centers, Inc.," removed Jenkins as trustee of the PSP trust. Habel appointed herself as the new trustee. At this time, the PSP trust held $2,469,466.77 that "should have been distributed to the HBD Trust." (ECF No. 52, PageID.1261).

6

Jenkins, as trustee for the HBD trust, later filed a state-court action against Habel (the Habel litigation), in Habel's capacity as the personal representative for Steven's estate.  The Sadecki Defendants represented Jenkins as counsel in that case, which involved Jenkins' (1) acknowledgment that the earlier AL-property and fund transfers to Steven were improper and (2) request to return the AL property and funds to the HBD trust. (ECF No. 52, PageID.1261-62).

And according to the complaint:

Upon information and belief, purportedly to settle the Habel Litigation, Jenkins and Habel have conspired to attempt to enter into a settlement agreement which would include individuals and entities not parties to the Habel Litigation and would purportedly release from liability claims against Jenkins, Habel and Couzens Lansky.  This proposed settlement agreement and release has not been approved by the judge presiding over the Habel Litigation.[3]

Sadecki ceased representing Jenkins in the Habel Litigation on or about December 13, 2023.

(ECF No. 52, PageID.1262).

Another state-court case (the Jenkins litigation) arose in December 2022 when various beneficiaries of the HBD trust sought Jenkins' removal as trustee and the

---

[3] Approval of this settlement remains pending since Plaintiff filed this case. (ECF No. 53, PageID.1292; ECF No. 61, PageID.1608).

7

imposition of a constructive trust. (ECF No. 52, PageID.1263). The state court suspended Jenkins' authority and "appointed Plaintiff [as a] special fiduciary 'to investigate the circumstances surrounding the conveyance by Kathleen Jenkins of the [AL] property [. . .]; investigate the merits of Ms. Jenkins' claims of legal malpractice surrounding the conveyance; and investigate the appropriateness of trust funds being used to pay for Ms. Jenkins' legal defense.'" (ECF No. 52, PageID.1263). The court later expanded Plaintiff's authority "'to pursue any and all malpractice claims available to the HBD Trust and the Suspended Trustee, Kathleen Jenkins, . . . and, further, to take such necessary action and file such claims as may be necessary to preserve and prosecute claims on behalf of the HBD Trust relative to its interest in the [PSP] Trust . . . .'" (ECF No. 52, PageID.1264 (omissions in original)).

The complaint asserts claims against the Jenkins Defendants for breach of trust (concerning the HBD trust) and an ERISA violation (concerning the PSP trust) arising from Jenkins' improper distributions and other related conduct as trustee. (ECF No. 52, PageID.1268-69, 1271-73). And Plaintiff's ERISA claim against Habel arises from Habel's failure to rectify the improper distributions once she became trustee of the PSP trust. (ECF No. 52, PageID.1272). Plaintiff also asserts a legal malpractice claim against the Couzens Defendants concerning their

8

representation of Jenkins when she breached her duties to the trusts, and a legal malpractice claim against the Sadecki Defendants concerning their representation of Jenkins during the Habel litigation. (ECF No. 52, PageID.1264-67).

Plaintiff's conversion claim against Habel asserts that she "stole, embezzled, or converted HBD Trust funds and property to her own use and benefit." (ECF No. 52, PageID.1269-70).  Plaintiff's conversion claim against the Jenkins and Couzens Defendants alleges that they knowingly aided in concealing such funds and property. (ECF No. 52, PageID.1270).  Lastly, Plaintiff, "to avoid unjust enrichment and injustice," seeks a constructive trust over the property and funds that (1) were improperly removed from the HBD trust and (2) should have been distributed from the PSP trust to the HBD trust rather than to other individuals and entities. (ECF No. 52, PageID.1271).

The Jenkins Defendants' crossclaims assert one count for legal malpractice each against both the Couzens and Sadecki Defendants, respectively. (ECF No. 7, PageID.56-58).   The Jenkins Defendants allege that the Couzens Defendants provided negligent representation by advising Jenkins to make several disbursements contrary to the terms of the HBD and PSP trusts, including the AL property transfer to Steven and various fund transfers for Steven's benefit. (ECF No. 7, PageID.54-57).   They allege that the Sadecki Defendants provided negligent

9

representation by "fail[ing] to advise Jenkins as to all available claims in the Habel Litigation" and "advis[ing] Jenkins to agree to a settlement of the Habel Litigation that may release claims against [the Couzens Defendants]." (ECF No. 7, PageID.55-58). The Jenkins Defendants seek restitution and indemnification to the extent they are held liable for any conduct taken based on these other defendants' malpractice. (ECF No. 7, PageID.58-59).

The Sadecki and Couzens Defendants each move to dismiss Plaintiff's claims against them (ECF Nos. 55, 57). Defendant Habel similarly moves to dismiss Plaintiff's conversion and ERISA claims against her. (ECF No. 53). And the Sadecki and Couzens Defendants each move to dismiss the Jenkins Defendants' crossclaims. (ECF No. 23, 30). Plaintiff moves to remand the state claims case back to state court. (ECF No. 22).

## II. Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) ("In analyzing a 12(b)(6) motion, the court must

construe the complaint in the light most favorable to the plaintiff and accept all

allegations as true.") (cleaned up).[4]

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The plausibility

standard "does not impose a probability requirement at the pleading stage; it simply

calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.   "But a pleading must go

beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a

cause of action.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014)

---

[4] Generally, the court may not consider matters outside of the pleadings in ruling on a motion to dismiss. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).  The court may, however, consider any documents attached to the complaint, public records, or exhibits that are referred to in the complaint "and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  *See also* Fed. R. Civ. P. 10(c).  The briefing here includes various documents outside the pleadings that the Court will consider: public records related to Plaintiff's appointment as special fiduciary and other actions in the related state litigation (ECF Nos. 59-2 – 59-4, 60-2 – 60-4, 61-2 – 61-4; *see also* ECF Nos. 22-2 – 22-5); a Sadecki firm contract for legal services (ECF No. 30-1) referenced in the Jenkins Defendants' malpractice crossclaim and central thereto; and Habel's exhibits showing the relevant trust and property conveyance documents (ECF Nos. 53-2 – 53-4) referenced in the amended complaint and central to Plaintiff's overall claims.

(quoting *Twombly*, 550 U.S. at 555).  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

"On a motion for remand, the defendant bears the burden of establishing that removal was proper." *Hrivnak v. NCO Portfolio Mgmt.*, 723 F. Supp. 2d 1020, 1022 (N.D. Oh. Jul. 19, 2010).  "Removal jurisdiction raises significant federalism concerns and, for this reason, federal courts must strictly construe such jurisdiction." *Id.*  "Accordingly, a federal court must resolve any doubt of its removal jurisdiction in favor of state court jurisdiction." *Id.*

## III.   Analysis

### A.   Remand

Plaintiff seeks to remand the state claims in this case back to state court because (1) they predominate over the single federal, ERISA claim[5] and (2) Defendants' removal of the case to federal court and argument against Plaintiff's

_____

[5] The motion to remand was filed and fully briefed before Plaintiff amended the complaint to add an ERISA claim against Habel, as well as the Jenkins Defendants.

12

standing is essentially a collateral attack on the state court's orders appointing Plaintiff as a special fiduciary in the Jenkins Litigation. (ECF No. 22, PageID.569-75).  Defendants all similarly counter that each of Plaintiff's state claims (and the Jenkins Defendants' crossclaims) sufficiently relate to the PSP trust and ERISA as necessary to confer supplemental jurisdiction, there is no basis to decline supplemental jurisdiction here, and there is no collateral attack on the state court's orders. (ECF Nos. 26, PageID.681-87; ECF No. 27; PageID.701-06; ECF No. 28, PageID.714-16).

Regarding collateral attack, Habel and the Jenkins Defendants argue that (1) no Defendant seeks to overrule or rescind the state court's orders, (2) "Defendants are simply challenging the claims that the Plaintiff chose to bring and insisting that those claims be resolved in the Court with appropriate subject matter jurisdiction," and (3) the Court here "can rule on [the motions to dismiss] without affecting" the state court's orders. (ECF No. 26, PageID.687; *see also* ECF No. 28, PageID.714-16).  In contrast, the Couzens and Sadecki Defendants argue that there is no collateral attack because (1) Plaintiff, not Defendants, initiated this action and (2) the law firms were not parties to the Jenkins litigation in state court. (ECF No. 27, PageID.705-06).

In reply, Plaintiff essentially concedes that the Court has supplemental jurisdiction over the state claims, arguing instead that the Court should exercise its discretion to decline exercising supplemental jurisdiction because "the seven state law claims asserted by Plaintiff against seven different Defendants predominate over the single ERISA claim asserted against one Defendant, Kathleen Jenkins." (ECF No. 29, PageID.721-22).   The state claims predominate, according to Plaintiff, because "there is no genuine dispute that the distributions from the PSP Trust were in violation of the terms of the PSP Trust and, thus, ERISA." (ECF No. 29, PageID.722-25).   Plaintiff also argues that Defendants are collaterally attacking the state court's orders because (1) accepting the argument that Plaintiff lacks standing would directly counter the state orders and (2) "[t]he lawyer Defendants are interested parties in the Habel litigation." (ECF No. 29, PageID.725-27).

To the extent Plaintiff argues against exercising supplemental jurisdiction because the state claims predominate, the Court disagrees.   "If it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (cleaned up; quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966)).   "The test in *Gibbs* remains the

14

standard for [supplemental] jurisdiction: 'the state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.'" *Id.* (cleaned up); *see also Askew v. Metro. Prop. & Cas. Ins. Co.*, 217 F. Supp. 3d 982, 985 (E.D. Mich. 2016) ("A loose factual connection between the claims is generally sufficient.") (citation omitted).

It is undisputed that the Court has original jurisdiction over Plaintiff's federal ERISA claims. And Plaintiff's state and federal claims all arise from a common nucleus of operative facts—the allegedly improper trust distributions—such that supplemental jurisdiction is appropriate. Indeed, the state conversion and legal malpractice claims all require, at least in part, that Jenkins' made various distributions from the PSP trust in violation of ERISA. And though the state breach of trust claim is specific to the non-ERISA HBD trust, it still factually relates to the federal ERISA claims where Plaintiff alleges that (1) the HBD trust was the residuary beneficiary of Harold's interest in the ERISA-governed, PSP trust; and (2) the allegedly improper distributions included funds that should have been transferred from the PSP trust to the HBD trust. With that said, it would waste judicial resources

15

for Habel and the Jenkins Defendants to defend Plaintiff's ERISA claims in federal court while defending in a separate state action related state claims involving many of the very same facts.

Next, the Court disagrees with Plaintiff's argument that supplemental jurisdiction is unwarranted because the improper distributions in violation of ERISA are undisputed, essentially leaving only state issues to adjudicate.  Although Defendants do not contest that Jenkins' distributions from the PSP trust violated ERISA, this is unsurprising at this early stage of the litigation.  Here, Plaintiff only need assert sufficient facts, accepted as true, to establish plausible violations of ERISA.  Defendants have implicitly conceded this much, but they remain entitled to contest this issue on a motion for summary judgment or at trial if facts do not bear out as alleged.[6]  Accordingly, this case involves substantial federal issues yet to be decided, and both the state and federal claims involve sufficiently related facts such that they should be tried together.

---

[6] This case is admittedly unique in that there are two ongoing state cases (the Habel and Jenkins litigation), with at least the former case dealing with some of the same property as was allegedly improperly distributed in this case.  But the Court is not currently aware of any preclusive effect on the matter here.

16

Lastly, "[a] 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004); *see also United States v. Clardy*, 877 F.3d 228, 230 (6th Cir. 2017) ("a collateral attack is normally an attempt to overturn a [decision] by filing a new lawsuit *rather than by a direct appeal*") (emphasis added). Importantly, neither the Couzens nor Sadecki Defendants were involved in the Jenkins litigation, so they could not challenge the state court's orders on direct appeal. And this case was indeed filed by Plaintiff, not by any Defendant seeking to circumvent the state court's orders. For these reasons, the Court rejects Plaintiff's argument that remand is warranted under the collateral attack doctrine. But the Court nevertheless considers, in ruling on the Couzens and Sadecki Defendants' motions to dismiss, whether the state court orders are fatal to these defendants' standing argument.

### B. Habel's Motion

Habel argues that Plaintiff's conversion claim must be dismissed because (1) it is untimely and (2) no specifically identified monies were transferred from the PSP trust. (ECF No. 53, PageID.1293-98, 1305-06). She argues further that Plaintiff's conversion and ERISA claims must both be dismissed because neither Plaintiff nor any beneficiary to the PSP trust followed the applicable, contractual claims

procedure before filing suit, the contractual limitations period to dispute a denial of benefits has run, and Plaintiff's ERISA claim is merely a repackaged and improper denial-of-benefits claim. (ECF No. 53, PageID.1298-1303).

Next, Habel argues that the ERISA claim is insufficiently pled because the amended complaint "is devoid of sufficient allegations that Habel had actual knowledge of Jenkins' underlying ERISA breach that [Habel] should have remedied[,] or allegations of specific losses that were a result of Habel's breach." Habel elaborates that she could not have known any of Jenkins' distributions were improper where the HBD trust never made a claim for benefits under the terms of the PSP trust. (ECF No. 53, PageID.1303-05).

Habel also argues that all Plaintiff's claims "[r]elated to" the PSP trust are time-barred under Michigan's Estates and Protected Individuals Code (EPIC). (ECF No. 53, PageID.1293-98, 1305-06).  Lastly, Habel argues that Plaintiff cannot maintain a conversion claim with respect to the AL property because the HBD trust—and therefore Plaintiff as the trust's special fiduciary—is contractually obligated by deed to defend the conveyance to Steven. (ECF No. 53, PageID.1307-08).

### i. ERISA Breach of Duty

Congress enacted ERISA in 1974 to protect participants in employee benefit plans by establishing standards of conduct for plan fiduciaries. 29 U.S.C. § 1001(b). A fiduciary must fulfill his or her duty "with the care, skill, prudence, and diligence" that a professional "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1)(B). To state a claim for a breach of fiduciary duty under ERISA, the plaintiff must show that "(1) the defendant was a fiduciary of an [ERISA] plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his [or her] fiduciary duty." *Dover v. Yanfeng US Automotive Int. Sys. I LLC*, 563 F. Supp. 3d 678, 684 (E.D. Mich. 2021) (citing 29 U.S.C. § 1109).

> Concerning his ERISA claim against Habel, Plaintiff alleges as follows:
>
> Because Habel was aware of Jenkins' improper distributions from the PSP Trust, after Habel became Trustee of the PSP Trust [in February 2021], Habel's failure to take any action based on Jenkins' prior improper distributions from the PSP Trust constitute a breach of fiduciary duties Habel owes to the beneficiaries of the PSP Trust, including the HBD Trust.

(ECF No. 52, PageID.1273).

First, the Court agrees with Habel that the ERISA claim against her must be dismissed because the HBD trust, as the beneficiary allegedly deprived of funds from the PSP trust, failed to exhaust administrative remedies. Habel is correct that

19

a plaintiff must exhaust administrative remedies under a given ERISA plan before filing any lawsuit to enforce contractual rights under the plan, *i.e.*, making a claim for benefits under the plan; only "ERISA claims alleging statutory, rather than plan-based, violations" are exempt from this exhaustion requirement. *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 562-65 (6th Cir. 2017); *see id.* at 562 ("[A]dministrative exhaustion is required when an ERISA plaintiff contends that his benefits were improperly calculated under the terms of a plan. . . . ERISA plans are often complicated things, and the question whether a plan's methodology was properly applied in a particular case is usually one best left to the plan administrator because administrators, not courts, are the experts in plan administration.") (cleaned up).  And "this statutory claims exception to the exhaustion requirement does not apply to plan-based claims artfully dressed in statutory clothing, such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." *Id.* at 565 (cleaned up).

Here, although Plaintiff asserts a statutory breach of duty claim against Habel and argues that it involves claims of theft rather than any claim for benefits, it is essentially based on Jenkins' improper distributions contrary to the terms of the PSP trust.  This is therefore a fundamentally plan-based claim, particularly where Plaintiff alleges that (1) the HBD trust was a beneficiary of the PSP trust (2) and

20

Jenkins' and Habel's conduct deprived the HBD trust of benefits it was entitled to under the plan.  Plaintiff tellingly seeks a constructive trust to establish that the property and monies Jenkins distributed belongs to the HBD trust, further supporting that Plaintiff seeks to recoup benefits it was allegedly deprived contrary to the plan. While the claim against Habel is somewhat distinct in that it involves her alleged failure to remedy Jenkins' improper distributions after the fact, the essential injury is still the deprivation of benefits that occurred. *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) ("A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate.").  Accordingly, because the HBD trust never exhausted its administrative remedies before Plaintiff filed suit on its behalf

regarding benefits it was allegedly entitled to under the terms of the PSP trust, the ERISA claim against Habel is dismissed.[7]

The court also concludes that Plaintiff has insufficiently pled that Habel knew, when she became the PSP trustee, that Jenkins' distributions were improper. See 29 U.S.C. § 1105 (under ERISA, a trustee is liable for the breach of another fiduciary when "he [or she] has knowledge of a breach by such other fiduciary" and fails to make "reasonable efforts under the circumstances to remedy the breach."); *Patterson v. United Healthcare Ins. Co.*, 76 F.4th 487, 500 (6th Cir. 2023) ("one plan fiduciary may be jointly liable for another fiduciary's breach if the first fiduciary knowingly participates in or conceals the second fiduciary's breach, or knows of the breach but makes no reasonable effort to remedy it").

Plaintiff's key allegation that "Habel was aware of Jenkins' improper distributions from the PSP Trust" is certainly too conclusive to plausibly establish this element. According to Plaintiff, however, Habel's knowledge that Jenkins' distributions were improper—i.e., that Jenkins breached her duties—is sufficiently

---

[7] Given this conclusion, and because Plaintiff concedes that no claim for benefits was ever made under the terms of the PSP plan, the Court does not address Habel's alternate argument regarding the timeliness of any claim for benefits.

alleged because Habel (1) removed Jenkins and appointed herself as PSP trustee just nine days after a $9 million transfer to her own IRA and (2) sought a settlement agreement in the Habel litigation that would insulate Jenkins and the Couzens Defendants from liability with respect to the AL property. The Court disagrees.

First, the record shows that Jenkins transferred the AL property to Steven as trustee of the HBD trust, not the PSP trust. In the Court's view, even construing the allegations in the light most favorable to Plaintiff, Habel's apparent desire to settle Jenkins' case to recover the AL property for the HBD trust demonstrates at most knowledge that this isolated transfer, which did not involve the PSP trust at issue here, was improper. But it is entirely too speculative to assume that this plausibly-inferred knowledge concerning the AL property extents to the various distributions from the PSP trust central to the ERISA claim against Habel, particularly where Plaintiff does not allege that Habel had any involvement with these distributions apart from receiving them (either on her own behalf or through Steven) at Jenkins' direction.

Similarly, the fact that Habel appointed herself as trustee shortly after the last distribution at issue is also too speculative to establish her knowledge of any breach. While Habel having knowledge of Jenkins' improper distributions *could* have motivated this decision, this is a mere possible, rather than plausible, inference.

23

Ultimately, Plaintiff's allegations, without more, do not suffice to plausibly establish that Habel knew Jenkins' PSP trust distributions were improper.  For example, while Plaintiff alleges that Jenkins and the Couzens Defendants had possession of designations of beneficiaries and thus implicates these defendants' knowledge of wrongdoing, she makes no such allegation about Habel.

In sum, the Court dismisses Plaintiff's ERISA claim against Habel because (1) the HBD trust never exhausted its administrative remedies concerning the PSP funds it was allegedly deprived and (2) Plaintiff has insufficiently alleged that Habel knew that Jenkins' distributions from the PSP trust were improper.  To the extent Habel also argues that all Plaintiff's claims related to the PSP trust are time-barred under EPIC, this is addressed next with respect to the remaining conversion claim.

### ii.  Conversion

"Under the common law [of Michigan], conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *In re B&P Baird Holdings, Inc.*, 759 F. App'x 468, 474 (6th Cir. 2019) (quoting *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 871 N.W.2d 136 (2015)).  "Therefore, there are three elements to a common-law conversion claim: (1) a distinct act of dominion; (2) wrongfully exerted; and (3) over another's personal property.  The act is wrongful

24

when it is inconsistent with the ownership rights of another." *Victory Estates, L.L.C. v. NPB Mortgage, L.L.C.*, No. 307457, 2012 Mich. App. LEXIS 2307, 2012 WL 6913826, at *2 (Mich. App. Nov. 20, 2012) (unpublished).

"Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F. Supp. 3d 874, 886 (E.D. Mich. 2015), aff'd, 646 F. App'x 418 (6th Cir. 2016). "Additionally, a person may be liable for conversion by aiding and abetting, or merely by benefitting and subsequently approving of the act of dominion." *Yatooma v. Dabish*, Nos. 340110, 341423, 2019 Mich. App. LEXIS 559, 2019 WL 1302403, at *7 (Mich. App. Mar. 21, 2019) (unpublished; citing *Trail Clinic, PC v. Bloch*, 114 Mich. App. 700, 705 (1982)). "[C]ommon-law conversion more broadly encompasse[s] any conduct inconsistent with the owner's property rights." *Aroma Wines*, 497 Mich. at 353.

Michigan's conversion statute prohibits both a person from "stealing or embezzling property" for his own use, and the knowing receipt of converted property. *See* Mich. Comp. Laws § 600.2919a. To prevail on a claim for statutory conversion, the plaintiff must satisfy the elements of common-law conversion. *Zaremba Grp., LLC v. Federal Dep. Ins. Corp.*, No. 10-11245, 2011 U.S. Dist.

25

LEXIS 17470, 2011 WL 721308, at *12 (E.D. Mich. Feb. 23, 2011) (collecting cases).   However, statutory conversion is narrower than the common-law tort in Michigan, as "someone alleging conversion to the defendant's 'own use' under [M.C.L. § 600.2919a(1)(a)] must show that the defendant employed the converted property for some purpose personal to the defendant's interests . . . ." *In re B&P Baird*, 759 F. App'x at 474 (quoting *Aroma Wines*, 497 Mich. at 358-59).

Further, "[t]o support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Keyes v. Deutsche Bank Nat'l Trust Co.*, 921 F. Supp. 2d 749, 761 (E.D. Mich. 2013) (quoting *Lawsuit Fin., L.L.C. v. Curry*, 261 Mich. App. 579 (2004)).   However, "it is not necessary that the money should be specifically earmarked for its return." *Citizens Ins. Co. v. Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 575 (1989).   An example of specific money is "where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Hanover Exchange v. Metro Equity Group, LLC*, No. 08-14897, 2009 U.S. Dist. LEXIS 59992, 2009 WL 2143866, at *2 (E.D. Mich. July 14, 2009); *see also Citizens Ins. Co.*, 178 Mich. App. at 576 ("In this case, Delcamp Truck Center, Inc., converted Citizens' personal property when it cashed Citizens' check

26

and retained the full amount of that check when it was entitled to only a portion of the full amount.").

As an initial matter, Habel is correct that Michigan's statute of limitations is three years for both statutory and common-law conversion. *Tillman v. Great Lakes Truck Ctr., Inc.*, 277 Mich. App. 47, 48-50 (Mich. App. 2007); *Hunt v. Hadden*, 665 F. App'x 435, 437 (6th Cir. 2016). "A cause of action for conversion accrues when dominion is wrongfully asserted over another's personal property." *Davidson v. Bugbee*, 227 Mich. App. 264, 269 (Mich. App. 1997); *see also* Mich. Comp. Laws § 600.5827 ("the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results"). The Court also acknowledges that statute-of-limitations defenses are typically not resolved at the pleading stage of the litigation. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (because the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations"); *Prepared Food Photos, Inc. v. Lakess Super Mkt., Inc.*, No. 23-100, 2023 U.S. Dist. LEXIS 233785, at *4 (W.D. Mich. Dec. 15, 2023) ("A 12(b)(6) motion based on a statute of limitations is only appropriate where it is clear from the face of the complaint that relief is time-barred.").

27

With respect to the conversion claim against Habel, Plaintiff alleges that she (1) "stole, embezzled or converted HBD Trust funds and property for her own use and benefit" and (2) "has refused to transfer possession of trust property to the current trustee." (ECF No. 52, PageID.1270).  Plaintiff relatedly alleges that Habel conspired with Jenkins to reach a settlement regarding the AL property transfer to insulate themselves and the Couzens Defendants from liability for this improper transfer. (ECF No. 52, PageID.1261-62).

First, to the extent Plaintiff relies on Mich. Comp. Laws § 700.7813(4) to counter Habel's statute-of-limitations defense, this statute provides a cause of action for a "current trustee" to recover from those who "wrongfully converts trust property, or refuses, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand."  But the Legislatures use of "or" indicates that the conversion of and failure to return trust property are two distinct claims that should have been pled separately.  Nevertheless, Plaintiff reliance on this statute is unavailing.

Plaintiff argues that the statute "suggests a trustee may bring such a claim [for failure to return trust property] at any time before termination of the trust," and her claim is nevertheless timely under a three-year limitations period because Habel "continues to refuse to return monies and property that should have been distributed

to the HBD Trust." (ECF No. 61, PageID.1615-16).  The Court first concludes that such claims, like conversion, are subject to Michigan's three-year limitations period applicable to injuries to property. *See Tillman*, 277 Mich. App. at 48-50.

Concerning the timeliness of any claim for the failure to return trust property under Mich. Comp. Laws § 700.7813(4), nothing in Plaintiff's amended complaint affirmatively shows that such a failure occurred outside the statutory recovery period.  But the facts alleged supporting such a failure are too conclusory and speculative to state a claim.  Indeed, Plaintiff's bare allegation that Habel has refused to transfer possession of trust property to the current trustee is a conclusory allegation that merely tracks the elements of this cause of action.  Otherwise, Plaintiff merely alleges that Habel appointed herself as PSP trustee on February 16, 2021, when there remained significant funds in the PSP trust that should have been transferred to the HBD trust.  Critically, nothing in the amended complaint says that Habel ever refused any demand by the HBD trust's current trustee to return anything. The Court therefore concludes that Plaintiff has failed to state a plausible claim for the failure to return trust proceeds under Mich. Comp. Laws § 700.7813(4).

Moving to the trust property that Habel allegedly converted (as opposed to merely refusing to return), Habel is correct that Michigan has "abrogated the common-law continuing wrongs doctrine." *Marilyn Froling Revocable Living Trust*

29

*v. Bloomfield Hills Country Club*, 283 Mich. App. 264, 288 (Mich. App. 2009).  But abrogation of this doctrine does "not operate to immunize future wrongful conduct." *Twp. of Fraser v. Haney*, 509 Mich. 18, 28 (Mich. 2022).  "In other words, a plaintiff's failure to timely sue on the first violation in a series does not grant a defendant immunity to keep committing wrongful acts of the same nature.  A plaintiff is free to bring a new action each time a defendant commits a new violation." *Id.* at 28-29.

With this in mind, *Sanderson v. Unemployment Ins. Agency*, No. 338983, 2018 Mich. App. LEXIS 3073, (Mich. App. Aug. 23, 2018) (unpublished), is both nonbinding and distinguishable from the instant case. *See People v. Parkinson*, 348 Mich. App. 565, 582 n. 4 (Mich. App. 2023) ("unpublished decisions are nonbinding but have persuasive value") (citation omitted).

In *Sanderson*, the plaintiffs filed suit against the defendant for illegally garnishing their wages to recoup improperly collected unemployment benefits. *Sanderson*, 2018 Mich. App. LEXIS 3073 at *1.  The Michigan Court of Appeals rejected the plaintiffs' argument that a separate claim accrued after each successive taking/garnishment, concluding instead that their claim accrued "when [the] defendant *first* attempted to collect the debt from [the] plaintiffs after the three-year

30

period had passed since [the] plaintiffs' last redetermination." *Id.* at *6-8 (emphasis in original).  The Court reasoned as follows:

> While plaintiffs might continue to suffer damage as a result of the wrongful and belated collections, plaintiffs are not subject to a new wrong every time defendant collects on the debt.  The only way that defendant would be subject to a later accrual date would be if defendant's continual tortious acts delayed the accrual date while the wrongful acts continued, i.e., if the continuing-wrongs doctrine applied. However, the Michigan Supreme Court has held that the 'continuing violations' or 'continuing wrongs' or 'continuing torts' doctrine is no longer applicable.

*Id.* at *8 (citation omitted).

It was therefore critical that the alleged distinct harms were all of a series presumably arising from the *single* decision of the defendant to recoup the plaintiffs' unemployment benefits.  Here, in contrast—at least construing the allegations in a light most favorable to Plaintiff and without the benefit of discovery—we have various distinct transfers at issue.  Nothing shows that these transfers were merely continued damages from a single injury akin to the garnishments in *Sanderson*. Following *Haney*, 509 Mich. at 28-29, the Court will look to each alleged violation separately to determine whether they support a timely conversion claim.

That said, as affirmatively shown from the amended complaint, only the final allegedly improper distribution, the February 11, 2021 $9 million transfer from the PSP trust to Habel's IRA, occurred within the three-year limitations period for

Plaintiff's conversion claim.    Accordingly, any claim based on the earlier distributions, including the 2019 AL property transfer, is dismissed as untimely.

With respect to the February 2021 distribution, construing the allegations in a light most favorable to Plaintiff, he has satisfied the three basic elements of conversion—that Habel exercised wrongful dominion contrary to the HBD trust's rights (and for her own use) by receiving to her IRA roughly $9 million that, under the PSP plan, rightfully belonged to the HBD trust.

The Court agrees with Habel, however, that dismissal is warranted because Plaintiff fails to establish that she has any obligation to return specific, identifiable funds.  Instead, Plaintiff merely alleges that Habel is liable for a specific *amount* of funds improperly distributed to her IRA from the PSP trust. *See Stewart Title Guar. Co. v. Lockman*, Nos. 05-92 and 05-736, 2008 U.S. Dist. LEXIS 23440, at *14 (W.D. Mich. Mar. 25, 2008) ("where the defendant is obligated to return an amount of money equal to the amount of money that he took, as opposed to the specific, identifiable money that he took, an action for conversion will not lie"); *AFSCME Int'l Union v. Bank One*, 267 Mich. App. 281, 295 (Mich. App. 2005) (holding that defendant union officers who unlawfully transferred money from the union's bank account "had no obligation to return any specific cache of money"); *see also Echelon Homes LLC v. Carter Lumber Company*, 261 Mich. App. 424, 436-39, 683 N.W. 2d,

32

171 (Mich. App. 2004), rev'd in part on other grounds, 472 Mich. 192 (Mich. 2005) (holding that, where the defendant-employee embezzled the bank funds from the plaintiff-employer, a claim for common law conversion could not be sustained because the plaintiff was not entitled to the specific or identifiable money embezzled, but rather to an amount of money equal to the amount embezzled).

Given these conclusions, the Court need not address Habel's additional arguments regarding EPIC or the AL deed.  In any event, these arguments relate to the earlier distributions[8] for which Plaintiff cannot assert a timely conversion claim. In sum, all Plaintiff's claims against Habel are dismissed.

### C.   The Legal Defendants' Motions to Dismiss the Jenkins Defendants' Crossclaims

#### i.  Indemnification

As an initial matter, both the Sadecki and Couzens Defendants argue that the Jenkins Defendants' indemnification claim fails as a matter of law because Plaintiff

---

[8] To the extent Habel argues that she should still be considered a non-probate transferee under EPIC with respect to the February 11, 2021 transfer as well, it is not clear from the face of the complaint that this transfer would be subject to the four-month limitations period under EPIC when notice is given.  And the transfer is within EPIC's alternate three-year limitations period for when notice is lacking.

alleges that Jenkins was actively at fault in this case. (ECF No. 30, PageID.751-54; ECF No. 23, PageID.641-42).  The Court agrees.

> Common-law indemnity is intended only to make whole again a party held vicariously liable to another through no fault of his own.  This has been referred to as passive rather than causal or active negligence.  It has long been held in Michigan that the party seeking indemnity must plead and prove freedom from personal fault.  This has been frequently interpreted to mean that the party seeking indemnity must be free from active or causal negligence.  Therefore, a common-law indemnification action cannot lie where the plaintiff was even .01 percent actively at fault.
>
> In general, whether a party is 'passively' (vicariously) liable or 'actively' liable for purposes of determining the availability of common-law indemnity is to be determined from the primary plaintiff's complaint.  If the primary plaintiff's complaint contained any allegations of active negligence, rather than merely allegations of passive negligence, common-law indemnification is not available.

*Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc.*, 292 Mich. App. 51, 62-63 (Mich. App. 2011) (cleaned up); *see also Boykins v. Trinity Inc.*, No. 18-13931, 2022 U.S. Dist. LEXIS 237009, at *11-13 (E.D. Mich. Jan. 1, 2022) (relying on *Botsford* to conclude that an indemnification crossclaim was futile because the primary plaintiff alleged active fault).

Here, to the extent Plaintiff's claims all stem from the allegedly improper distributions, he alleges that Jenkins personally made these distributions with knowledge of the beneficiary designations that presumably should have alerted her to the impropriety thereof.  And concerning the Habel litigation in which the Sadecki

34

Defendants provided representation, Plaintiff alleges that Jenkins personally "conspired" with Habel to settle this litigation to the detriment of the HBD trust. (ECF No. 52, PageID.1262).  Accordingly, even if Jenkins merely relied on the Couzens and Sadecki Defendants' incorrect advice (or lack of proper advice) in acting, Plaintiff's allegations make clear that this is not a simple case of vicarious liability[9] where indemnification would apply. *See Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12-11536, 2012 U.S. Dist. LEXIS 104987, at *49 (E.D. Mich. Jul. 27, 2012) (quoting *St. Luke's Hosp. v. Giertz*, 458 Mich. 448, 454 (Mich. 1998)) ("'Where two or more joint tortfeasors have been actively negligent in contributing to an injury,' the Michigan Supreme Court cautions, 'neither is entitled to indemnification from the other and only a claim for contribution will lie.  However,

---

[9] Vicarious liability is defined as "indirect responsibility imposed by operation of law." *Al-Shimmari v. Detroit Med. Ctr.*, 477 Mich. 280, 294 (Mich. 2007).  "The principal is only liable because the law creates a practical identity with his agents, so that he is held to have done what they have done." *Id.* (cleaned up).  "Vicarious liability is based on a relationship between the parties . . . under which it has been determined as a matter of policy that one person should be liable for the act of the other." *Id.*  Here, the various allegations do not show that the Jenkins Defendants are being indirectly sued to be held liable for the Couzens or Sadecki Defendants' actions.  Rather, the Jenkins Defendants' own illegal actions—i.e., their active fault—alleged by Plaintiff are purportedly excused because of the other defendants' distinct but related illegal conduct.

35

a party who is guilty of only passive negligence or vicarious liability may recover indemnity from the person who is actively negligent.'").

The Jenkins Defendants' indemnification crossclaims ae therefore dismissed.

### ii. Legal Malpractice: the Sadecki Defendants

"To state a claim for legal malpractice, a plaintiff must allege (1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and the extent of the injury alleged." *Kloian v. Schwartz*, 272 Mich. App. 232, 240 (Mich. App. 2006). The Sadecki Defendants argue that the Jenkins Defendants lack standing to pursue a legal malpractice claim against them where Jenkins is being sued individually but only was represented by the Sadecki Defendants in her fiduciary capacity as trustee, and that no exceptions to the privity requirement apply here. (ECF No. 30, PageID.745-51). The Court disagrees.

The most applicable case upon which the Sadecki Defendants rely here is a New York bankruptcy case, *In re Varela*, 530 B.R. 573, 581 (E.D.N.Y. 2015). As relevant here, the Court stated as follows:

> [Fed. R. Civ. P.] 13, made applicable by Bankruptcy Rule 7013, directs that counterclaims be asserted "against an opposing party." "The generally prevailing, although not uniform, view is that the 'opposing party' requirement means that when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against him in another capacity." Courts sometimes look beyond the fact that the

36

counterclaim is against the party in a different capacity, if the party sued and the party who should be sued have identical interests.

*Id.* at 581 (citations omitted).  The Court elaborated that

> [c]ourts have consistently held that counterclaims against a bankruptcy trustee in his or her individual capacity must be dismissed where the suit was commenced by the trustee as a representative of the debtor's estate.  The reasons for applying Rule 13 to these types of counterclaims are clear.  The trustee as an individual has divergent interests from his role as a representative of a bankruptcy estate.  There is a material difference between asserting a claim against a bankruptcy trustee, as representative of a debtor's estate, versus the trustee in his individual capacity.  For one, they are distinct legal entitles.  A bankruptcy trustee has legal rights, obligations, and enjoys powers, and privileges distinguished from those as an individual.  Secondly, a ruling that the Debtor is damaged by the Trustee's postpetition conduct in his representative capacity has different implications than if the Court finds that the Trustee is personally liable.  Damages against a trustee, as a representative, are recoverable from the estate, whereas, damages against a trustee, as an individual, come from the trustee's personal coffers.

*Id.* (citations omitted).

This case, however, does not warrant dismissal here.  First, even assuming this same reasoning applies to the Jenkins Defendants' crossclaim like the counterclaims in *Varela*, *Varela* is a nonbinding case that itself recognizes that this distinction regarding the capacity under which claims are brought is "not uniform." Accordingly, lacking any authority applying such a rule in this circuit, the Court declines to apply it here.

37

Further, the Jenkins Defendants' legal malpractice crossclaim is nevertheless consistent with Plaintiff's primary claims.  To the extent that the crossclaim's statement that "Jenkins is an individual" (ECF No. 7, PageID.52) shows that she filed it in an individual capacity, Plaintiff similarly sued Jenkins in an individual capacity (*see* ECF No. 52, PageID.1252).  And most importantly, regardless of the capacities at issue, the factual allegations of both the Jenkins Defendants' malpractice crossclaim and Plaintiff's primary claims against the Jenkins Defendants all consistently relate to Jenkins' actions in a fiduciary capacity as trustee. (*See* ECF No. 7, PageID.57-58; ECF No. 52, PageID.1259-62).

Because (1) the Jenkins Defendants allege that the Sadecki Defendants represented Jenkins as trustee of the HBD trust, (2) the latter concede such representation occurred, and (3) the facts at issue all concern Jenkins' actions as trustee, the Jenkins Defendants have sufficiently alleged the attorney-client-relationship element of their malpractice crossclaim.  The Court therefore declines to dismiss the legal malpractice crossclaim against the Sadecki Defendants.

### iii.  Legal Malpractice: the Couzens Defendants

The Couzens Defendants argue that the Jenkins Defendants' legal malpractice crossclaim against them is untimely because any such claim(s) accrued when they stopped representing Jenkins in 2021. (ECF No. 23, PageID.629-34).  They also

38

argue that the Jenkins Defendants cannot establish the causation element of legal malpractice because Jenkins possessed the information and means necessary to recoup any improperly distributed funds. (ECF No. 23, PageID.635-38).  And the Couzens Defendants argue that the Jenkins Defendants' alleged damages from the malpractice are improperly pled and/or too speculative. (ECF No. 23, PageID.638-40).

### a. Timeliness

A plaintiff must bring a legal malpractice claim within two years of when the malpractice claim first "accrued or arose (i.e., the date that services were discontinued), or within six months of the date that the plaintiff discovers or should have discovered the existence of the claim, whichever date occurs later." *Wright v. Rinaldo*, 279 Mich. App. 526, 529 (Mich. App. 2008) (quotation marks and citations omitted).  Mich. Comp. Laws § 600.5838(1) provides:

> Except as otherwise provided in [Mich. Comp. Laws § 600.5838a or § 600.5838b], a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

"Special rules have been developed in an effort to determine exactly when an attorney 'discontinues serving the plaintiff in a professional . . . capacity' for

purposes of the accrual statute." *Kloian v. Schwartz*, 272 Mich. App. 232, 237 (Mich. App. 2006).  For example, representation ends when the client or the court relieves the attorney of the obligation to serve the client. *Id.*  A legal malpractice claim also accrues when the "attorney sends notice of withdrawal as his or her final act of professional service[.]" *Id.* at 238.  However, it is not necessary that an attorney receive or send a formal notice terminating the professional relationship. *See id.* Instead, accrual occurs on the last day that the attorney renders professional services to the client. *Gebhardt v. O'Rourke*, 444 Mich. 535, 543 (Mich. 1994).  In other words, "'[a] lawyer discontinues serving a client . . . upon completion of a specific legal service that the lawyer was retained to perform.'" *Bauer v. Ferriby & Houston, PC*, 235 Mich. App. 536, 538 (Mich. App. 1999) (citation omitted).

The Jenkins Defendants' crossclaim asserts that "Jenkins retained [the Couzens Defendants] to represent and advise her in her capacities as Trustee of the PSP Trust, Successor Trustee of the HBD Trust, and Personal Representative of Harold's estate." (ECF No. 7, PageID.54).  The Couzens Defendants acknowledge that they "continued to represent Jenkins in her role <u>as trustee of the HBD Trust</u> for *administrative matters*," but they argue that this was a separate matter from the "trust litigation" and from Jenkins' role as PSP trustee. (ECF No. 23, PageID.629-34 (emphasis in original)).

40

Ultimately, without the benefit of discovery, it remains unclear precisely what "specific legal service" the Couzens Defendants were "retained to perform" for Jenkins. *Bauer*, 235 Mich. App. at 538. Where (1) the Jenkins Defendants generally allege that the Couzens Defendants represented Jenkins in her various roles, including as trustee for both the HBD and PSP trusts; (2) the Couzens Defendants concede that they continued to represent Jenkins in at least some capacity, and (3) the Couzens Defendants allegedly advised Jenkins to make each of the improper distributions at issue, it is plausible that the improper distributions—whether involving the HBD or PSP trust—and subsequent representation all involved the same specific legal service (i.e., the same matter).

Discovery could reveal that the Couzens Defendants were retained generally to represent Jenkins in any fiduciary role she may have. And to the extent the Couzens Defendants state that they only continued to represent Jenkins as HBD trustee for administrative matters distinct from the alleged malpractice, only discovery will show whether representing the trust on administrative matters included giving advice on distributions therefrom. At the same time, discovery could reveal that this case does indeed involve separate matters—for example, if Jenkins signed separate engagement letters with distinct duties for the Couzens Defendants with respect to Jenkins' different roles—and that the Couzens Defendants' continued

41

representation was distinct from any of the distributions at issue. The court therefore declines to resolve the Couzens Defendants' statute of limitations defense to the Jenkins Defendants' crossclaim at this preliminary stage of the litigation.

### b. Causation

According to the Couzens Defendants, any causal link between its advice, even if negligent, and any injury is necessarily broken because Jenkins had recourse under Mich. Comp. Laws § 700.7813 to recoup any improperly distributed property, and in fact initiated the Habel litigation to do just that with respect to the AL property. Accordingly, the Couzens Defendants argue that any loss or injury to the Jenkins Defendants as a matter of law was not caused by their negligence, but instead by Jenkins' own actions or inactions.

To establish proximate cause, the Jenkins Defendants must plausibly allege that her injuries would not have occurred "*but for*" the Couzens Defendants' advice. *See Bowden v. Gannaway*, 310 Mich. App. 499, 503 (Mich. App. 2015) (emphasis in original).

The Jenkins Defendants allege that "Jenkins relied on [the Couzens Defendants'] advice with respect to all disbursements that she made from the HBD Trust, the PSP Trust, and Harold's estate," and that she made various transfers contrary to the terms of both trusts "[r]elying on [the Couzens Defendants']

42

advice[.]" (The Couzens Defendants allegedly "advis[ed] Jenkins to distribute property from the PSP Trust and the HBD Trust in manners inconsistent with those trusts."). These distributions included conveying the AL property to Steven and "several transfers of money from the PSP Trust for the benefit of Steven." The crossclaim also alleges that "[o]n August 26, 2021, Jenkins brought a petition on behalf of the HBD Trust against Habel as personal representative of Steven's Estate to have the Lake Angelus Property and the money distributed to Steven returned to the HBD Trust."[10] (ECF No. 7, PageID.55, 57).

Importantly, "[p]roximate cause is a question of fact that is generally to be decided by a jury." *Teodorescu v. Bushnell, Gage, Reizen & Byington*, 201 Mich. App. 260, 266 (Mich. App. 1993). That said, the Court concludes that the Jenkins Defendants sufficiently alleged they would not have suffered the alleged injuries but for the advice by the Couzens Defendants to make improper distributions. Regardless of whether Jenkins is ultimately at fault to some extent for the improper distributions and/or subsequent failure to recoup property, it is entirely plausible that

---

[10] Testimony at the motion hearing indicated that various claims or issues in this case may ultimately be mooted by the Habel litigation in state court. Unless and until this happens, however, the Court will address all the claims and issues presented here.

Jenkins and her firm would not have been subject to the various litigations here and in state court absent the Couzens Defendants' advice.

Further, to the extent Jenkins can still recoup (or should have recouped) the improperly-transferred property under Mich. Comp. Laws § 700.7813, this essentially relates to whether she failed to mitigate damages, an issue the Court declines to address on the pleadings at this early stage of the case. *See Teodorescu*, 201 Mich. App. at 266-67 (in evaluating a legal malpractice claim, "[i]f [a] defendant's argument is understood to be that [the] plaintiff failed to mitigate [his or] her damages, then it was [the] defendant's burden to prove so, not [the] plaintiff's"); *id.* (implying that whether a claimant failed to mitigate damages "[is not] an element of a prima facie case of legal malpractice").

Lastly, although the Couzens Defendants rely on *Sills v. Kaplan Merzlak, P.C.*, No. 363557, 2024 Mich. App. LEXIS 432, (Mich. App. Jan. 18, 2024) (unpublished), this case is distinguishable.  In *Sills*, which in relevant part involved an accounting malpractice claim for the failure to properly prepare a 2018 tax return, the Court concluded that (1) the plaintiffs could not establish causation where they failed to file an amended return; and (2) "[r]egarding the 2018 tax return, there is no likelihood that further discovery will alter the fact that Sills had until October 14, 2022, to file an amended return." *Id.* at *7, 24-30.

44

But this case was decided on the defendants' motion for summary disposition (akin to summary judgment), not on the pleadings alone. *Id.* at *7-8, 28-29. And though the motion was decided before discovery commenced, this was only permitted where "the parties had been engaged in litigation since 2020, Sills had hired a certified public accountant to audit the LLC, and Sills had engaged in extensive discovery in the [prior] divorce action and consolidated civil action, which produced 16,000 pages of documents and included the depositions of Kaplan and a staff accountant from his firm." *Id.* at *28-29. In affirming the trial court's decision to decide the motion for summary disposition before discovery, the Court critically stated that "Kaplan's deposition in the [prior] divorce action was focused extensively on conduct that [the] plaintiffs alleged constituted malpractice." *Id.* at *29.

With this procedural backdrop in mind, *Sills'* causation decision was largely based on the parties' respective factual support (or lack thereof) concerning this issue. The Court specifically reasoned as follows:

> Defendants here prepared a draft amended return for Sills and Levey and presented it to Sills and Levy under cover of a letter dated June 2, 2021, with instructions to sign, date, and return the document "AS SOON AS POSSIBLE." Kaplan was questioned in his deposition in the divorce action by Sills's counsel six days later. The amended return was never filed, and plaintiffs' complaint was filed one year later in June 2022, with plaintiffs alleging that defendants breached the standard of care by failing to properly prepare the 2018 tax return and failing to correct the errors. . . . Contrary to plaintiffs' argument here, it appears that defendants did present an amended tax return for Sills and

45

Levey to sign on June 2, 2021.  Moreover, Sills has provided no evidence or affidavit to support the assertion that defendants refused to sign it, or stating when they refused to do so.  In addition, Sills failed to provide any support for the assertion that a new accountant was required to review the 2018 and prepare an amended return, and only speculated that the cost of doing so "will likely be a large portion of the refund or exceed the refund."

*     *     *

A claim for refund of overpaid federal income tax must generally be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever is later. See 26 USC 6511(a).  Defendants presented evidence that the 2018 tax return of Sills and Levey was filed on October 14, 2019.  Thus, Sills could have filed an amended return as late as October 14, 2022. . . . [D]efendants presented an amended return to Sills and Levey one year before plaintiffs filed this action, plaintiffs presented no evidence that defendants "refused" to file an amended return or of when they refused to do so, and plaintiffs still had time to file an amended return, even after the trial court granted summary disposition.  The trial court did not err by granting summary disposition in favor of defendants.

*Id.* at *25-28.

Accordingly, the *Sills'* case was decided with the benefit of significant factual development, development that has yet to occur here.  In sum, the Court concludes that whether the Jenkins Defendants satisfied the causation element of their legal malpractice crossclaim against the Couzens Defendants, including whether Jenkins was herself in some way at fault for the injuries alleged, is more appropriately resolved—if not by a jury at trial—then at least with the benefit of discovery on a

46

motion for summary judgment.  The Court therefore declines to resolve this issue at this stage of the litigation.

### c.  Damages

Concerning damages, the Jenkins Defendants allege that both the Legal Defendants' advice caused Jenkins to incur "expenses . . . in pursuing and defending litigation . . . in her capacities as Trustee of the PSP Trust, Successor Trustee of the HBD Trust, and representative of JMVC [her accounting firm] and Personal Representative of Harold's estate." (ECF No. 7, PageID.56).  And they allege that the Couzens Defendants "caused injury to Jenkins and by [sic] exposing her and JMVC to liability from claims arising from the[ir] actions and omissions. . . , and by causing her to incur attorneys' fees pursuing and defending legal actions arising from their representation of Jenkins." (ECF No. 7, PageID.57).

The Jenkins Defendants also allege, albeit within their dismissed indemnity claim, that the Couzens Defendants "exposed Jenkins and JMVC to liability by advising Jenkins to distribute property from the PSP Trust and the HBD Trust in manners inconsistent with those trusts," and that "Jenkins and JMVC are free from personal fault related to the above-referenced actions undertaken on the advice of" the Couzens Defendants. (ECF No. 7, PageID.58-59).  Indeed, the crux of the indemnity claim is that the Jenkins Defendants should be excused from any potential

47

liability imposed "for actions that they undertook based on [the Couzens] Defendants' malpractice." (ECF No. 7, PageID.59).

To the extent that the Jenkins Defendants were allegedly injured by exposure to liability caused by the Couzens Defendants' advice, this suffices to establish a plausible contingent crossclaim. *See* Fed. R. Civ. P. 13(g) (crossclaims against a coparty "may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant"); *Scheurer Hosp.*, 2012 U.S. Dist. LEXIS 104987, at *49 (Rule 13(g) "authorizes a cross-claim seeking indemnification or contribution"); *id.* at *3 (claimant plausibly alleged contingent legal malpractice crossclaim because "[t]he only damage alleged . . . is the risk of being held liable to Plaintiff for [the legal defendant]'s incorrect advice"). Construing the Jenkins' Defendants allegations in a light most favorable to them, her claim is essentially disavowing personal fault and asserting that any ultimate liability she may owe Plaintiff is only because of the Couzens Defendants' incorrect advice.

Next, regarding the alleged expense of litigation caused by the Couzens Defendants' advice, this, contrary to the Couzens Defendants' argument, is recoverable under a claim of legal malpractice.  Importantly, the Michigan Supreme Court recently decided an analogous case in *Hark Orchids, LP v. Buie*, No. 165761, 2024 Mich. LEXIS 2448 (Mich. Dec. 30, 2024):

Contrary to the conclusions of the courts below, the American rule does not bar [the] plaintiff's claim for damages. The American rule generally requires parties to shoulder the cost of hiring their own attorneys to assert their legal positions, claims, and defenses. But that principle is not implicated in the context of negligent performance of legal services. Legal malpractice claims, by their very nature, implicate the provision of professional legal advice to clients. Plaintiffs in legal malpractice suits seek compensation to place them in the same position as if they had received legal services meeting the appropriate standard of care. Legal malpractice can cause clients to incur costs that would have been unnecessary absent the malpractice. A client who suffers legal malpractice may be required to retain counsel to address mistakes and harms caused by the negligent attorney and to take steps to mitigate the resulting damage. We hold that a client who suffers legal malpractice can recover reasonable and necessary attorney fees that are incurred to correct harms caused by the malpractice. The American rule for the assessment of legal fees stemming from litigation prohibits plaintiffs from recovering attorney fees incurred in the suit brought to recover damages. But the American rule does not prohibit the recovery of legal fees that are damages resulting from the underlying legal malpractice.

*Id.* at *2-3.

Therefore, even if the recovery of attorney fees with respect to *this* case are barred by the American Rule, recovery is clearly permitted for fees incurred to correct harms caused by the Couzens Defendants' advice—for example, the fees expended by Jenkins in the Habel litigation. Given the foregoing, the Court rejects the Couzens Defendants' argument that the Jenkins Defendants' damages are improperly pled and/or too speculative.

### D.    The Legal Defendants' Motions to Dismiss Plaintiff's Claims

Both the Couzens and Sadecki Defendants argue that Plaintiff, as a court-appointed special fiduciary for the HBD trust, lacks standing to pursue his legal malpractice claims because he (and the trust) never had an attorney-client relationship with any of the Legal Defendants. (ECF No. 55, PageID.1431-36; ECF No. 57, PageID.1485-88).  The Couzens Defendants also assert numerous other arguments purportedly warranting dismissal of Plaintiff's various claims against them. (ECF No. 55, PageID.1436-47).

### i.  Standing

"To establish standing under Article III, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Sullivan*, 920 F.3d at 407 (cleaned up).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up).

As particularly relevant here, the Michigan Court of Appeals, albeit in an unpublished decision, has dismissed legal malpractice claims for lack of standing where "there was no attorney-client relationship between [the] defendant and [the]

50

plaintiff." *Kloian v. Lyzohub*, No. 333293, 2017 Mich. App. LEXIS 1659, at *7 (Mich. App. Oct. 17, 2017) (unpublished).   In any event, an attorney-client relationship is an element that Plaintiff must establish to survive dismissal under Rule 12(b)(6). *See Kloian*, 272 Mich. App. at 240.

Here, when the state court appointed Plaintiff as special fiduciary for the HBD trust, it empowered him "to investigate the circumstances surrounding the conveyance by Kathleen Jenkins of the [AL property]; investigate the merits of Ms. Jenkins' claims of legal malpractice surrounding the conveyance; and investigate the appropriateness of Trust funds being used to pay for Ms. Jenkins' legal defense." (ECF No. 59-3, PageID.1540-41).   The state court later expanded Plaintiff's powers as necessary "to pursue any and all malpractice claims available to the HBD trust and Suspended Trustee, Kathleen Jenkins, . . . and, further, to take such necessary steps to preserve and prosecute claims on behalf of the HBD Trust relative to its interest in the [PSP trust] . . . ."   The court also ordered that "the aforementioned expansion of the Special Fiduciary's powers shall in no way limit the ability for Respondent Jenkins to bring claims in her individual capacity." (ECF No. 59-4, PageID.1547-48).

First, the Court, in ruling on Plaintiff's earlier motion to amend the complaint, already concluded that it is not legally possible for the Couzens and Sadecki

Defendants to have represented the HBD trust in addition to Jenkins as trustee. (ECF No. 51, PageID.1243).[11]  Because the Legal Defendants never represented the HBD trust itself, there are no malpractice claims available for the trust to bring here.  But the state court importantly permitted Plaintiff to pursue any malpractice claims available to the trust *and* to Jenkins.  This language critically aligns with Plaintiff's contention that he is stepping in Jenkins' shoes in pursuing the malpractice claims in this case.

Further, Michigan law seemingly grants courts broad discretion when appointing and assigning duties to a special fiduciary. *See* Mich. Comp. Laws § 700.1309(a) (courts may "[a]ppoint a special fiduciary to perform specified duties"); Mich. Ct. R. 5.204(B) ("The special fiduciary has all the duties and powers specified in the order of the court appointing the special fiduciary. Appointment of a special fiduciary suspends the powers of the general fiduciary unless the order of appointment provides otherwise. The appointment may be for a specified time and

---

[11] To the extent various parties reiterate under this issue their earlier arguments that (1) the Legal Defendants are collaterally attacking the state court orders and (2) the state orders effectuated an improper assignment of the Jenkins Defendants' malpractice claims, the Court already rejected both. (*See supra* Section III.A; ECF No. 51, PageID.1239-41).

the special fiduciary is an interested person for all purposes in the proceeding until the appointment terminates."). Without authority specifically showing it acted beyond the scope of this discretionary power, the Court declines to disturb the state court's clear ruling that Plaintiff, as special fiduciary, may pursue malpractice claims available to Jenkins.[12] And the Court already concluded that the Jenkins Defendants have cognizable malpractice claims against both the Legal Defendants. (*See supra* Section III.C.ii-iii).

That said, the Legal Defendants both essentially argue that Plaintiff cannot be considered the real party in interest under *Whitton v. Hopkins*, No. 364842, 2024 Mich. App. LEXIS 7580 (Mich. App. Sept. 30, 2024) (unpublished). Plaintiff counters that this case does not control here.

---

[12] The Court is unpersuaded by the Couzens Defendants' argument specific to Mich. Comp. Laws §§ 700.1308-09. Mich. Comp. Laws § 700.1309, the special fiduciary statute, lacks any language showing that it is in any way limited by § 700.1308. § 700.1308 does provide that courts, to remedy a fiduciary's breach of duty, may "[a]ppoint a special fiduciary to take possession of the estate's, ward's, protected individual's, or trust property and administer the property," but this language alone does not foreclose that a special fiduciary could have duties beyond merely recovering or administering trust property in certain circumstances—for example, when a trust is harmed by a third party's malpractice. This is especially true considering the seemingly broad discretion of courts under the statute and court rule on which Plaintiff relies.

In *Whitton*, the two plaintiffs were initially removed as trustees for breaching their duties to the trust, and the probate court appointed Henry Nirenberg, Plaintiff here, as successor trustee. The probate court later reinstated the plaintiffs as trustees, changing Nirenberg to a special fiduciary with authority to control and manage the trust assets. *Id.* at *5-6. "In November 2021, [the] plaintiffs filed suit, alleging [the] defendants' legal malpractice and breach of fiduciary duty on several grounds. Nirenberg, as special fiduciary, authorized the filing of a complaint on behalf of the Trust and the Estate." *Id.* at *6.

One of the trust/estate's claims was for legal malpractice, but this was dismissed on the following grounds: "Because [the] defendants represented only Richard and Eddie [the plaintiff trustees] in their fiduciary capacities, the Trust and the Estate cannot assert malpractice against [the] defendants. Indeed, they are not real parties in interest." *Id.* at *18. In reaching this decision, the Court critically reasoned that "an attorney employed by a personal representative or trustee to perform legal services for them represents the personal representative or the trustee—not the estate or trust." *Id.* at *15.

Curiously, neither Nirenberg nor the trust/estate are named plaintiffs in *Whitton*, but the case otherwise makes clear that the trust/estate, as authorized by Nirenberg, filed the unsuccessful malpractice claim discussed. This is admittedly

54

similar to the circumstances here, at least in that Plaintiff is a special fiduciary and pursuing legal malpractice claims against defendants who never represented the trust at issue.  But there was no discussion in *Whitton* of Nirenberg or the trust filing the malpractice claim *on behalf of* the plaintiff trustees who did have an attorney-client relationship with the legal defendant, and it remains unclear what, if any, authority Nirenberg was granted in *Whitton* beyond the express authority "to control and manage the trust assets." *Id.* at *5-6.

Given the lack of such facts, facts which are critical to Plaintiff's malpractice claims here, the Court concludes that *Whitton* does not warrant dismissal, at least at this stage of the case.[13]  In addition to the fact that *Whitton* not Does not clearly apply to the unique facts presented here, the Court is especially hesitant to rely on *Whitton* because it is an unpublished case with only persuasive value. *See Parkinson*, 348 Mich. App. at 582 n. 4 ("unpublished decisions are nonbinding but have persuasive value") (citation omitted).

---

[13] Because Plaintiff here was also the special fiduciary of the trust in *Whitton*, it remains possible that discovery in this case could shed light on whether *Whitton* did ultimately involve dismissal of a claim brought by Nirenberg as special fiduciary on behalf of the trustees (as opposed to only on behalf of the trust itself).

As a final note, the Court is aware of the potentially duplicative nature of Plaintiff and the Jenkins Defendants asserting essentially the same malpractice claims with at least some overlapping injury involved.  At the motion hearing, Plaintiff said these claims were nevertheless consistent, and that there would not be any attempt to 'double dip' with respect to recovery.  The Court will remain cognizant of this issue as the case proceeds, but at this stage it permits all the malpractice claims to advance.  Discovery should help to resolve to what extent this case involves joint tortfeasors, if at all, and to what extent the Legal Defendants will be liable, if at all.  And most importantly, discovery should also help resolve to whom any ultimate recovery of damage must flow.

### ii.  The Couzens Defendants Remaining Arguments

As an initial matter, the Couzens Defendants additional arguments that Plaintiff's malpractice claim against them must be dismissed because it is untimely and Plaintiff cannot establish causation (ECF No. 55, PageID.1436-46), both essentially mirror those made concerning the Jenkins Defendants' crossclaims (*see supra* Section III.C.iii.a-b).  For the same reasons as stated earlier, these arguments are rejected.

Next, to the extent the Couzens Defendants also argue that any alleged conversion claim that accrued before February 9, 2021, is untimely (ECF No. 55,

PageID.1447), this essentially tracks Habel's argument discussed already.  For the same reasons as stated concerning the conversion claim against Habel (*see supra* Section III.B.ii), the Court concludes that only the final allegedly improper distribution from February 11, 2021, occurred within the three-year limitations period for Plaintiff's conversion claim.  Accordingly, any claim based on the earlier distributions is dismissed as untimely.

However, as with the conversion claim against Habel, dismissal is warranted because Plaintiff fails to establish that the Couzens Defendants have any obligation to return specific, identifiable funds with respect to the February 11, 2021 distribution. (*See supra* Section III.B.ii). *See also Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to non-moving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related."); *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987); *Lee v. Flint Cmty. Sch.*, No. 22-13134, 2023 U.S. Dist. LEXIS 184816, at *6 (E.D. Mich. Oct. 13, 2023); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) ("we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared").  Given that dismissal of the entire

conversion claim against the Couzens Defendants is dismissed for the reasons stated, the Court does not address the Couzens Defendants' other argument that Plaintiff does not allege they had actual knowledge that any of the distributions at issue were improper.

Lastly, the Court agrees with the Couzens Defendants that the imposition of a constructive trust is an equitable remedy rather than its own cause of action (ECF No. 55, PageID.1447). *See Gaymar Indus., Inc. v. Firstmerit Bank, N.A.*, 311 F. App'x 814, 817 (6th Cir. 2009) (applying Ohio law) ("[T]here is no stand-alone claim for constructive trust instead it is a remedy . . ."); *see also Brown-Smith v. Bank of America Corp.*, No. 10-14161, 2011 U.S. Dist. LEXIS 14446, at *21 (E.D. Mich. Feb. 14, 2011) (collecting cases) ("A constructive trust is a remedy, not a cause of action"). Therefore, to the extent Plaintiff is asserting a stand-alone claim for a constructive trust, this is dismissed. Whether Plaintiff is entitled to such a remedy with respect to his surviving claims, however, will be addressed only after discovery.

* * *

For the reasons given, the Court ORDERS that Plaintiff's motion to remand (ECF No. 22) is DENIED.

58

IT IS FURTHER ORDERED that Habel's motion to dismiss (ECF No. 53) is GRANTED.

IT IS FURTHER ORDERED that the Sadecki Defendants' motion to dismiss the Jenkins Defendants' crossclaims (ECF No. 30) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Couzens Defendants' motion to dismiss the Jenkins Defendants' crossclaims (ECF No. 23) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Sadecki Defendants' motion to dismiss Plaintiff's claims (ECF No. 57) is DENIED.

IT IS FURTHER ORDERED that the Couzens Defendants' motion to dismiss Plaintiff's claims (ECF No. 55) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that (1) all Plaintiff's conversion claims, (2) his ERISA claim against Habel, (3) and the Jenkins Defendants' indemnification crossclaims are all DISMISSED WITH PREJUDICE.  To the extent Plaintiff is

asserting a stand-alone claim for a constructive trust, this claim is also DISMISSED

WITH PREJUDICE.  All remaining claims survive dismissal at this stage.


Dated: October 17, 2025                    s/Robert J. White
                                           Robert J. White
                                           United States District Judge

60